UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

~~CORPUS CHRISTI~~ DIVISION
*Brownsville*

CAUSE NO. _____

United States District Court
Southern District of Texas
FILED

DEC 0 7 1998

Michael N. Milby
Clerk of Court

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JON ALAN ASHCRAFT,

Petitioner,

vs.

GARY L. JOHNSON,

Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_____

Appeal from the 357th Judicial District Court
~~for Nueces County, Texas~~ *Cameron County Texas*

TRIAL COURT NO(s). 91-CR-1521-E & 91-CR-1371-E

Court of Criminal Appeals

WRIT No. _____

_____

**PETITION FOR WRIT OF HABEAS CORPUS**

**PURSUANT TO 28 USC §§ 2241 & 2254**

_____

JON ALAN ASHCRAFT,
PETITIONER, PRO SE
RETRIEVE UNIT #638807
ROUTE 5, BOX 1500
ANGLETON, TX 77515

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 7 1998

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JON ALAN ASHCRAFT, | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | CIVIL   ACTION   #_____ |
| | § | |
| GARY L. JOHNSON, | § | |
| Respondent. | § | |

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 USC §§ 2241 & 2254

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jon Alan Ashcraft, Petitioner Pro Se, hereinafter "Petitioner", who presents this Petition for Writ of Habeas Corpus pursuant to 28 USC §§ 2241 & 2254. Petitioner is proceeding Pro Se, and has paid the filing fee, yet is without the benefit of assistance by competent counsel.

Therefore, Petitioner respectfully requests that this Court consider this petition with a liberal scrutiny in keeping with the proviso enunciated in Haines v Kerner, 404 US 519, 92 SCt 594 (1972), rather than considering this matter under the stringent standards applied to pleadings drafted by learned counsel. In support thereof Petitioner would show the Court as follows:

## I.
### RESTRAINT & CUSTODY

Petitioner is illegally restrained of his liberty in the Texas

CtiAPDF - www.fastio.com

Department of Criminal Justice - Institutional Division by the Director
of said department.

## II.

### REPRESENTATION IN STATE PROCEEDINGS
### & PROCEDURAL HISTORY OF CASE

Petitioner, pled NOT GUILTY in a jury proceeding to the charge of
burglary of a habitation in each cause by indictment in Cause
No(s). 91-CR-1371-E & 91-CR-1521-E, with trials held respectively on
March 3, 1992 and June 23, 1992. The jury assessed guilty and sentenced
Petitioner to (75) seventy-five years confinement on both charges.

Petitioner was represented in the State proceedings by retained
counsel, Glen Barnard. Notice of appeal was given. A majority panel of
the Supreme Thirteenth Court of Appeals Corpus Christi, Texas delivered
a decision to reverse the trial court's finding in Cause
No. 91-CR-1371-E. The State's Prosecutor opted for Petition for
Discretionary Review (PRD), in which a decision was rendered to reverse
the COA's earlier decision.

In Cause No. 91-CR-1521-E, the panel of the Thirteenth Court of
Appeals delivered a decision to affirm the judgment and conviction of
the trial court. Petitioner was represented by
ALFREDO  PADILLA  , appellate counsel.

Petitioner respectfully submits that he has properly exhausted the
substantive issues raised herein when presented to the State's highest
appellate court, the Texas Court of Criminal Appeals by way of
Art. 11.07, as a singular application on both causes, which was denied
by "white-card", without written order.

## III.

### STATEMENT OF THE FACTS

Petitioner holds that a delineation of the facts is thoroughly
contained in a copy of the attached affidavit, similarly used with the
post-conviction, Art. 11.07 when submitted. Asserting this procedure by
reference eliminates redundancy.

## IV.

## GROUNDS FOR RELIEF

### 1. DENIAL OF DUE PROCESS BY CONFLICT OF INTEREST

THE ENTITLEMENT OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION REQUIRE AN OPPORTUNITY TO BE HEARD BEFORE AN UNBIASED TRIBUNAL.

The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution demand a fair and impartial trial before competent tribunal of law. Attached to the requisite is an opportunity to be heard and reasonably prepare for trial, embracing a reasonable notice of the charge against a person in order to properly defend against the nature of the offense. Due Process of law includes both, procedural and substantive protections as well.

Petitioner asserts that he was denied due process in a biased tribunal. This is undergirded by the fact that the decision in **Ashcraft v State,** 900 SW2d 817 (TxAp- Corpus Christi 1995), was rendered by Justice Melchor Chavez of the Thirteenth Supreme Court of Appeals. In turn, a subsequent panel of the Thirteenth Supreme Judicial Court of Appeals (hereinafter, COA), decidedly held its decision, "...draws extensively from," **Ashcraft v State,** supra.

A distinct conflict of interest enters the picture because Justice Melchor Chavez, was formerly law partners with attorney Glen Barnard, Petitioner's trial counsel. This arrangement is violative of the ABA Code of Judicial Conduct and State Canons governing Judicial Conduct on conflict of interest in representation.

The central focus established by the Due Process Clause clearly requires a "fair trial in a fair tribunal," before a judge with no actual bias against Petitioner or interest in the outcome of the particular case. See, **Aetna Life Ins., Co. v Lavoie,** 475 US 813, 828, 106 SCt 1580, @1588-89, 89 LEd2d 823 (1986). Substantially aligned, is the State Bar Rules, Art. 10, § 9, under **Professional Conduct.** Rules #1.05 - 1.09 forbid counsel's (or, any firm member thereof), representation of a client in any litigation where a fiduciary relationship existed and is subject to conflict of interest.

-3-

CUtePDF - www.tesisa.com

The guarantee of Due Process extends to fairness at the appellate level is evident in **Evitts v Lucey**, 105 SCt 830, @835 (1985). Further this view extends to the circumstances at bar, because Justice Melchor Chavez found himself in a decision-making role adverse to the interests of Petitioner having been former law partners with Petitioner's trial counsel, Glen Barnard.

Justice Melchor Chavez headed a panel of the COA, which decided **Ashcraft v State**, supra. This is a clear abuse of discretion and a conflict of interest because the tribunal was not impartial and unbiased consisting of Justice Melchor Chavez.

Petitioner maintains the bias of Justice Melchor Chavez is brought to light in two rather similar cases, that of **Ashcraft v State**, supra, and comparably, **Barraza v State**, 900 SW2d 840 (TxAp- Corpus Christi 1995). The glaring element of was focused on the affidavits found in either cause used in support of a search warrant.

If the affidavits from both causes are viewed impartially, as decisions rendered by Justice Melchor Chavez, it is readily apparent that the information relied upon in **Barraza**, supra, affidavit held far more substantial information than relied upon in **Ashcraft v State**, supra. However, an obviously undue breach is encountered where Justice Chavez decided in **Barraza**, supra, that, "...there is no corroboration," in questioning the reliability of the informant.

Yet, in **Ashcraft**, supra, where less information was supplied by the informant based on pretextual suspicions, decisive lies and conclusory statements Justice Chavez reached beyond the affidavits to affirm Petitioner's cause and reversed the decision of the trial court in **Barraza**, supra. Opposite decisions in two similar cases, in which the less reliable information rendered an affirmed decision (**Ashcraft**). While the more reliable information supplied in the affidavit rendered a reversed decision (**Barraza**), by Justice Chavez.

The preceding exemplifies distinct bias and partiality prejudicial to Petitioner. The due process requisite for a "fair tribunal" protects against such bias and partiality. The critical issue does not stand alone on conflict of interest between the two former law partners, but the likelihood that it could eventuate an adverse affect on Petitioner.

Petitioner contends that a conflict of interest was created by

Justice Melchor Chavez having competing loyalties to the State of Texas as a Justice on the Thirteenth Supreme Court of Appeals while having formerly served as law partners of (10) ten years with Glen Barnard. Competing loyalties draw into question whether Petitioner could expect a fair and impartial forum, considering that Justice Melchor Chavez would not want to appear soft on his former law partner. Indeed to the prejudice of Petitioner's right to due process. See **Bracey v Gramley,** 117 SCt 1793, @1797-98 (1997).

The overreaching affect of Justice Chavez is found where a successive panel of the 13th COA, chose it, "...draws extensively from," the former decision rendered by Justice Chavez. The potential prejudice had here, is Petitioner's interest in this matter as protected under the 5th and 14th Amendments to the U.S. Constitution, and applicable under Art. 1, § 19 of the Texas Constitution.

Inasmuch, 91-CR-1371-E initially received an opinion from the 13th COA to reverse the trial court. The COA reversed itself based on Justice Melchor Chavez's decision hints at a specter of conflict of interest. Hence, Petitioner seeks review by an unbiased and impartial federal tribunal unlike the state forums, as protected by the 5th and 14th Amendments to the U.S. Constitution.

## V.

## 2. ILLEGAL SEARCH WARRANT VIOLATE 4th AMENDMENT

THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION IS VIOLATED WHEN A SEARCH IS BASED ON AN ILLEGAL SEARCH WARRANT AND AFFIDAVIT WHICH LACKS PROBABLE CAUSE IN SUPPORT.

Grounded in the Fourth Amendment to the United States Constitution, the Texas Constitution, Art. I, § 9, and the Texas Code of Criminal Procedure, (TCCP), Art. 18.01(b), et seq., is the extent of statutory reach regarding the legality of a search warrant.

The combined reach of, "...the Fourth and Fourteenth Amendments protect the 'legitimate expectations' of persons,..." see **Ybarra v Illinois,** 444 US 85, @91, 100 SCt 338, @342, 62 LEd2d 238 (1979). The same Court maintained the;

CUtePDF - www.fasolu.com

> "...4th Amendment directs that 'no Warrant shall
> issue, but upon probable cause ... and particularly
> describing the place to be search, and the person
> or things to be seized.' Thus, 'open-ended' or
> 'general' warrants are constitutionally
> prohibited."

The Texas Constitution likewise commands that "...no warrant to search any place ... shall issue without describing ... as near as may be, nor without probable cause, supported by oath or affirmation." Cf. Texas Const., Art. I, Sec. 9.

Petitioner asserts the limited scope for a federal habeas review on a 4th Amendment claim established by the U.S. Supreme Court in **Stone v Powell**, 428 US 465, 96 SCt 3037, 49 LEd2d 1067 (1976), does not apply at this juncture to the claim asserted because the limitation applied only to the illegal seizure of property being admitted against the accused.

The **Stone v Powell**, restriction on federal habeas review is overcome because Petitioner was denied a full and fair opportunity to litigate this claim in the state forum. Namely, in seeking postconviction relief Petitioner's claims were denied without written order. This cursory standard of review was deemed deficient by the Fifth Circuit Court of Appeals as **Graham v Johnson**, 94 F3d 958, @969 (CA5 1996), offers;

> "...an exception ... is made only if there is no
> opportunity to obtain redress in state court or if
> the **corrective process is so clearly deficient** as to
> render futile any effort to obtain relief."
> (emphasis added.)

(quoting **Duckworth v Serrano**, 454 US 1, @3, 102 SCt 18, @18, 70 LEd2d 1 (1981)); Cf. **Williams v Collins** 802 FS 1530, @1534 n.2 (WD TX 1992), relying on an analogous decision from **Garrett v McCotter**, 807 F2d 482, @484 (CA5 1987) where the Fifth Circuit;

> "...unanimously held that such a cursory dismissal
> by the highest state court does **not** amount to the
> requisite consideration of the claims raised in the
> state petition to preclude a federal court from
> subsequently addressing those claims."

-6-

CSIPDF - www.fecisi.com

Petitioner 4th Amendment claim is based on an illegal search warrant. The prohibition enunciated by the Texas Constitution and the U.S. Constitution is sound, to suggest when a search warrant is present it must name person, place and thing to be searched for. Record testimony from both, Detective Araiza and Byrum, along with that of Petitioner's mother, Mrs. Jean Ashcraft detail that only a 'general' search warrant was presented to Petitioner and his mother.

The search warrant in question was a single page without effect as to who, where or what was to be seized and/or searched. At the first trial, (Vol. V., p. 454, line 1-4), Petitioner's mother admits being told by the police officers and detectives executing the warrant;

> "...here's a search warrant, it was blank search
> warrant on front and back, they said we're here to
> search the house, if John don't cooperate and
> confess they would arrest me."

Similarly, Petitioner's mother exclaimed that, "... the search warrant did not say anything, couldn't read name." From the second trial (Vol. II, p.226, line 5-7). [SEE EXHIBIT "A"]

The Supreme Court concurs to note that, where police officers lack in actual documentary support is more often than not undergirded by their authoritarian status or flat-out intimidation of witnesses and suspects. **Escobedo v State of Illinois,** 84 SCt 1758 (1964). The 4th Amendment contains two separate clauses; a prohibition against unreasonable searches and seizures, and a requirement that probable cause support the warrant executed.

Petitioner contends that the search warrant executed, and copy left with his mother contained no probable cause absent an affidavit attached. On its face the warrant alleged, "...the Affiant whose name appears on the **attached affidavit** ... (which said Affidavit is here now made part hereof for all purposes)," was a non-instrument. Though the affidavit was to be attached to the search warrant to be a sufficient lawful document, it was not. [SEE EXHIBIT "B"]

Hence, without the affidavit portion of the warrant attached (to show probable cause), and determine with specificity who, what, when and where the warrant is a 'general' warrant and prohibited under the 4th

Amendment's teaching.  See **Ybarra**, supra, @342, n.4; **Maryland v Garrison**, 480 US 79, 107 SCt 1013, @1016, 97 LEd2d 72 (1987).

Consequently, the latter portion of the 4th Amendment, customarily referred to as the warrant clause, makes it apparent that a valid search warrant may issue only upon the issuing authority having been shown there is probable cause.

And, central to the proposition of the 4th Amendment's protective right is that probable cause exist before undertaking an act of either search or arrest by police.  The Supreme Court offers in **Henry v US**, 361 US 98, 80 SCt 168, 4 LEd2d 134 (1959) that insofar as:

> "...the general warrant, in which the name of the person to be arrested was left blank, and the writs of assistance, ... both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of "probable cause" before a magistrate was required. * * *
> That philosophy later was reflected in the 4th Amendment. And as the early American decisions both before and immediately after its adoption show, common rumor or report, suspicion, or even "strong reason to suspect" was not adequate to support a warrant for arrest. And that principle has survived to this day. * * * It was against that background that two scholars recently wrote, "Arrest on mere suspicion collides violently with the basic human right of liberty."

Cf., LaFarve, Wayne R., "Search and Seizure", Vol. 1, 2d ed., 1987.

Since 'general warrants' are prohibited, there remains no aspect to rely upon other than the affidavit for the specificity required by both, federal and state constitutions.

Petitioner's warrant lacked an attached affidavit, as required and so stated by the issuing magistrate. Detective Araiza alleged the affidavit remained in the vehicle during the search and execution of the warrant.  See also, 2nd trial (Vol. VII, p.172, Line 7-13, p.182, line 2-4), where the detective admits to the pretextual nature of the affidavit remaining in the vehicle and not present with the warrant.

The detective's admission suggests the affidavit was never on the premises at all, and not completed when the warrant was executed on Petitioner and his elderly mother.  Despite Detective Araiza's claim, it

-8-

was two days after Petitioner's arrest when the affidavit portion to the warrant was supplied to Petitioner's mother, along with an inventory of items taken from their residence.

Record evidence notwithstanding, Vernon's Texas Annotated C.C.P., Art. 18.06(b) goes hand in hand to mandate, "...before the officer takes property from the place, he shall prepare a written inventory of the property to be taken." Pursuant authority of Art. 18.06(b) Petitioner's due process rights and Fourth Amendment rights were violated insofar the search party failed to comply with the law.

The Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the person or things to be seized." And, the purpose for this particularity is to prevent general searches. Additionally, this provides a limitation in authorization to search specific areas and things for which there is probable cause to conduct such search.

The above requirement ensures that the search is carefully tailored to the specification of the affidavit and not exceedingly take on the character of wide-ranging exploratory searches prohibited by the Fourth Amendment. In **Illinois v Gates,** 462 US 213, 238-39, 103 SCt 2317, 2332, 76 LEd2d 527 (1983), the Supreme Court has determined the affidavit is considered under the "totality of the circumstances" test, and squared to its "four corners". **Hall v State,** 795 SW2d 195, @197 (TCCA 1990); **Osban v State,** 726 SW2d 107 (TCCA 1986).

Lacking the specificity of probable cause contained in the affidavit, the document becomes merely a 'general warrant', which is prohibited by the Fourth Amendment. The affidavit in this cause did not appear and become a matter of record until two days subsequent to Petitioner's arrest, when a copy was delivered to Petitioner's mother.

The affidavit's "four corners" must be supported by the "totality of the circumstances" to sustain probable cause. Thus, Petitioner concedes to the following facts; a couple (Juanita Torres & Augustin Pena), did stop by his residence in the afternoon hours on the date of Petitioner's arrest. Petitioner spoke with the pair, who arrived by vehicle (a yellow Nissan truck). Further, what the detectives considered suspicious drug activity, was not an illegal transaction because Petitioner had only loaned the couple (purported informants;

Juanita & Augustin), twenty dollars as they requested.

Relying on the preceding facts, any additional allegations in the affidavit are beyond the records proof and suggest mere conjecture. When probable cause is based on hearsay, it "...must be credited at each level in order to meet constitutional requirements." **Hennessy v State,** 660 SW2d 87, @91 (TCCA 1983). The Texas Court of Criminal Appeals, (hereinafter TCCA) subscribes to this fact, cautioning that "...detention is unlawful if the events are so consistent with innocent activity as with criminal activity." **Johnson v State,** 658 SW2d @626 (TCCA 1983); see also **Shaffer v State,** 562 SW2d @853 (TCCA 1978).

The record evidence provides that neither detective attributed with any certitude or clarity what was dubbed by the affidavit as "...the three appeared to be in the process of making a drug deal...", was anything more than "mere suspicions". The couple (informants) only borrowed twenty dollars (innocent activity), from Petitioner believed 'only suspect' by the detectives because they needed a pretext to enter Petitioner's house. However, the "suspicious" activity found no corroboration during the detective's surveillance, nor after the illegal search of Petitioner's residence. [SEE EXHIBIT "C"]

Piercing the veil of suspicion and trial testimony (which was overborne articulating a drug transaction), none of the events unfolded led to, or proven germane to the burglary offense with which Petitioner was actually charged.

There is no record evidence admitted of a witness to observe Petitioner break into a single residence. No witnesses indicate observing Petitioner transporting, or in possession of stolen property belonging to any of the burglary victims. Equally as important, Petitioner and his mother's home was burglarized twice during the period claimed Petitioner was responsible for burglaries in the area.

The detectives allege to have discovered stolen property at Petitioner's residence. The property seized and submitted by the detectives as stolen proves less significant here because the chain of custody was violated by the detectives.

The property seized by the detectives was not inventoried when taken from Petitioner's residence as required by TX C.C.P., Art. 18.06(b) that, "...before the officer takes property from the

-10-

place, **he shall prepare a written inventory** of the property to be
taken." This provision sifts through any possibility to mistakenly
intermingle property with other items along the chain of custody before
reaching its destination in the property division.

The detectives did not leave an inventory of the property taken
from Petitioner's residence. The property was delivered to the Burglary
Division of the Harlingen Police Department by the arresting detectives;
Araiza and Byrum, rather than taken to a property room for inventory.
In the Burglary Division, property taken from Petitioner's home was
cleverly mixed in with countless other items of property already present
in the detective's office.

With the chain of custody broken by Detective's Araiza and Byrum
in this cause, and items of property returned to Petitioner's mother, is
strong evidence to implicate the detective's intermingled innocent
(personal) property from the Ashcraft residence among contaminated
stolen property present in the detective's office.

The preceding allegations sets the stage for consideration of the
"four corners" of the affidavit "under the totality of the
circumstances" test.

The "four corners" of an affidavit dictate legally, what credence
is given the affidavit in support of a warrant. The affidavit under
consideration here was not present with the execution of the search
warrant. Hence, purview of the "four corners" doctrine lacks footing
altogether. [ SEE EXHIBIT "C"]

In review of the affidavit for probable cause allows for two
sources; the affiant and his information (or source thereof), and the
informants (credibility and reliability as information sources). Once,
the source of information is established, and, of separate origin the
two sources must corroborate. Thus, Petitioner's affidavit can be
separated into these components:

> (1) On June 23, 1991 about 3:30 p.m. Detective John Byrum and
> Detective Nicolas Araiza were on surveillance of a suspect drug
> dealer residing at 1710 South Parkwood in Harlingen, Texas.

> (2) Affiant had received reliable information from several
> informants and the information obtained appeared to be in
> accordance with what information affiant was already aware of.

-11-

CUtePDF - www.fentio.com

(3) The information received was that suspect, John Ashcraft was selling heroin to heroin addicts at the residence located at 1710 South Parkwood in Harlingen, Texas.

(4) The suspect was also known to be involved in burglaries of residences in the area known as the Parkwood subdivision in Harlingen, Texas.

(5) On this particular day affiant and Detective John Bynum set up surveillance of the residence at 1710 South Parkwood Harlingen, Texas.

(6) Affiant and Detective Bynum observed a yellow Nissan Truck with two passengers arrive at the residence at 1710 South Parkwood. The male and female passengers were waiting around a carport for about 15 minutes until the suspect John Ashcraft came out of the house. The three appeared to be in a process of making a drug deal as is common practice with drug dealers and users.

(7) The couple left right after an apparent exchange and were later stopped by a Harlingen Police Unit away from the suspect's residence. The couple was identified as Augustin Pena and Juanita Torres of San Benito.

(8) The couple gave voluntary statements after being warned of their constitutional rights.

(9) Information obtained from the couple verified that heroin was being sold by John Ashcraft at the residence at 1710 Parkwood Harlingen, Texas.

The preliminary information under review from the affiant embraces sections (1) - (7), to which there was no corroborative information secured from the trial testimony, nor obtained from the informants. The purported component outlining information from unnamed informants in section (2), is speculative hearsay unsupported by any record evidence.

Inconsistent with affiant's claims made in the affidavit there were no credible and reliable informants named or involved, except the hearsay supplied by affiant (Det. Nicolas Araiza), in sections (1) - (7) of the affidavit components. [SEE EXHIBIT "C"]

The detectives gave way to their hyperactive imaginations and sought a pretext to enter Petitioner's residence. See 1st trial, (Vol. II, p.91, line 1-19), whereas Detective Araiza's testimony implicates his interest "was his mere suspicions." In fact, the detective's further testimony is indicative the information acquired from the couple (the informant's who had gone to Petitioner's residence), was not

-12-

reliable. 1st trial, (Vol. II, p.121, line 1-9). Clearly, an admission by the detective the couple (informants) were not credible and reliable.

The last four sections; (6) – (9) of the affidavit articulate the (purported) informant's role in a purported drug transaction. Affiant while surveilling Petitioner's residence used a speculative interaction between Petitioner and the couple (informants), as supposition to later stop the couple (informants), after they departed Petitioner's residence and had stopped at a drug infested park long before the detectives located the pair. The couple; Juanita Torres and Augustin Pena's credibile and reliable information is questionable because they admittedly had injected heroin moments before being questioned by affiant and his detective partner.

Very little credence can be afforded a pair considered as informants, who had injected heroin moments before being accosted by a team of police and detectives for information only relevant to an extraneous offense for which Petitioner was never charged, and not for information regarding the burglary offense Petitioner was charged with.

The detectives did not previously know the pair; Juanita Torres and Augustin Pena lends suspicion to the detectives use of an incidental meeting between the couple and Petitioner to allude criteria after-the-fact that made Juanita Torres and Augustin Pena convenient informants. It was necessary to name Juanita & Augustin as informants to secure an affidavit rather than their information prove essentially relied upon by which to obtain a conviction against Petitioner.

In fact, had the detectives genuinely investigated the events to comprise the affidavit's information, the detectives would have discerned or even known that the couple (the informant's) had borrowed money from Petitioner at his residence and proceeded to the drug infested park where they were later discovered by the detectives and had used the twenty dollars ($20) secured from Petitioner to purchase heroin at the park. In turn, this could have been the extent of any criminal activity to occur rather than the suspected events considered by the detectives.

Moreover, greater credence is accorded Petitioner's innocent behaviour due the fact that no heroin was discovered at his home. What was discovered and claimed to be heroin in a film canister was actually

-13-

located at his residence to obtain a charge.

Based on the "four corners" of the affidavit there is no affirmed corroborative information from either the Affiant (Detective Nicolas Araiza), or the informants (who prove unrealiable and discreditable). Thus, the affidavit fails to sustain its necessary credence of probable cause to be anything more than a "general warrant". Thereby, the search warrant as executed fails on its face lacking the affidavit at the time of execution. The Fourth Amendment to the U.S. Constitution finds abhorrent the "general warrant" which is 'open-ended' and seeks to fill a constitutionally prohibitive void.

Therefore, the entire document to comprise the search and arrest warrant is unenviably illegal on its face. And, on this premise the 4th Amendment rights of Petitioner has been prohibitively abridged.

Clearly, essential to this finding is that any evidence seized from Petitioner's home is considered "fruits of the poisonous tree" and as well not used in evidence in this matter. Undoubtedly, Petitioner should receive relief as requested in a reversed decision on this claim. And, if and when remanded to the trial court a hearing must be void the illegal warrant and affidavit, with any evidence seized thereupon suppressed.

## VI.

### 3. UNCONSTITUTIONAL SEARCH AND SEIZURE VIOLATE 4th AMENDMENT

PETITIONER'S FOURTH AMENDMENT RIGHTS WERE VIOLATED UNDER AN UNCONSTITUTIONAL SEARCH AND SEIZURE.

Petitioner incorporates the preceding ground for relief by inclusion of its arguments of law and facts and contents as set out in full. Petitioner avers that the Fourth Amendment does not prohibit all state initiated searches and seizures; it merely proscribes those which are unreasonable. **Illinois v Rodriguez**, 497 US 177, 110 SCt 2973, 111 LEd2d 148 (1990).

Comparably, the State recognized in **Johnson v State**, 912 SW2d 227, @231 (TCCA 1995) that, "...the 4th Amendment is only advisory in interpreting Art. I, § 9, and not as controlling authority." Hence, the

-14-

CutePDF - www.trmto.com

State of Texas provides as long as it does not call for any greater restriction of rights Texas precedent controls in a 4th Amendment claim. This determination continues:

> "**Heitman** clearly gives us the authority to grant defendants greater rights under the Texas Constitution than afforded by the Supreme Court's interpretation of the United States.... State precedent existing before the 4th Amendment was made applicable to the states does not support granting defendants greater rights under article one, section nine than they currently enjoy under the Fourth Amendment." (citation omitted).

Id. @230. Petitioner interjects another TCCA decision relying on **Heitman**, found in **Autran v State**, 887 SW2d 31, @34 (TCCA 1994), that, "...it is said that the United States Constitution provides the floor for our Constitutional rights while the State constitutional provision establishes the ceiling." Cf., **Heitman v State**, 815 SW2d 681, @690 (TCCA 1991).

Petitioner urges that the requirement for the legal means to procure evidence sought by warrant and affidavit;

1) should preclude false and incorrect information known by the Affiant to justify any law enforcement actions,
2) there must be an admission of consent to permit law enforcement official's entry into Petitioner's residence, and
3) the warrant cannot be reconciled absent an affidavit in execution to specify person, place and thing.

The Supreme Court of the United States established in **Franks v Delaware**, 438 US 154, @156, 98 SCt 2674, @2676, 57 LEd2d 667 (1978) that:

> "...where the defendant makes substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

-15-

Although this fact was argued at trial, the court failed to hold a **Franks** hearing to test Peptitioner's allegations regarding false information being included in the affidavit.

The Supreme Court explained the existence of probable cause as a safeguard between the law enforcement and the citizen to acknowledge that;

> "law enforcement "...engaged in often competitive enterprise of ferreting out crime, (citation omitted), <u>may lack sufficient objectivity to weigh correctly the strength of the evidence supporting</u> the contemplated action against the individual's interest in protecting his own liberty and privacy of his home.""

**Coolidge v New Hampshire,** 403 US @449-51, 91 SCt @2029-30, 29 LEd2d 564 (1971). (emphasis added).

Petitioner suggests the record evidence, if, thoroughly reviewed provides a chronology of discrepant facts essential to an illegal search and seizure. The evidence is more consistent with Petitioner's innocence rather than guilty in these circumstances. Petitioner contends that being denied a **Franks** hearing, the minimal constitutional foundation due him in rights was never met.

Looking to the record, as it reflects the couple (informants), was stopped after leaving Petitioner's residence with record testimony to reveal the couple remained at Petitioner's residence for 20 to 35 minutes at most. However, the officers testimony reveal that "stop-and-go traffic" is keenly observed in drug transactions. Comparatively, note how long the couple remained at the park where the the heroin was purchased. See Suppression Hearing, (Vol. II, p.77, line 6-7) Stop-and-go traffic lasts only long enough to make the exchange of money and drugs, rarely longer.

Considering the couple remained at Petitioner's residence for the length of time revealed by the record is moreover consistent with innocent activity, rather than any criminal act of purchasing drugs from Petitioner. The detectives testified that after the purported exchange, the couple remained an additional five minutes with Petitioner before departing the scene. Second Trial, (Vol. VII, p.54, line 12). This

tends to further discount a drug exchange as the detectives suppose was anything more than "mere suspicion". The anxiety level common with drug deals is not casual, and does not permit the interaction to linger beyond the time to acquire the drug and exchange the money, without any significant chit-chat subsequent to the purchase.

After the couple departed Petitioner's residence they were stopped by a patrol unit. There was no search or frisk of the couple, only a brief questioning by the surveillance detectives, who told the couple they were observed "... purchasing drugs from Jon Ashcraft." Judicial Notice should be taken at this point to realize, the detectives told the couple (the purported informants), the information that was required from them.

This appears proportionally converse to evidence corroboration. Further to insist that the couple complied with the wishes of the detectives, the couple was told to proceed to the Harlingen Police Station for further questioning. If this request was merely to conclude the formalities learned in the initial questioning the couple should not be uneasy about what was to occur. Second Trial (Vol.VII, p.63, line-15). Instead, the couple was still uneasy and scared because the cloud of coercion hung above their heads to give the detectives information in conformity with what the detectives had told them.

The couple was separated and questioned by both detectives in separate areas at the police station. Their vehicle was searched under the cloak of authoritative action. Numerous syringes were discovered containing heroin residue remaining in a couple of the syringes found in the couple's truck. The couple was told if they would give a statement of purchasing drugs from Petitioner's residence they would be allowed to leave. If, corroboration was genuinely intended in this sequence of events, the detectives would not have allowed the couple (informants) to use the evidence purported to support probable cause for an affidavit.

Of considerable concern the couple had only a short while earlier injected the heroin they purchased. Thus, it is apparent the couple's statements were taken under coercion and duress because the couple was high from injecting heroin before talking to the detectives. Both, detectives admit the couple appeared frightened and scared. Juanita Torres testified that she was scared, as well being coerced into

admitting purchasing drugs from Petitioner. <u>Second</u> <u>Trial</u> (Vol. VIII, p.249-251).

Either way the statements obtained from the couple (as informants), was not proven credible or reliable at no stage of the adversarial process, concluding it was false. Neither was it obtained without coercive measures employed by the detectives. There was no signed and sworn statement from the couple entered into the record evidence to support credibility and reliance. Juanita Torres is shown to have impeached her testimony rather than proving credible. Needless to say this evidence was of an extraneous offense rather than a burglary for which Petitioner was charged.

The fact that the information obtained from the couple was speculative belies there being not one micro-dot of heroin discovered at Petitioner's residence. The discovery of a film canister contained lactose. The lactose was not submitted for laboratory analysis. This supports why Petitioner was not charge with a drug offense. Therefore, Affiant knew the information obtained from the couple (purported informants), had been coerced and tainted with untruth, yet it was used in the affidavit in support of the warrant nonetheless. **Franks v Delaware,** 98 SCt 2674, @2676 (1978).

The second prong to Petitioner's argument for procurment of evidence by the detectives shown to be an unreasonable act of search and seizure, premised the detectives had no consent to search. The detectives contend as record evidence is unrefuted, they had no intention of arresting Petitioner's mother.

Detective Byrum and Araiza maintain knowing that Petitioner and his mother were the only persons in the residence. And, there was no suspicions regarding Mrs. Ashcraft's involvement in any criminal activity. <u>Second</u> <u>Trial</u> (Vol.VII, p.77, line-21-25). In disregard of the preceding established facts, the detectives admit, as the record is replete throughout, making contrary statements to arrest Petitioner's mother if he did not cooperate on various occasions. <u>Suppression</u> <u>Hearing</u> (Vol.II, p.94, line-3-4); <u>Second</u> <u>Trial</u> (Vol.VII, p.80, line-2-5); <u>First</u> <u>Trial</u> (Vol.IV, p.97, line-1-6).

Each instant Petitioner suggested not cooperating with the detectives, an overt act of coercion was used to force compliance with

CutePDF - www.fasia.com

their wishes, as Petitioner was told his mother would be arrested.  This is an act of duress.  The detective contend that no coercive tactics were used to force Petitioner to conform to their ultimate wishes. However, the potential for Petitioner's mother being arrested is stressed throughout the course of the arrest and interrogation. Extending unto Petitioner's request for presence of legal counsel during interrogation.  Coercive influence is also shown inasmuch Petitioner had injected heroin himself that day.

It is well settled that a search conducted without a warrant is per se illegal, and unreasonable.  Hence, it is equally accepted that a search conducted with consent forgoes probable cause and a warrant as an exception.  This begs as well, that consent must be without a show of authority either expressed or implied.  **Bumper v NC,** 391 US 543, @548, 88 SCt 1788, @1791-92, 20 LEd2d 797 (1968).

Petitioner's third prong of approach to this argument is borrowed from the previous Ground for Relief, insofar the search warrant and affidavit were not reconciled as a single document, rendering an illegal search and seizure.

This is specifically undergirded as the record evidence admits that the search warrant was not accompanied by an affidavit.  Second Trial (Vol.VII, p.176, line-5-12, p.181, line-4).  Petitioner draws from various sources to support this essential is taken from, **US v Daikman,** 13 F3d 1391, @1395 (CA10 1993), where it establishes:

> "It is true the particularity of an affidavit may cure an overbroad warrant, but only "...where the affidavit and search warrant ... can be reasonably said to constitute one document. Two requirements must be satisfied to reach this requirement: First the affidavit and search warrant **must be physically connected** so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference." (emphasis added.)

Cf. **US. v Leary,** 846 F2d 592, 603 (CA10 1988); (quoting R.W. LaFave, Search and Seizure § 4.6(a), @p.241(2d 3d. 1987); see also **US v Williamson** 1 F3d 1134, @1136 n.1 (CA10 1993). Additionally this view incorporates the, "...person on whom the warrant has been executed is

absolutely entitled to a copy of the whole warrant at time it is executed." **In re Grand Jury Proceedings**, 932 FS 904 (SD TX 1996)(emphasis added.)

Texas caselaw concurs with the preceding, where Petitioner or his mother were not shown, presented or left with an affidavit. Only the "general warrant" was used and left behind. Texas caselaw holds, "...it is well settled law in Texas that the description contained in the affidavit limits and controls the description contained in the warrant." **Madrid v State**, 595 SW2d 106, @107 (TCCA 1979); **Cantu v State**, 557 SW2d 107, @108-09 (TCCA 1977) warns that:

> "...the warrant and the **attached affidavit should be considered together** as defining the place to be searched, but the description in the affidavit controls over the language of the warrant itself." (emphasis added.)

See, **Riojas v State**, 530 SW2d 298, @303 (TCCA 1975).

The United States Supreme Court mandates that a "general warrant" is prohibited under the Fourth Amendment to the U.S. Constitution. See, **Ybarra**, supra, @342, n.4; **Maryland v Garrison**, 480 US 79, 107 SCt 1013, @1016, 97 LEd2d 72; **Adresen v Mayland**, 427 US 463, @480, 96 SCt 2737, 2748 (1976). Coupled with the undisputed fact that the search warrant served on Petitioner, it was a "general warrant". See **Ashcraft v State**, 934 SW2d 727, @734 (TxAp-CC 1996). It is well advised by the Texas Court of Criminal Appeals;

> "When we decide cases involving the United States Constitution, we are bound by the United States Supreme Court case law interpretation. If Texas case law is in conflict, we are obligated to follow United States Supreme Court federal constitutional precedents. See United States Constitution, Article VI. This Court has recognized that where one of our decisions on federal constitutional issue directly conflicts with a United States Supreme Court holding, we are bound to overrule our decision."

**State v Guzman**, 939 SW2d 631, @633 (TCCA 1998). This concludes the "general search warrant" served on Petitioner violated the Fourth Amendment prohibition against unconstitutional search and seizures.

-20-

CMPDF - www.texta.com

Petitioner offers that no exceptions follow. The fact that the Federal Constitution establishes the floor, while the State law extends the ceiling of rights to be afforded, is far from the case where Petitioner was not even permitted the foundation rights required by the Fourth Amendment's prohibition, let alone an opportunity to reach for a ceiling right under the Texas Constitution. Consequently, Petitioner has not been allowed to receive a fair and impartial hearing in the state court on his 4th Amendment claims and should receive a reversal on the Grounds for Relief as proposed.

## VII.

4. **"NO EVIDENCE" TO PROVE EACH ELEMENT OF OFFENSE**

PETITIONER ALLEGES "NO EVIDENCE" IS AVAILABLE TO PROVE EACH ELEMENT OF THE OFFENSE AS CHARGED, VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

Petitioner incorporates the previous Grounds for Relief, two and three by reference cumulatively in support of the contentions set out herein. The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution requires the government to prove every element of the offense charged beyond a reasonable doubt. **In re Winship,** 90 SCt 1068 (1970); **US v Williams,** 20 F3d 125 (CA5 1994); **Coit v State,** 808 SW2d 473, @475 (TCCA 1991). As well VTCA, Section 2.01 of the Penal Code contains the same requirement, aligned with the Texas Constitution, Art. 1, § 19.

An appellate review of the record must evaluate all the evidence in light of the finding made. This review is inclusive of circumstanial and direct evidence alike, and based on that evidence it is determined whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. **Jackson v Virginia,** 443 US 307, @319, 99 SCt 2781, @2879, 61 LED2d 560 (1979). It stands equally based on all the evidence, that if, a reasonable minded jury must necessarily entertain a reasonable doubt regarding the Petitioner's guilt, due process requires that appellate review to find a reversed decision and order an acquittal.

Petitioner respectfully advances that the record evidence offers

"no evidence" to support the conviction of burglary of a habitation, because of the failed conclusion to find sufficient each element of the offense as charged.

The burden remains upon the State to prove beyond a reasonable doubt each element included in the Court's charge to the jury. This burden is always upon the State the never shifts to the accused. Thus, the presumption of innocence is never overcome until the burden of proof is satisfied by the State.

It is long since held axiomatic that the reasonable doubt standard of criminal law has constitutional stature, and that due process protects against conviction except upon proof of every fact necessary to constitute the crime charge. **In re Winship**, supra; **Jackson v Virginia**, supra, @2789. Moreover, a "no evidence" claim violates due process of law and can be raised at any time. **Ex parte Quirke**, 710 SW2d 582 (1986).

In the case at bar, Petitioner urges the resulting conviction was totally void of evidentiary support with "no evidence" to establish every element of the offense and is therefore invalid under the Due Process Clause of the 5th and 14th Amendments, USCA and Art. 1, § 19, Texas Constitution. See **Thompson v Louisville**, 80 SCt 624 (1960). Although the **Jackson** standard is the requirement for review of state conviction by federal courts, the due process requirements that it announced were based expressly on the 14th Amendment. This requirement is binding on the states and constitutes a minimum standard for sustaining a conviction.

Petitioner maintains the State was required to prove in a burglary of a habitation that:

    1. a person,

    2. without effective consent of owner,

    3. enters a habitation or building, not open to the public, and

    4. with intent to commit a felony or theft.

The proof must derive from the words, acts and conduct of the accused. In the instant case this is limited to the testimony presented by trial witnesses. Evidence may be either direct or circumstantial but it must derive from facts identifying specific conduct of the accused. **Carlsen v State**, 654 SW2d 444, @449 (TCCA 1983).

-22-

The record evidence is tainted with an alleged drug transaction and extracted information under coercion attributed to Petitioner under the influence of narcotics. Neither the detectives nor any additional witness testimony could place Petitioner at the scene of the burglary offenses. The complainant's in either case were conclusive to state that their residences had been violated. In neither case were there witnesses to testify seeing Petitioner entering any residences. Also, in either case no complainant witnessed Petitioner in possession of any property taken in the burglary of their residences.

Supplemental witnesses only testified to an extraneous offense of a drug transaction which was so speculative that Petitioner was never charged with such offense, nor was there any supporting evidence of an extraneous drug offense located at Petitioner's residence and submitted for lab analysis.

Thus, the thrust of the State's evidence relies solely upon coerced information claimed by the State to be voluntarily taken from Petitioner during arrest and interrogation. Therefore, the State admitted no actual evidence testimonial or communicative to tie Petitioner to either offense with which he was charged.

The search party entered Petitioner's home without consent of either himself or his mother. And any supporting testimony that the entry to search by Affiant was made under consent is readily determined to be under authority of an unconstitutional warrant as previously shown in preceding claims.

Petitioner admits to using heroin that day and was duly under the influence of its affect. Therefore, any statements made or consent given was done under the veil of coercive tactics employed by the detectives to take advantage of the opportunity to get into Petitioner's house as the detectives so heartily assert was necessary because of their suspicions an unverified informant rumor.

Consequently, Petitioner concedes that the State did provide (1) a person, obviously (2) without the consent of the owner, (3) enter the habitations, not open to the public. However, affording the evidence presented for each element of the offense advanced by the State it could not be shown that Petitioner was that person. Hence, Petitioner maintains whoever the individual was that performed these acts was not

himself.

Petitioner contends that countless items of property was taken from his home. Property items which were later returned to Petitioner's mother. Plainly, in the course of seizing property from Petitioner's home, is Vernon's Ann. CCP, Art. 18.06(b), to mandate of law enforcement officials, "...before the officer takes property from the place, **he shall** prepare a written inventory of the property and present a copy of the inventory to the owner or other person in possession of the property." (emphasis added.) Affiant and his search party failed to comply with Art. 18.06(b) of the Code of Criminal Procedure.

On concluding the search of Petitioner's residence the detectives taken the confiscated property and commingled them with property already present in the Burglary & Theft squad room rather than being taken to an appropriate property room for a proper confirmation of the inventory. Thus, the search was illegal as it was not performed in conformity with, TCCP, Art. 18.06(b). Therefore, any property seized were fruits of the poisonous tree and inadmissible.

The confiscation of demonstrable evidence from Petitioner's residence as performed indicates a broken chain of custody for the evidence seized to eliminate any certainty that property was derived from the suspect residence belonging to Petitioner. **LaGrone v State**, 942 SW2d 602, @617 (TCCA 1997); **Simmons v State**, 944 SW2d 11, @12 (1996).

Petitioner accedes to the fact that where no direct evidence is placed into the record and trial, a conviction for burglary may rest upon the accused being found in possession of recently stolen property without offering an explanation inconsistent with his guilt. **Chavez v State**, 843 SW2d 586, @587 (TCCA 1992).

A possession of recently stolen property can find no foothold applied to Petitioner, who was under the influence of a narcotic and coerced into revealing information under duress, under threat of his mother being arrested. Conversely, the record reveals the detectives had no intention of arresting Mrs. Ashcraft. Then, why was this statement propounded to Petitioner on numerous occasions throughout the record? This reflects an obvious intent that Petitioner was reminded time and again of this possibility to coerce his cooperation with the

CutePDF - www.cutepdf.com

detectives at all times. However, these admissions by Petitioner cannot be held admissible evidence as presented by the State.

The presence of tampering with and altering evidence strongly exists here, because the property taken from Petitioner's home was not inventoried as required by statute, and thereby verified. Clearly, the care and custody of the property was not maintained by proper identification and taken to the property room of the police station.

Hence, no stolen property was admitted into evidence at trial, it was only assumed to have existed at the word of the detectives. Therefore, the State failed to prove evidence relied upon as being what is was claimed to be. See Texas Rules of Criminal Evidence, 901(a).

These facts are conceded to by Petitioner, as this accounting is supported by the record evidence. In the light favorable to the prosecution the first three elements of the offense outlined, evolved from the circumstances and could be applied to anyone. Yet, the circumstances when viewed objectively do not implicate Petitioner as committing the offense as charged.

The fourth element of intent to commit theft by Petitioner cannot be discerned from the record evidence. Petitioner was under the influence of a narcotic drug on the day of arrest. Any questioning or communicative evidence extracted when Petitioner was in this condition undermines any attempt by the State to admit that evidence as voluntarily derived.

Intent, is essential to the offense of burglary of a habitation and the State bears the burden of proof beyond a reasonable doubt; it may not accede proof simply left to speculation and surmised inferences. See **Greer v State,** 437 SW2d 558, 559-60 (TCCA 1969); **LaPoint v State,** 750 SW2d 180, @182 (TCCA 1986).

The sum of state evidence is riddled with speculation, inference and "mere suspicion", none of which comport with the standard reasoned under **Winship & Jackson,** supra. The constitutional principle announced by **Winship** prohibits the state from using evidentiary presumptions that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every element of a crime.

Because the State must prove each element of the offense beyond a reasonable doubt, it may not shift the burden of proof by presuming one

-25-

CUtePDF - www.texisa.com

element upon proof of the other elements of the offense. **Francis v Franklin**, 471 US 307, @314, 105 SCt 1965, @1971, 85 LEd2d 344, @353; **Patterson v NY**, 432 US 197, @215, 97 SCt 2319, @2329, 53 LEd2d 281 (1977). And proof amounting to only a strong suspicion is 'no evidence' to support the offense as charged.

The record evidence apparently lacks discernible words or acts attributable to Petitioner to show he committed a crime. The 'no evidence' claim assets the state fails to show that Petitioner had the requisite intent to commit an offense. Discernibly, the state has chosen a less likely means of maintaining its burden of proof of each element of the offense. Thus, the conviction can not be sustained.

Except for the coerced statements taken from Petitioner involuntarily, the record evidence is void proof of each element of the offense as charged to show the State fails in its burden of proof.

With 'no evidence' to support each element of the offense charged to place Petitioner at the scene, or in possession of stolen property, or possessing the requisite intent to commit the offense the evidence is want of support to sustain the charged offense. If, as presented by evidence herein the verdict proves unreasonably beyond a doubt, due process requires the decided conviction is reversed and a judgment of acquittal is ordered. **Moreno v State**, 755 SW2d 866, @867 (TCCA 1988); **Jackson v Virginia**, supra; **Greene v Massey**, 98 SCt 2151 (1978).


## VIII.

5.   **INVOLUNTARY CONFESSION & INADMISSIBLE EVIDENCE**

> PETITIONER HOLDS THE UNITED STATES CONSTITUTION'S FOURTH AND FIFTH AMENDMENTS ARE VIOLATED WITH INVOLUNTARY CONFESSIONS AND INFORMATION PROVEN INADMISSIBLE IS OFFERED INTO RECORD EVIDENCE.

Petitioner incorporates the previous Grounds for Relief; two, three and four by reference cumulatively in support of the contentions as set out herein. Petitioner maintains a claim of an involuntary confession based on evidence obtained in direct result of an unconstitutional search and seizure is subject to exclusion. **Katz v US**, 389 US 347, @358, 88 SCt 507, @515, 19 LEd2d 576. Further as Petitioner construes, it is well settled that a specifically established exception

to the requirements of both a warrant and probable cause is a search
that is conducted pursuant to consent. **Davis v US**, 328 US 582, 593-94,
66 SCt 1256, 1261-62, 90 LEd 1453 (1953).

Considering Petitioner was "in-custody" virtually at the moment
police officials approached him just outside the kitchen door to his
home. Petitioner was handcuffed and told he was under arrest and shown
a one page search warrant, void of an affidavit, without being read
Miranda warnings. See **Miranda v Arizona**, 384 US 436, @474, 86 SCt 1602,
@1628, 16 LEd2d 694 (1981). [SEE EXHIBITS "A" 1 "D"]

Petitioner similarly relies upon **Escobedo v State of Illinois**, 84
SCt 1758 (1964), to enunciate the merit of the circumstances encountered
in the instant case, where the Supreme Court held:

> "The inclination develops to rely mainly upon such
> evidence, and to be satisfied with an incomplete
> investigation of the other sources. The exercise of
> the power to extract answers begets a forgetfulness
> of the just limitations of the power. The simple
> and peaceful process of questioning breeds a
> readiness to **resort to bullying and physical force
> and torture**. If there is a right to an answer,
> there soon seems to be a **right to the expected
> answer,—that is, to a confession of guilt**. Thus
> the legitimate use grows into that unjust abuse,
> ultimately. * * * This Court has recognize that
> "history amply shows that confessions have often
> been extorted to save law enforcement officials the
> trouble and effort of obtaining valid and
> independent evidence.* * * ." (emphasis added).

**Haynes v Washington**, 373 US 503, @519, 83 SCt 1336, @1346
(1980). (emphasis added.) [SEE EXHIBITS "A", "D", 1 "E"] ↓

Petitioner alleges that law enforcement in this case was solely
concerned with eliciting incriminating information. And each time
Petitioner requested the presence of his attorney or sought to make
contact, the officers threatened the arrest of his mother. The use of
explicit coercion is obviously in violation of the Fourth, Fifth and
Fourteenth Amendments to the U.S. Constitution. **Schmeckloth v
Bustamonte**, 412 US 218, @219, 93 SCt 2041, @2043, 36 LEd2d 854 (1973).

The record evidence must distinctly indicate that when the accused
waives his right to counsel, "a valid waiver of that right cannot be

established by showing only that he responded to further
police-initiated custodial interrogation." **Edwards v Arizona**, 451 US
477, @484, 101 SCt 1880, @1885, 68 LEd2d 378 (1981); **Hicks v State**, 860
SW2d 419, @430 (TCCA 1993); see also **Jones v State**, 742 SW2d 398, @404
(TCCA 1987).

Petitioner insists that he did not waive counsel's representation
at any stage during custodial interrogation which is addressed under the
**Hicks v State**, court holding that:

> "If, however, the invocation of counsel is unclear,
> interrogation may continue **for the sole purpose** of
> determining "whether the accused indeed wants to
> consult with counsel or wishes to proceed without
> benefit of counsel."" (emphasis added.)

In the case at bar, **Hicks** concurs Petitioner made requests for
counsel which requests were denied, also denying the constitutional
protections afforded when the police officials refused to discontinue
the custodial interrogation at his home or at the police station.

The court went on to hold similarly with Petitioner that although
he may have continued to respond to questions after the point of
requesting counsel "...does not demonstrate that he rescinded his
invocation of his right to counsel." **Edwards**, supra, @484, 101 SCt
@1884-85. And the court continued "...questioning was in violation of
appellant's Fifth Amendment rights and accordingly the trial court erred
in admitting any of the testimony following the invocation of his right
to counsel." See **Hicks v State**, supra, @430.

The record evidence is unrefutable that Petitioner refused to
initial the confession form where request for counsel is waived. Under
**Miranda** the right to counsel was one of the:

> "serious of recommended 'procedural safeguards'
> ... [that] were not themselves rights protected by
> the Constitution but were instead measures to
> insure that the right against compulsory
> self-incrimination was protected."

**Michigan v Tucker**, 417 US 433, @444, 94 SCt 2357, @2363-64, 41 LEd2d 182
(1974); **Davis v US**, 114 SCt 2350 (1994); see also U.S. Constitution,
Amendment V ("No person shall be compelled in any criminal case to be a

witness against himself.")

In addition, **Jackson v Denno**, 84 SCt 1774, @1780 (1964) sets forth that, "...it is axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." The record evidence is clear Petitioner was induced into complicity with law enforcement's inquisition to avoid threats to arrest his mother.

The Fifth Amendment itself does not prohibit all incriminating statements; absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions. **US v Washington**, 431 US 181, @187, 97 SCt 1814, @1818, 52 LEd2d 238 (1977). Notwithstanding, the **Miranda** Court, merely presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed on his **Miranda** rights and freely decides to forgo those rights.

Petitioner insists not having freely waived those protections in the circumstances evidenced by the record because; (1) Petitioner was under the influence of a narcotic drug, having injected heroin that day, (2) where Petitioner requested to have an attorney or sought to curtail the legal inquisition, the record is replete with imposed threats to arrest his  mother, (3) Petitioner in combination with the heroin injected was under the influence of a prescription narcotic, codeine (administered by police themselves).

These instances prove both coercion and demonstrate the duress imposed on Petitioner to incriminate himself in disregard of his constitutional protections under the Fourth and Fifth Amendments. As well concerted support is found in **Schmeckloth v Bustamonte**, supra, @2046, where that Supreme Court provide exception to voluntariness as:

> "The notion of 'voluntariness,'" Mr. Justice Frankfurther once wrote, "is itself an amphibian." (citation omitted) It cannot be taken literally to mean "knowing choice. "Except where a **person is unconscious or drugged or otherwise lacks capacity for conscious choice**,... (emphasis added.)

Because a claim for involuntary statements proves violative of two separate constitutional protections, the far-reaching analysis is drawn

CUMPDF - www.fesko.com

from "the totality of the circumstances" standard. **Schneckloth,** @259, 93 SCt @2064; **Withrow v Williams,** 113 SCt 1745 (1993).

Under the "totality of the circumstances" finding, Petitioner has shown the search warrant did not meet constitutional muster from previous the issues asserted. The warrant lacked an affidavit in support as required by Federal constitution and federal law. In turn, when the affidavit did appear nine months later, it was void of probable cause.

The couple that visited Petitioner's home and were later declared as informants were never proved to be credible and reliable. Also Affiant (Detective Nicolas Araiza) included false and unreliable information in the affidavit used for obtaining a search warrant. The acquisition of information was incredibly tainted when soundly shown the purported informants were under the influence of injecting heroin as was Petitioner the day of arrest. Thus, any information acquired from either source was not voluntarily obtained but coerced. **Schneckloth,** supra, @225, 93 SCt @2046-47 states consummately that:

> "[I]n cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, **wrings a confessions out of an accused against his will.**" (quoting **Blackburn v Alabama,** 361 US 19, @206-07, 80 SCt 274, @280, 4 LEd2d 242.)(emphasis added.)

And lastly, "under the totality of the circumstances" standard, police officials failed to employ the proper statutory and constitutional standard for leaving behind an inventory list of items of property confiscated from Petitioner's resident (see, Vernon's TCCP, Art. 18.06(b) & TRCE #901(a)).

Therefore, amid all the preceding violations by law enforcement, under "the totality of the circumstances" standard the only tenable means to sustain the State's proof is whether Petitioner or his mother gave consent to enter their residence and search. On this note, Petitioner declares that neither himself or his mother gave consent to the police entourage to enter and search the residence for purported illegal property or drugs. The illegal search was done under the

authority of an illegal warrant. The record explicates no consent was ever given, nor was there a valid warrant presented.

The U.S. Supreme Court held in **Bumper v NC**, 391 US 543, @550, 88 SCt 1788, @1792, 20 LEd2d 797 (1968), that;

> "...when law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion--albeit colorably lawful coercion. **Where there is coercion there cannot be consent.**" (emphasis added.)

Petitioner was under the influence of a narcotic drug and coercively urged to incriminate himself as similarly addressed by the Supreme Court of the United States in **Townsend v Sain**, 372 US 293, 83 SCt 745, @756, 9 LEd2d 770 (1963). Therein allowing for the fact that Townsend was purposely drugged with truth serum and repeatedly questioned, the Court held:

> "Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.
> * * *
> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court."

Petitioner alleges the record evidence relied upon by the State is not fairly supported and thereby "cannot be conclusive of federal rights." **Blackburn v Alabama**, supra, @208-09, 80 SCt @281, and where fundamental liberties of the individual are infringed, the court is to carefully scrutinize the state-court record.

Thus, where state procedural determinations are lacking Petitioner has no other alternative than to rely upon the federal process for corrective purposes is further supported by **Rodgers v Richmond**, 365 US 534, @541-42, 81 SCt 735, @739-40, 5 LEd2d 760 (1961), in regard to involuntary confessions admitted into the record evidence, where that Court's analysis concluded its;

> "...decisions have made clear that convictions
> following the admission into evidence of
> confessions which are involuntary, i.e., the
> product of coercion, either physical or
> psychological, <u>cannot</u> <u>stand</u>." (emphasis added.)

This point being well established by **Schmeckloth**, supra, @2046.

Petitioner provides that the confessions and information extracted in violation of the federal constitutional protections of the Fourth, Fifth & Fourteenth Amendments, were so done by psychological coercion as cited under the **Rodger** scrutiny indicated above. Cf. also **Schmeckloth**, supra @2047.

The U.S. Supreme Court accordingly questioned the ultimate voluntariness is,

> "...made clear that a finding of coercion need not
> depend upon actual violence by a government agent;
> **a credible threat is sufficient**."

The U.S. Supreme Court offers further, having said, "...coercion can be mental as well as physical...", in **Arizona v Fulminante**, 111 SCt 1246, @1252 (1991)(emphasis added).

Likewise, Petitioner has shown that no consent to search his premises was ever given, except assumed permissible by police officials under the authority of an illegal search warrant presented. The actions of police authorities to search by means of an unconstitutional warrant was illegal, without a voiced consent from either Petitioner or his mother.

A psychological and/or mental intrusion was used against Petitioner for information and permission to search without his consent. Being affected by police coercion and duress indicates that Petitioner's ability to reason unfettered and to make clear freely given and voluntarily offered decisions was beyond his capability when overborne by the illegal influence of the police authorities.

Essentially, Petitioner's confession and consent must be free and an unconstrained choice, or his capacity for self-determination is critically impaired. See **Colorado v Connelly**, 479 US 157, 169, 107 SCt 515, @522-23, 93 LEd2d 473 (1986); **Alvarado v State**, 912 SW2d 199, @211

(TCCA 1995); also **Rodriguez v State,** 934 SW2d 881, @887 (TCCA 1996).

The Fifth Amendment right by its terms grants the right to remain silent so as not to bear witness against oneself. This right begins with the custodial interrogation. That the Fifth Amendment protection privileges against responding to any official questions, and as consequence it would be held the use or derivative use of any compelled statements at any criminal proceeding violates the individual's Fifth Amendment rights. **Lefkowitz v Turley,** 414 US 70, 94 SCt 316, 322, 38 LEd2d 274 (1973).

Petitioner's Fifth Amendment privilege not to be coerced or overborne by duress for incriminating information and involuntary confessions is shown evident by police action herein. Additionally, the Fourth Amendment right to be free of illegal search and seizure was also unconstitutionally abrogated by the State admitting "fruit of the poisonous tree" of involuntary confessions into record evidence, posed by the State to be voluntarily extracted.

Under these conclusions Petitioner is entitled to an evidentiary hearing forthwith, or in the alternative a retrial with exclusion of the tainted unconstitutional evidence.

## IX.

**6.   SIXTH AMENDMENT RIGHT TO COUNSEL DENIED**

> PETITIONER HAS BEEN DENIED THE RIGHT TO COUNSEL OF CHOICE IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Petitioner avers to having been denied his Sixth Amendment right to preferred counsel of choice, which entails a Fourteenth Amendment right as well. At both trials, Petitioner and retained counsel of record, Glen Barnard addressed the issue of being removed from Petitioner's cases before the trial court. (Motion to Suppress, Vol.II, pp.3-13). Preceding each trial, both, counsel and Petitioner expressed displeasure with one another before the bench. As the record reflects trial counsel filed two separate motions to withdraw from representation of Petitioner, based on the conflicting beliefs regarding trial procedures and strategies involved. Second Trial (Vol.III, p.7,

CutePDF - www.fenito.com

line-16-20, p.11, line-24, p.12).

The Sixth Amendment to the U.S. Constitution holds that a defendant has a right to retain counsel of his choice as an element of effective assistance of counsel. Right to counsel encompasses the reasonable opportunity to employ and consult with counsel of choice, **Glasser v US**, 315 US 60, @75, 62 SCt 457, @467 (1942), otherwise a right to be heard is insignificant.

Further, a denial of a defendant's right to counsel of choice is so offensive to the concept of the basic requirements of a fair hearing that it amounts to a denial of due process of law under the Fourteenth Amendment. Cf. **Glasser**, supra, @70, 62 SCt @464.

Petitioner argues the facts are simple. Petitioner and Glen Barnard, counsel of record (retained), were at odds with one another. Both, Petitioner and Glen Barnard sought counsel's withdrawal from both cause(s) he represented. The request was summarily denied by the trial judge, each occasion presented. Petitioner requests to employ a different counsel was not intended to delay the juicial proceedings in any manner. In keeping with the right to counsel the Texas Court of Criminal Appeals "...has made it clear that ... a trial court may not impose an attorney upon a defendant against his will." **Burgess v State**, 816 SW2d 424 (TCCA 1991).

The scope of consultation must be thorough and is of vital importance to the accused. Therefore, this constituional right has basic contours which are identical in state and federal contexts. **Gideon v Wainwright**, 372 US 335, 83 SCt 792, 9 LEd2d 799.

When the trial court fails to make an inquiry into the cause for the requested withdrawal of counsel, it has abused its discretion by denying counsel of choice. And, such abuse of discretion by the trial court is cause for reversal.

Petitioner insists as well, in line with being denied counsel of choice, the trial court refused to permit trial counsel the required (10) ten days after receipt of an indictment to prepare for trial. The Court of Criminal Appeals has held in both, **Duhamel v State**, 7171 SW2d 80, 83 (TCCA 1986); **Heiselbetz v State**, 906 SW2d 500, 511 (TCCA 1995), that a denial of motion for continuance is examined for an abuse of discretion by the trial court.

Petitioner was denied due process and due course of law being denied an indictment in one cause. When the indictment was delivered to Petitioner counsel was not permitted the requisite (10) days to prepare. Not only was the offense lacking an indictment, but a motion for continuance was denied as well to permit counsel adequate time to prepare the cause to be heard before the court. These denial are outlined at Vernon's Ann. CCP Art. 26.03 & 27.12, to prove statutorily due process considerations.

Petitioner declares he was judicially prejudiced where counsel was denied the time period mandated to prepare as a conviction was rendered, which could have been found not guilty instead.

Petitioner's right to the counsel of choice was a denial of the Sixth Amendment. Which offends the Fourteenth Amendment to the U.S. Constitution as well. Despite the Sixth and Fourteenth Amendment's requirements regarding counsel of choice, Petitioner was forced to trial with unwanted counsel. Counsel's representation admittedly fell below the constitutional standard of effective assistance of counsel, inasmuch Glen Barnard attempted to eliminate his role as counsel to Petitioner.

Petitioner respectfully requests pursuant to this Ground for Relief that he is granted a reversal in line with caselaw precedent.

## X.

### 7.   LACK OF EFFECTIVE ASSISTANCE OF COUNSEL

PETITIONER HAS BEEN DENIED HIS SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner incorporates the previous Ground for Relief number Six herein by reference as cumulative support to the arguments and contentions set forth. Petitioner avers being denied effective assistance of counsel throughout the course of both state trials under the Sixth and Fourteenth Amendments to the U.S. Constitution.

The federal courts maintain in order to make a justicable and adequate resolution on whether the basis of counsel's performance is ineffective, that performance must fall below the standards announced in **Strickland v Washington,** 466 US 668, 104 SCt 2052, 80 LEd2d 674 (1984).

CAMPDF - www.texisa.com

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." The Supreme Court has established this as a two prong test which must be successively met and shown lacking in counsel's performance.    The two prongs to this test from **Strickland** include;

> "First, the defendant must show that counsel's performance was deficient. This required showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This required showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unrealiable."

Id. @687, 104 SCt @2064. To succeed on the first part of this test, Petitioner must show a "deficiency of performance" considering all the circumstances that counsel's performance "...fell below an objective standard of reasonableness ... under prevailing professional norms." Id. @687-88, 104 SCt @2064-65.

Petitioner primarily accounts for this first prong based on the fact that counsel for the defense, Glen Barnard made admissions to the trial court that he was not prepared for trial in Petitioner's causes. See Motion to Suppress (Vol. II, p.2). Both, Petitioner and counsel for defense, Glen Barnard expressed in open court that disconcerted efforts prevented them working together diligently to exonerate Petitioner from the charges he faced.

Therefore, Petitioner and counsel Glen Barnard submitted motions for his withdrawal as counsel of record. Because Petitioner had retained Mr. Glen Barnard for representation, it was Petitioner's unfettered choice to opt for alternate counsel to replace Mr. Barnard where attorney-client had different outlooks.

Petitioner contacted another counsel for representation, however was informed that counsel could not make any efforts on behalf Petitioner's causes until Mr. Glen Barnard was dismissed from said causes. Presenting this matter before the trial court, the judge abused his discretion to force Petitioner to remain under the inadequate

-36-

representation of counsel, Glen Barnard.  The trial judge denied both, counsel's motion and Petitioner's motions for withdrawal of Mr. Barnard from representation. Motion to Suppress (Vol. 2, pp.3-13).

Petitioner offers not only did counsel of record, Mr. Barnard prove unprepared for trial proceedings, but he as well made no attempts at pre-trial preparations.  There were instances where counsel, Glen Barnard was due to appear before the court in representation of Petitioner, and counsel failed to appear.  On one occasion Mr. Glen Barnard was held in contempt of court, Second Trial (Vol.IV, pp.2-4), for repeated failures to make timely appearances in court.

Counsel Glen Barnard attempted to withdraw before the first cause was called to trial. This request was denied.  Again, the trial judge abused his discretion in this instance to compel Petitioner to trial with a disgruntled advocate.  The trial judge went further to appoint counsel Barnard to all charges against Petitioner. Second Trial (Vol.III, pp. 2-11).  Petitioner lodged objections to the courts actions of appointing Mr. Glen Barnard to all pending charges.  Petitioner's objections went unheeded.

On 22 June, 1992, Glen Barnard, counsel of record appeared before the court and requested a continuance, declaring, "...I did nothing in preparation for this case, I have not had an opportunity to prepare." Second Trial (Vol.V, p.3).  The trial judge denied counsel Barnard's requested continuance and the cause was compelled into a hearing without counsel's proper preparation.

While the reviewing court makes deference to counsel's performance, to maintain "...a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... and might be considered sound trial strategy." **Strickland**, supra, @689 , 104 SCt 2065.  Petitioner offers that counsel's performance or lack thereof to be prepared could not be considered trial strategy, and must obviously indicate "counsel's performance fell below the standard of reasonable assistance".

Thus, under the first prong of the **Strickland** test counsel Barnard failed to provide efficient representation, and was shown deficient by his own admissions to the trial court.  By the same token, the trial court's abuse of discretion was partly responsible for the deficient

-37-

performance rendered by counsel, Glen Barnard in both causes which he represented. This deficiency failed further to properly investigate the alibi witnesses essential to Petitioner's defense.

The duty to investigate the cause being represented is a part of Petitioner's right to competent counsel. This principle is so fundamental inasmuch a failure to entertain pre-trial investigation can itself amount to ineffective assistance of counsel.

On the note of counsel's failure to properly prepare for trial, the Eighth Circuit has held in **McQueen v Swenson**, 498 F2d 207, 217 (CA8 1974) that;

> "The most able and competent lawyer in the world can not render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justiciable defense."

Id. Without adequate preparation by counsel of record, the lawyer cannot fulfill the role of advocate for defense. This is accordingly assumed from counsel Barnard's admission before the court.

To succeed in proving the second prong to the **Strickland** test, referred to as the "prejudice to defense", Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, @694, 104 SCt 2068. Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id.

The Sixth Amendment mandates in light of the representation of counsel shown to be deficient, Petitioner is required to show how that deficient representation prejudiced him, to show a "deprivation of a fair trial." Petitioner urges that where counsel Barnard's performance admittedly fell below the professional standard of performance to prove effective, that lack of professionalism grossly prejudiced a fair outcome in the trial proceedings.

Petitioner avers that considering, and eventually going to trial with the causes at bar, was because he was actually innocent of the charges facing him. However, to the contrary a conflict in

-38-

representation was obvious because Glen Barnard only presented a plea arrangement to Petitioner, which Petitioner was not interested in. Petitioner holds counsel Barnard was so adamant regarding the plea arrangement that he was nearly forced to accept this in lieu of trial.

Petitioner strongly reasoned a minimum of investigation and preparation would have altered the outcome in these proceedings. In criminal litigation, as in other matters, information is the key guide to decisions and action. Instead counsel failed to properly investigate to develop information relevant to the causes. By counsel's admission in open court, "he was not ready". And, being compelled to trial unprepared counsel failed to object at key points necessary to be preserved for appeal.

Additionally, counsel Barnard allowed the prosecution to prejudice the proceedings with extraneous offenses for which Petitioner was never charged. In either case, the prosecution offered the testimony of Juanita Torres, which entailed an extraneous offense. Also, Juanita Torres impeached her own testimony with inconsistencies that shown she was an admitted drug addict concerned with nothing more than fulfilling her addictive needs and nothing more. Therefore, Torres' conflicting testimony served no purpose other than to prejudice Petitioner's trial outcome, which was not objected to by counsel Barnard. Nor did trial counsel impeach the testimony of Juanita Torres.

This evidence (Torres testimony) was inflammatory and prejudicial to the outcome of the trial proceedings. And, had counsel adequately prepared the prejudicial effect of his deficiencies may have been avoided altogether.

Any curative actions at this stage was far beyond the competency of an effective counsel operating solely with the interest of his client at heart. In fact, this prejudicial affect is discussed by the Fifth Circuit in US v Rusmisel, 716 F2d 301, @304-05 (CA5 1983), where that court offered:

> "[T]his Court concludes that defense counsel's failure to object to prosecutions introduction of evidence of personal usage of drugs by defendant's, failure to object to prosecutions attempt to prove guilt by association with drug users, and failure to object to the inflammatory remarks in closing

CIMPDF - www.fenira.com

> argument rendered petitioner Rusmisel's trial
> fundamentally unfair.... Defense counsel's failure
> to object to prosecutorial questions about personal
> drug usage of the various witnesses amounts to
> ineffective assistance of counsel only if the
> remarks are so prejudicial as to render the trial
> fundamentally unfair."

The above holding precisely parallels the deficiency Petitioner contends
was demonstrated by counsel Barnard in his failure to object to
countless aspects of the trial proceedings.

Counsel failed to adequately inform Petitioner of his strategies
and motions to be filed, because no usual pre-trial motions were filed,
nor were trial strategies considered because counsel Barnard was
convinced he could induce Petitioner to plead out to a pre-arranged
sentencing agreement. When Petitioner refused counsel's constant
badgering to plea, counsel Barnard would not accept Petitioner's phone
calls from jail and did not discuss aspects of the defense.

The most fundamental element of competent representation of any
client is the establishment of trust and confidential relationship.
This was lacking between counsel and Petitioner. Moreover, the
prejudicial effect of counsel's admitting to not preparing for trial is
evident in the fact a third cause was heard against Petitioner. In the
latter matter counsel Barnard was prepared and properly objected during
trial, to result in the finding of not guilty, based on the same
evidence presented in the former two cases. Counsel in the latter cause
obtained rulings on pre-trial motions filed and functioned effectively.

By comparison, in light of counsel's admission the performance was
deficient and fell below the normal standard of professional assistance
required to meet the Sixth Amendment standard. Likewise as shown,
counsel's performance proving deficient in committing countless trial
errors prejudiced the proceedings to the extent that it rendered the
proceedings unfair to Petitioner, and unreliable in light of counsel's
lack of preparation, investigation and diligent involvement in trial
proceedings overall. There is a reasonable probability that, but for
this deficiency, the result of the guilt and penalty phases would have
been different, that is, the deficiency undermines confidence in the
outcome. This is comparably shown by the third trial resulting in a not

CUtePDF - www.twnio.com

guilty decision. [SEE EXHIBIT "F"]

Petitioner having shown both prongs of the **Strickland** test applicable to trial counsel, Glen Barnard is due a reversal in the least due to counsel's deficient performance proving ineffective assistance of counsel contrary to the Sixth Amendment.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays of this Honorable Court to find that he is illegally confined in restraint of his liberty in breach of the Texas and United States Constitutions, as evidenced hereto. Without a genuine reading by this Court a "fundamental miscarriage of justice" will prevail to keep an innocent man confined unreasonably. The interest of justice would be best served by this Court's granting said Writ on the grounds advanced. Alternately, Petitioner asks that an evidentiary hearing is held to resolve the legal and factual claims asserted.

RESPECTFULLY SUBMITTED THIS 30TH DAY OF November , 1998.

JON ALAN ASHCRAFT,
PETITIONER, PRO SE
ROUTE 5, BOX 1500 - #638807
ANGLETON, TX 77515

### UNSWORN DECLARATION

I, declare and affirm under penalty of perjury that the foregoing facts contained herein are true and correct to best knowledge. Executed this the 30th day of November , 1998.

JON ALAN ASHCRAFT,
PETITIONER, PRO SE

## CERTIFICATE OF SERVICE

I, the undersigned do hereby certify that a true and correct copy of the foregoing document was served on the Clerk for the United States District Court, Southern District of Texas, by placing same in a sealed wrapper, properly addressed with first-class postage affixed thereto. And, placed into the hands of TDCJ-ID mailroom personnel for delivery by the U.S. Postal Service on this _30th_ day of _November_ , 1998. An additional copy was enclosed to be forwarded to the State Attorney General's office.

JON ALAN ASHCRAFT,
PETITIONER, PRO SE