**28**

# COPY

United States District Court
Southern District o. Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**OCT 2 3 2001**

**Michael N. Milby
Clerk of Court**

| | | |
|---|---|---|
| *JON ALAN ASHCRAFT* | § | |
| Petitioner, | § | |
| | § | |
| *V.* | § | Misc. No. B-98-031 |
| | § | |
| *JANIE COCKRELL, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, INSTITUTIONAL DIVISION,* | § | |
| Respondent. | § | |

## RESPONDENT COCKRELL'S MOTION FOR SUMMARY JUDGMENT
## WITH BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES respondent Janie Cockrell, Director of the Institutional Division, Texas

Department of Criminal Justice, ("the Director"), by and through his attorney, the Attorney General

of Texas, and files this Respondent Cockrell's Motion for Summary Judgment with Brief in Support.

In support thereof, the Director would respectfully show the court the following:

### I.

### JURISDICTION

The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§

2241, 2254.

### II.

### BACKGROUND

This is a habeas corpus case brought by a Texas state prisoner, Jon Alan Ashcraft

("Ashcraft"), under 28 U.S.C. §§ 2241, 2254. The Director filed a motion to dismiss Ashcraft's

petition as time-barred under 28 U.S.C. § 2244(d).[1] Thereafter, this court ordered the Director to

"respond thoroughly to Petitioner's Objections and to his original § 2254 petition." [Docket Entry

---

[1] The Director has previously forwarded copies of Ashcraft's state writ proceedings to the court.

#10]. On May 1, 2001, the Director filed a response and objections to the court's order. Subsequently, on June 21, 2001, this court ordered the Director to "respond to the merits of the timely portion of [Ashcraft's §2254] Motion." [Docket Entry #17].

## III.

## DENIAL

The Director denies each and every allegation of fact made by petitioner, Jon Alan Ashcraft, ("Ashcraft"), except for those allegations supported by the record and for those allegations specifically admitted herein.

## IV.

## STATEMENT OF THE CASE

### A.    Procedural History.

Ashcraft challenges the Director's lawful custody of him pursuant to a judgment and sentence from the 357th District Court of Cameron County, Texas, in cause number 91-CR-1371-E, styled *The State of Texas vs. Jon Alan Ashcraft*.[2] *Ex parte Ashcraft*, Application No. 24,803-02, at 89-92. Ashcraft was indicted for burglary of a habitation with an enhancement allegation included. *Id.* at 62. Ashcraft pleaded not guilty to the charged offense. *Id.* at 89. On April 8, 1992, following a jury trial, the jury found Ashcraft guilty of burglary of a habitation, found the enhancement allegation to be true, and assessed punishment at seventy-five years confinement in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), a $5,000.00 fine. *Id.*

Ashcraft's conviction was affirmed by the Thirteenth Court of Appeals of Texas on August 22, 1996. *Ashcraft v. State,* 934 S.W.2d 727 (Tex. App.–Corpus Christi 1996, pet. ref'd). Thereafter, Ashcraft filed a petition for discretionary review ("PDR"), but the Texas Court of Criminal Appeals refused the petition on May 7, 1997. *Ashcraft v. State*, PDR No. 260-97. Ashcraft

---

[2]    Ashcraft is also being held pursuant to a subsequent burglary of a habitation conviction from the 357th District Court of Cameron County in cause number 91-CR-1521-E. *Ex parte Ashcraft*, Application No. 24,803-03, at 89. On August 31, 1992, Ashcraft received a seventy-five year sentence set to run consecutively with the challenged conviction. *Id.*

2

CBMPDF - www.texia.com

filed his first applicable state writ of habeas corpus on June 16, 1998.[3] *Ex parte Ashcraft,* Application No. 24,803-02, at 1. The Texas Court of Criminal Appeals denied the application without written order on September 16, 1998. *Id.* at cover.

## B.    Factual History.

A hearing on the motion to suppress was conducted and the trial court denied the motions to suppress. II SF 14-248, 249.[4]

Ruben Roy Casares testified that he lived at 802 Ebony in the Parkwood Subdivision of Harlingen, Texas on June 22, 1991. IV SF 14-15. On June 21, 1991, due to a broken air conditioning unit, his wife left the house early in the evening to stay at her sister's house and he left at 10:30 p.m. to go fishing. IV SF 17-8. He did not return until 7:30 a.m. the next morning in time to go to work at 8:00 a.m. IV SF 17. He did not realize a burglary had occurred until he returned to his residence at 8:20 a.m. to meet the air conditioner repairmen. IV SF 17-18. In his den he noticed the television, VCR, and the radio stereo systems were missing. IV SF 19. Then, he noticed that the front door had been forced open because there was a piece of wood frame still in the hallway. IV SF 19. Further, he went to his bedroom and noticed that a supply of firearms including Weatherbys, a Brown Setory shotgun, over and under, Remington 1100 shotguns, a Colt revolver, and other guns had been stolen. IV SF 20-21. Casares and his wife remembered that some cars had been parked at their residence prior to the burglary. IV SF 23-24. After the burglary, he and his wife drove around the neighborhood looking for these cars. IV SF 24. They happened upon the cars that resembled the ones they had seen and so they contacted the police. That residence turned out to be Ashcraft's. IV SF 24.

Nicholas Araiza is a police officer involved with investigating burglaries and thefts. IV SF

---

[3]    Ashcraft's first and third state applications for writ of habeas corpus are irrelevant to the instant proceedings because those state writs are challenges to his subsequent burglary of a habitation conviction (cause number 91-CR-1521-E). *Ex parte Ashcraft*, Application Nos. 24,803-01, at 93; -03, at 89.

[4]    "SF" refers to the Statement of Facts preceded by the volume number and followed by the page reference.

53. Officer Araiza was familiar with several burglaries occurring in the Parkwood area. IV SF 56. On Saturday, June 22, 1991, he had read the phone logs and was familiar with a burglary of a habitation having occurred at 802 Ebony. IV SF 54. The next day, when the name Jon Alan Ashcraft came up as a potential suspect, he and another officer went to establish a surveillance of the house and to make contact with Ashcraft. IV SF 55-56. When the officers returned to watch the Ashcraft house again, they noticed a couple drive up and exchange something with Ashcraft and then quickly take off. IV SF 68-69. They proceeded to follow the couple in the yellow Nissan to check and see if they had just purchased drugs from Ashcraft. IV SF 73. The couple voluntarily drove to the police station and signed sworn statements relaying that they had purchased drugs from Ashcraft. IV SF 87. Based on these statements, Araiza drew up a search warrant. IV SF 87. The warrant was served on both Ashcraft and his mother. IV SF 91-94. Ashcraft was read his rights and was arrested to prevent him from disposing of drugs. IV SF 94, 95. Ashcraft told the officers where the drugs and stolen property were located in order to exculpate his mother. IV SF 97. Seventy-seven items of stolen property, including property from 802 Ebony, were recovered mostly in Ashcraft's room, which is where the drugs were located. IV SF 100-02. Ashcraft was then transported to the jail. IV SF 102. Ashcraft gave the officers two voluntary statements, one indicating the facts of the 802 Ebony burglary and the other a list of houses he had burglarized, taken after he went with the officers and indicated which houses he had broken into in the Parkwood area, including the house on 802 Ebony. IV SF 105-09, 110-11; Tr 24-25, 26. The officer testified that at no time did Ashcraft exhibit withdrawal symptoms. IV SF 104, 105, 112, 115-16. Also, he testified that Ashcraft was given five one-pill doses of Tylenol 3 as prescribed on the medication bottle. IV SF 131.

Officer Byrum's testimony was consistent with Officer Araiza's testimony. V SF 247-406.

Juanita Torres testified that she purchased heroin from Ashcraft as she had done previous times. IV SF 214. She and her common-law husband, Augustin Pena, drove up in a yellow Nissan truck and stayed at Ashcraft's place long enough to buy two syringes of heroin. IV SF 227, 213, 218. They left Ashcraft's house and went to the park to shoot up. IV SF 219. They then went to HEB

4

CMsPDF - www.fastio.com

and were stopped by the police. IV SF 219-20. She was told that despite the fact that they had committed an offense, she was not being targeted. IV SF 224. She and Pena voluntarily drove to the police station and gave voluntary statements. IV SF 222.

The defense put on two witnesses who were in Cameron County jail at the same time as Ashcraft and they testified that when they saw Ashcraft he looked high, intoxicated, and spaced out. V SF 414, 428, 434. Further, his mother testified that she was scared when the officers served the search warrant on her. V SF 453-54. She stated she was not aware that stolen property was located in her house, but she was aware of Ashcraft's heroin problem and had been trying to get him to quit for some time. IV SF 472.

## IV.

### PETITIONER'S ALLEGATIONS

The Director understands Ashcraft to allege the following:

1. There was a conflict of interest between the Court of Appeals judge and his defense counsel.

2. An illegal search and seizure occurred in violation of his Fourth Amendment rights.

3. An unconstitutional search and seizure occurred in violation of his Fourth Amendment rights.

4. There was no evidence to support his burglary of a habitation conviction.

5. His confessions were involuntary, thus, they were inadmissible evidence.

6. His right to counsel of choice was denied.

7. He received ineffective assistance of counsel for the following reasons:

   a. His counsel was unprepared.
   b. His counsel failed to make pre-trial preparations.
   c. His counsel did not investigate an alibi witness.
   d. His counsel allowed Torres's testimony regarding extraneous offenses.
   e. His counsel would not accept phone calls or discuss the case with him prior to trial.

Fed. Writ Petition at 3-41.

## VII.

## MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

**Standard of Review.**

A petition for habeas corpus relief is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") if the petition is filed after April 24, 1996 -- the effective date the federal habeas corpus statutes were amended. *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997), *cert. denied*, 525 U.S. 859, 119 S. Ct. 144 (1998) (AEDPA applies to a petition filed by state prisoner after April 24, 1996); *see Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 2068 (1997) (the AEDPA only applies to those noncapital habeas corpus cases filed after its effective date of April 24, 1996). Ashcraft executed his federal writ petition on November 30, 1998, therefore, Ashcraft's petition is subject to review under the AEDPA. Fed. Writ Petition at 9.[5]

The AEDPA provides that a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2001). A state court decision may be "contrary to" Supreme Court law in two ways: first, if the state court arrives at a conclusion opposite of the Supreme Court on a question of law; second, if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite conclusion. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (citing *Green v. French*, 143 F.3d 865, 869-870 (4th Cir. 1998)).

---

[5]   A *pro se* prisoner's habeas petition is filed, for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

6

In determining whether a state court decision involves an "unreasonable application" of Supreme Court law, a federal habeas court's "inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S. Ct. at 1521. Under this clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411, 120 S. Ct. at 1522.

Moreover, on review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition, the Director moves for summary judgment and thus bears the burden of informing the court of the basis for the motion and identifying pleadings and other record evidence that demonstrate the absence of any genuine issues of material fact. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 191 (5th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). If the moving party makes the required showing, then the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Here, the record shows that the Director is entitled to judgment as a matter of law and, thus, the court should summarily dismiss Ashcraft's claims with prejudice.

### 1. Ashcraft's conflict of interest claim is lacking in merit and must fail.

Ashcraft claims that conflict of interest occurred because a judge that was on the panel from the Third Court of Appeals that affirmed his conviction had been law partners for ten years with his defense counsel. Fed. Writ Petition at 3-5. This claim is frivolous and must fail.

First, Ashcraft's allegation that a conflict of interest existed between a member on the panel from the Third Court of Appeals that affirmed his conviction is conclusory. Ashcraft has not alleged any facts in his federal writ petition indicating that a conflict of interest existed, that the two indeed

7

worked as law partners in the past, or that he was harmed by such association. Fed. Writ Petition at 3-5. Under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, a petition is required to "specify all the grounds for relief" and "set forth in summary form the facts supporting each of the grounds thus specified." In order to state a claim, a habeas corpus petitioner must allege facts that, if true, would entitle him to relief. *Theriot v. Whitley*, 18 F.3d 311, 315 (5th Cir. 1994). Moreover, bald assertions without evidentiary support are insufficient to warrant relief. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

> Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court) unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.

*Id.* (footnote omitted). Here the same is true. The allegation must fail.

Further, when Ashcraft presented this claim to the state courts on state habeas, the court found that the claim was too generally pled to warrant relief and that Ashcraft failed to provide compelling proof to meet his legal burden. *Ex parte Ashcraft*, Application No. 24,803-02, at 55. As discussed above, Ashcraft has not provided any support for his claim in his federal writ petition. *See* Fed. Writ Petition at 3-5. As a result, Ashcraft cannot establish that the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law;" thus, this frivolous claim must fail. 28 U.S.C. § 2254(d)(1).

## 2. Petitioner's Fourth Amendment claims have been fully litigated and are barred from Federal habeas consideration. (Claims #2 & #3).

This court may not review Ashcraft's Fourth Amendment claims. The Supreme Court has long held that federal courts have no authority to review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court. *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976). Because Ashcraft was not foreclosed from litigating his claims in state court, this court may not review it.

Here, the state provided Ashcraft with a full and fair opportunity to litigate his Fourth Amendment claims. Ashcraft had these claims addressed in his direct appeal and in his state writ of habeas corpus. *Ashcraft v. State*, 934 S.W. 2d 727, 732-36; *Ex parte Ashcraft*, Application No. 24,803-02, at 7-23, cover. Thus, not only did Ashcraft have the opportunity to litigate his Fourth Amendment claims in state court, he exercised the opportunity to do so. Therefore, pursuant to *Stone v. Powell*, these claims are barred from federal habeas corpus review.

### 3.    Ashcraft's no evidence claim is without merit and must fail.

Ashcraft claims that there was no evidence to support his burglary of a habitation conviction. However, the record shows that the evidence was sufficient to support his conviction. Therefore, this claim lacks merit and must fail.

In *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The Court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S. Ct. at 2789.[6] The essential elements of burglary of a habitation that had to be proved under the facts of this case are that (1) without the effective consent of the owner, Ashcraft (2) entered a habitation with (3) intent to commit theft." TEX. PENAL CODE ANN. §30.02(a)(1) (West 1990).

In applying the standard set forth in *Jackson, supra*, "all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. The Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences

---

[6]    Of course, on federal habeas corpus review a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991), *cert. denied*, 506 U. S. 833, 113 S. Ct. 102 (1992).

9

from basic facts to ultimate facts." *Id.* All credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994).

Further, the question on federal habeas corpus review, when a sufficiency of the evidence challenge is made to a presumptively valid state court conviction, is not whether the state courts complied with all "nuances" of state law or if the state courts failed to enforce a purely state rule; rather, the question is whether the evidence is constitutionally sufficient to support the conviction. *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991). This simply means that the evidence need merely satisfy the "'substantive elements of the criminal offense as defined by state law.'" *Id.* (quoting *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16). Finally, a federal habeas court must give great deference to a state court's determination of the sufficiency of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied,* 510 U.S. 1141, 114 S. Ct. 1127 (1994); *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir.), *cert. denied*, 474 U.S. 855, 106 S. Ct. 159 (1985).

This claim was presented to the trial court and to the Texas Court of Criminal Appeals in Ashcraft's state habeas application. *Ex parte Ashcraft,* Application No. 24,803-02, at 24-30. The Texas Court of Criminal Appeals correctly denied relief. *Id.* at cover. This was an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999). Therefore, this court cannot grant habeas corpus relief unless it determines under 28 U.S.C. § 2254(d) that the state court's determination involved an unreasonable application of the law to the facts. *Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (citing *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S. Ct. 1114 (1997)). To find that it was an unreasonable application of the law to the facts, this court must find that the "'state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" *Id.* (citing *Drinkard,* 97 F.3d at 769).

After considering the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found that Ashcraft committed the essential elements of burglary of

10

a habitation beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Casares testified that he realized that his house had been burglarized at around 8:20 a.m. on June 22, 1991, after he had returned from his work. IV SF 19. In his den he noticed the television, VCR, and the radio stereo systems were missing. IV SF 19. Then, he noticed that the front door had been forced open because there was a piece of wood frame still in the hallway. IV SF 19. Further, he went to his bedroom and noticed that a supply of firearms including Weartherbys, a Brown Setory shotgun, over and under, Remington 1100 shotguns, a Colt revolver, and other guns had been stolen. IV SF 20-21. Casares and his wife remembered that some cars had been parked at their residence prior to the burglary. IV SF 23-24. Thereafter, Casares and his wife decided to drive around the neighborhood looking for the cars and they happened to come across the cars parked at the residence of Jon Alan Ashcraft. IV SF 24. Based on this information, along with other information that Ashcraft was the suspect in other Parkwood burglaries, the police set up a surveillance of Ashcraft's house. IV SF 56. During that surveillance, Ashcraft was observed making what turned out to be a heroine sale. IV SF 69, 81-82. Both Pena and Torres gave statements detailing the drug deal at Ashcraft's residence. Transcript ("Tr") 18. Pursuant to these statements, the interviews, and the investigation, Casares concluded that Ashcraft was indeed selling heroine out of his residence and, thus, drew up an affidavit for a search warrant of the residence of 1710 South Parkwood. IV SF 86-87; Tr 22. Once the search warrant was executed, drugs and numerous articles of stolen property, including items stolen from 802 Ebony, were located at the residence, mostly in Ashcraft's bedroom. IV SF 95, 98, 100, 103. Finally, Ashcraft gave two voluntary statements: one, detailing the burglary at 802 Ebony and the other, detailing the houses that he had previously burglarized including 802 Ebony. Tr 24-25, 26; IV SF 108-110-111. Thus, there was sufficient evidence to sustain the conviction.

Ashcraft's claim amounts to nothing more than a disagreement with the fact-finder's resolution of conflicts in the evidence, therefore, it is foreclosed by settled principles of appellate review. *See United States v. Nguyen*, 28 F.2d at 480 ("All credibility determinations and reasonable inferences

are to be resolved in favor of the jury's verdict."); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1989) ("we should not substitute our view of the evidence for that of the fact-finder"); *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir.) ("the jury has the sole responsibility to judge the weight and credibility of the evidence"), *cert. denied*, 457 U.S. 1107, 102 S. Ct. 2906 (1982). Therefore, the Texas Court of Criminal Appeals's denial of relief on this claim is a reasonable application of the law to the facts and this claim must fail.

      **4.**    **Ashcraft's claim that his confessions were involuntary and inadmissible is without merit and must fail.**

Ashcraft claims that error occurred when the court failed to suppress the confession because the confession was involuntary due to police coercion and his drugged state. Fed. Writ Petition at 26-33. The record shows that the trial court conducted a hearing on the admissibility of the confessions and, thereafter, ordered that the confessions were admissible. II SF 14-248, 249. Furthermore, Ashcraft presented this claim on direct appeal and state writ of habeas corpus and the Texas courts affirmed the trial court's findings and correctly denied relief. Ashcraft has failed to show that the state court's adjudication of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2000). As a result, this claim lacks merit and must fail.

The privilege against self-incrimination protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. *Schmerber v. State of California*, 384 U.S. 757, 761, 86 S. Ct. 1826, 1830 (1966); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Once an accused requests an attorney, all interrogation must cease until the attorney is present. *Id.*, 384 U.S. at 474, 86 S. Ct. at 1627. However, communications may in fact continue if the accused initiates the interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1884-85 (1981). In addition, statements that are determined to be voluntarily given after being advised of constitutional

12

rights are admissible. *Davis v. U.S.*, 512 U.S. 452, 460-61, 114 S. Ct. 2350, 2356 (1994).

Additionally, federal law states that an accused is deprived of due process if his conviction rests wholly or partially on an involuntary confession. *Sims v. Georgia*, 389 U.S. 404, 407, 88 S. Ct. 523, 525 (1967); *Williams v. Maggio*, 727 F.2d 1387, 1389 (5th Cir. 1984). To be involuntary there must be coercion by government agents. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520 (1986); *Carter v. Johnson,* 131 F.3d 452, 462-63 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099, 118 S. Ct. 1567 (1998); *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992), *cert. denied*, 507 U.S. 996, 113 S. Ct. 1613 (1993). A habeas petitioner has the burden of proving facts which would lead the court to conclude that the confession was not voluntary. *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987). The voluntariness of a confession is a mixed question of law and fact. State court factual findings upon which a finding of voluntariness is based are entitled to a presumption of correctness. Although, the ultimate question of whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination. *Evans v. McCotter*, 790 F.2d 1232, 1235 n.1 (5th Cir.), *cert. denied*, 479 U.S. 922, 107 S. Ct. 327 (1986).

However, Supreme Court interpretations of 28 U.S.C. § 2254(d) teach that the factual determinations made by state trial and appellate courts after a hearing are to be accorded a presumption of correctness and are entitled to a high measure of deference by reviewing federal courts. Credibility choices, like express findings of historical fact, are entitled to a presumption of correctness on federal habeas corpus review. In *Self v. Collins*, 973 F.2d at 1214, the Fifth Circuit Court of Appeals accorded credibility choices made by a state court a presumption of correctness under 28 U.S.C. § 2254(d) (1995), and came to the same conclusion with regard to implicit credibility choices:

> Implicit in the state's findings (as well as the jury' verdict) is a determination that Self was not credible. "When . . . a trial court fails to render express findings on credibility but makes a ruling that depends upon an implicit determination that credits one witness's

13

> testimony as being truthful, or implicitly discredits another's such
> determinations are entitled to the same presumption of correctness
> that they would have been accorded had they been made explicitly."
> *Lavernia v. Lynaugh*, 845 F.2d at 500.

Implicit findings are entitled to weight equal to those that are expressly stated in the trial court's

findings of fact. *Marshall v. Lonberger*, 459 U.S. at 433-41, 103 S. Ct. at 850-51.

Furthermore, the Supreme Court has held many times that a federal court is not free to

substitute its own judgment as to the credibility of witnesses for that of the state court fact finder.

*Maggio v. Fulford*, 462 U.S. at 113, 103 S. Ct. at 2262. Further, in *Marshall v. Lonberger*, the

Supreme Court held that the credibility choices made by the state trial courts may not be redetermined

by the reviewing federal court when that court has not viewed the witnesses' testimony:

> As was aptly stated by the New York Court of Appeals, although in
> a case of a rather different substantive nature: Face to face with living
> witnesses the original trier of the facts holds a position of advantage
> from which appellate judges are excluded. In doubtful cases the
> exercise of his power of observation often proves the most accurate
> method of ascertaining the truth. . . . How can we say the judge is
> wrong? We never saw the witnesses . . . . To the sophistication and
> sagacity of the trial judge the law confides the duty of appraisal. *Boyd
> v. Boyd*, 252 N.Y. 422, 429, 169 N.E. 632, 634. *Id.*, at 339, 72 S. Ct.,
> at 698.

*Marshall*, 459 U.S. at 435, 103 S. Ct. at 851 (quoting *United States v. Oregon Medical Society*, 343

U.S. 326, 76 S. Ct. 690 (1952)).

The *Batson* [7] Court took into consideration the trial judge's credibility choices when it stated,

"[s]ince the trial judge's findings in the context under consideration here largely will turn on

evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id.*,

476 U.S. at 99, 106 S. Ct. at 1724 n.21; *see also United States v. Forbes*, 816 F.2d 1006, 1010 (5th

Cir. 1987). Finally, the Supreme Court has reaffirmed these principles in a case involving alleged

*Batson* error:

---

[7]   *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986).

14

For instance in *Aikens v. Texas*, 325 U.S. 398, 65 S. Ct. 1276, . . . (1945), we said: "[T]he transcript of the evidence presents certain inconsistencies and conflicts of testimony in regard to limiting the number of Negroes on the grand jury. Therefore, the trier of fact who heard the witnesses in full and observed their demeanor on the stand has a better opportunity than a reviewing court to reach a correct conclusion as to the existence of that type of discrimination. . . . *Hernandez v. New York*, ___ U.S. ___, ___, 111 S. Ct. 1859, 1871 (1991).

*Batson*, *Hernandez* and *Forbes* involved a direct appeal. However, *Wainwright v. Witt*, 469 U.S. 412, 429, 105 S. Ct. 844, 855 (1985) made clear that from appeal to habeas corpus, the standard of review changes from "great deference" to "a presumption of correctness."

Prior to trial, Ashcraft moved to suppress the search and seizure and his confessions made in June 1991, a hearing was conducted, and the motions to suppress were denied.   II SF 14-248, 249. Further, the trial made the following findings:

Here we have an incident where officers are in surveillance and observe what they feel is a drug transaction; they stop and verify that. And it's in their affidavit. So obviously, based on those factors, I'm going to find that there was probable cause. Therefore, I respectfully deny the motion to suppress the search and seizure.

I am likewise going to deny the motion is [sic.] suppress the confession based on what I've heard today.

II SF 248-49. These findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

Ashcraft raised this allegation on direct appeal and the Fourteenth Court of Appeals of Texas denied relief. *Ashcraft v. State*, 934 S.W.2d 727, 736-39. The court of appeals made the following findings:

"Appellant next asserts that the trial court should have suppressed the confessions because the police threatened and coerced him into confessing by threatening to jail his mother and withholding medication until appellant confessed. Appellant also suggests that he could not have knowingly, intelligently, and voluntarily confessed since he was under the influence of a narcotic and/or the medication.

15

In determining whether a confession was improperly obtained based on the ground that it was induced by the promise of some benefit to defendant, such promise must be 1) positive, 2) made or sanctioned by a person in authority, and 3) of such character as would be likely to influence the defendant to speak untruthfully. *Jacobs*, 787 S.W.2d at 399; *Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App.1964.) Ashcraft claimed that Detective Araiza threatened to arrest his mother and promised not to arrest her if he cooperated. The testimony of appellant's mother reflected his claim.[II SF 227] The State presented Araiza's testimony in which he stated that he made no threats or promises and that no force or coercion was used. [II SF 159] Araiza did tell appellant that his mother could be held accountable for any stolen property found on the premises. [II SF 94, 95, 96, 97] Araiza further testified that it was normal police procedure to tell the occupants of the house that they can be held responsible. Araiza also told appellant that 'it would be easier if he cooperated and let us know where he had the drugs in his house." Appellant cooperated and led the police to the drugs and stolen property because he did not want his mother involved. [II SF 94-95]

Prior to appellant's first confession, Araiza asked him if he understood that his mother might be held accountable, and appellant said he understood. [II SF 99] In ruling on a motion to suppress the evidence, it is within the trial court's province to determine whether appellant received a positive and unequivocal promise from a party in authority. By denying the motion to suppress the confession, the trial court answered the question in the negative. The trial court did not abuse its discretion in doing so.

Appellant's inducement argument is also based on his claim that an officer promised to get him medication as soon as he finished the confession. Appellant complained of back pain during his first confession and requested his medication which was Tylenol 3 with codeine. [II SF 188] Officer Byrum said that he would get the medicine for him. Byrum averred that he did not promise to procure the medication provided appellant finished the confession. [II SF 188] Appellant received the medication later that evening after Byrum retrieved it from appellant's house.[II SF 188] Appellant failed to show that the police positively and unequivocally promised medication in return for a confession.

We now address appellant's assertion that his confessions were involuntary since he was under the influence of heroin and/or the

16

codeine medication. Appellant had taken heroin the morning of his arrest. [II SF 53] Later that evening, during his first confession, appellant said he anticipated experiencing withdrawal symptoms but the officers observed none. [II SF 53] The next day, June 24, appellant received his medicine per prescription at 12:00 a.m., 4:50 a.m., 9:00 a.m., 12:00 p.m., and 4:00 p.m.[II SF 155-57] Appellant was arraigned the morning of June 24. [II SF 192-93] Hernandez, also being arraigned, testified that Ashcraft looked high and strung out. [II SF 211]**** During his ride through neighborhood later that morning, appellant said he was experiencing withdrawal symptoms but, again, the officers observed none. [II SF 61, 62, 109, 191-192, 194] Araiza mentioned that he believed Byrum gave appellant some medication during the ride. [II SF 107] Upon returning to the station, Appellant made his second confession at 12:00 p.m., the same time he had received his medication. [Tr 26; II SF 157]

Araiza testified that appellant received no medication during the making of the second confession.[II SF 163-164]**** Araiza did not observe appellant exhibiting any withdrawal symptoms prior to or during the second statement. Byrum stated that he was familiar with some symptoms that heroin addicts experience during withdrawal such as shakiness and getting horribly sick [II SF 163]**** According to Byrum, appellant did not show these signs; rather, he appeared normal and coherent. The officers consistently testified that appellant seemed normal and coherent and understood the proceedings. Appellant wanted to talk about the burglaries and volunteered to show them the houses he had burglarized.

The State's evidence contradicted appellant's assertions. The trial judge was the sole judge of the credibility of the witnesses at the hearing on the voluntariness of the confession. Because there is evidence in the record to support the trial court's finding that the confession was freely and voluntarily given, we cannot rule that the trial court abused its discretion.

*Ashcraft v. State,* 934 S.W.2d 727, 738-9 (Tex. App.–Corpus Christi 1996, pet. ref'd). The record supports these findings.[8] These findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

---

[8] For the court's convenience, the Director inserted references to the record in the text of the court of appeal's opinion.

Further, as the court noted in *Sumner*, 449 U.S. at 551, 101 S. Ct. at 771, the burden is on the petitioner to establish by convincing evidence that the factual determination by the state court was erroneous, and a reviewing court must find that it was not fairly supported by the record before disregarding it. *Maggio*, 462 U.S. at 113-18, 103 S. Ct. at 2262-64; *Lincecum*, 958 F.2d at 1278. Ashcraft has failed to show that the state court's adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding;" accordingly, relief must be denied. 28 U.S.C. § 2254(d).

**5.** **No Sixth Amendment rights were violated when Ashcraft was denied his counsel of choice.**

Ashcraft argued that his Sixth Amendment rights were violated because the judge would not remove his retained counsel, Mr. Barnard, just prior to a pretrial hearing and trial. Scrutiny of the record (II SF 3-13) shows that Mr. Barnard had not been paid his entire fee; had not contracted to represent Ashcraft on six cases; and was having some problems getting along with the client. Nevertheless, the court would not remove him or allow him to withdraw, and in fact, appointed him to represent Ashcraft in all six cases, on the basis that he had already made appearance on those cases, and in the face of Ashcraft's avowed indigence. (II SF 10-14). However, the Sixth Amendment right to counsel does not guarantee an unfettered right to one of choice. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) . Additionally, in *Moreno v. Estelle*, the court ruled:

> ...Accordingly, it is our view that once trial begins the right to defend in the proper person ceases to be absolute. At that point it lies within the trial court's discretion whether to permit the accused to proceed *pro se*. In reaching its decision, the trial court must balance whatever prejudice is alleged by the defense against such factors as disruption of the proceedings, inconvenience and delay, and possible confusion of the jury. *Id.* at 362. Furthermore, trial courts must necessarily be wary of last minute requests to change counsel lest they impede "the prompt and efficient administration of justice." *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978); *Bowman v. United States*, 409 F.2d 225, 227 (5th Cir.1969), *cert. denied*, 398 U.S. 967, 90 S. Ct. 2183, 26 L.Ed.2d 552 (1970).

> In summary, since this record does not support the defendant's contention that the trial court infringed his Sixth Amendment rights under *Faretta*, we find no error in the trial court's denial of Moreno's trial date request to dismiss his retained counsel.

717 F.2d 171, 176 (5th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S. Ct. 2353 (1984).

The facts in *Moreno* are strikingly similar in the fact that the request was made the day of trial, the "dissatisfaction" expressed by the defendant with counsel indicated that the defendant had conflicting ideas of the tactics of defense, and that he argued his Sixth Amendment right indicated he could have whatever counsel he chose. However, the law does not support this idea. The failure to postpone trial to allow Ashcraft to seek new counsel will not support habeas relief.

### 6. Ashcraft did not receive ineffective assistance of counsel.

Ashcraft claims that he was denied effective assistance of counsel for the following reasons: 1) Counsel was unprepared; 2) Counsel failed to make pre-trial preparations; 3) Counsel failed to investigate an alibi witness; 4) Counsel allowed Torres's testimony regarding extraneous offenses; 5) Counsel failed to accept phone calls or discuss the case with him prior to trial. Fed. Writ Petition at 35-41. However, Ashcraft has failed to meet his burden under *Strickland* and has failed to show that the state court's adjudication of the claims was "contrary to, or involved an unreasonable application of, clearly established Federal law;" thus, Ashcraft's ineffective assistance claims are without merit and must be dismissed. 28 U.S.C. § 2254(d)(1).

To obtain habeas relief based on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient, and that the deficient performance of counsel prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To satisfy the first prong of *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064-65; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). This objective standard is "highly deferential" and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at

2065. Further, a reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921, 113 S. Ct. 3035 (1993). Likewise, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

To satisfy the second prong of *Strickland*, the petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. The appropriate test for determining prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068; *see Lloyd v. Whitley*, 977 F.2d 149, 159 (5th Cir. 1992), *cert. denied*, 508 U.S. 911, 113 S. Ct. 2343 (1993).

A federal reviewing court need not address both prongs of the *Strickland* standard, but instead may dispose of an ineffective assistance claim based solely on a petitioner's failure to meet either prong of the test. *Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960, 115 S. Ct. 418 (1994). Moreover, it is not sufficient that the petitioner merely allege a deficiency on the part of counsel; he must affirmatively plead prejudice in his petition. *Hill v. Lockhart,* 474 U.S. 52, 60, 106 S. Ct. 366, 371 (1985); *Manning v. Warden, Louisiana State Penitentiary,* 786 F.2d 710, 712 (5th Cir. 1986). Also, the burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992), *cert. denied,* 508 U.S. 978, 113 S. Ct. 2977 (1993). In addition, a reviewing court is required to presume that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Amos v. Scott*, 61 F.3d 333, 347-48 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S. Ct. 557 (1995).

20

Finally, while a defendant is entitled to effective representation, this does not require that counsel make futile motions or objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994), *cert. denied*, 513 U.S. 966, 115 S. Ct. 432 (1994).

First, Ashcraft claims that his counsel rendered ineffective assistance by failing to be prepared or making pre-trial preparations. Further, Ashcraft claims that his counsel failed to investigate an alibi defense and failed discuss the case with him. However, these claims are unsupported and cannot justify federal habeas relief. All that Ashcraft offers in support of his lack of preparation claim is that defense counsel was late to the proceeding and that his counsel was filing a motion to withdraw. Fed. Writ Petition at 35-38. However, Ashcraft simply has not provided any facts from the record in support of his claims.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross*, 694 F.2d at 1011-12; *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

This is true for claims alleging ineffective assistance of counsel. *See West v. Johnson*, 92 F.3d 1385, 1399-1400 (5th Cir. 1996) (rejecting habeas petitioner's conclusory assertions that counsel failed to reasonably investigate and present exculpatory evidence); *see also Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (without a specific, affirmative showing of what missing evidence or testimony would have been entered if counsel had properly investigated, "'a habeas court cannot even begin to apply *Strickland's* standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance'") (citation omitted); *see also United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (defendant failed to produce the affidavit of the uncalled witness), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3534 (1984). The record actually shows that Ashcraft's attorney did in fact engage in pre-trial preparations when he filed motions to suppress the search warrant and any evidence obtained from such search and seizure and statements given by

21

Ashcraft while incarcerated. Tr 7, 30-31, 32-34. Further, Ashcraft does not provide an affidavit from an alibi witness or show that the witness would have appeared at the trial; hence, this failure to investigate claim must be rejected. Therefore, Ashcraft's trial counsel's performance cannot be determined to have fallen below an objective standard of reasonableness. Thus, Ashcraft cannot satisfy the first prong of *Strickland*; consequently his claims must fail.

Second, in Ashcraft's remaining allegation, he claims that his counsel improperly allowed Torres to testify to extraneous offenses committed by Ashcraft. Namely, the drug deal that occurred between Torres and Ashcraft. Fed. Writ Petition at 39. Ashcraft alleges this evidence to be inflammatory. However, this testimony was necessary because Ashcraft's attorney had already filed a motions to suppress the search warrant and the fruits obtained from such search based on the lack of probable cause. Tr 7, 30-31, 32-33. Torres supplied the officers with the probable cause to legally search Ashcraft's residence. The officers' observation of Ashcraft's drug sale and Torres's voluntary statement led directly to the issuance of the search warrant of Ashcraft's home and from thence, to the discovery of the stolen property, his arrest, and his confessions. [II SF 139] The drug sale to Torres was, then, an integral part of the proof necessary to obtain the burglary conviction. As a result, Ashcraft has failed to show deficient performance under *Strickland*.

Finally, Ashcraft cannot establish prejudice as to any of the ineffective assistance of counsel claims because given all of the evidence establishing his guilt he is unable to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 467 U.S. at 694, 106 S. Ct. 2068. Further, Ashcraft has not alleged any new facts that were not before the state court when Ashcraft's state writ of habeas corpus was being considered. Consequently, Ashcraft has failed to allege or establish that the state court's adjudication "involved an unreasonable application of clearly established Federal law," therefore, his ineffective assistance of counsel claims should be denied. 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 768.

22

# VIII.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Director respectfully requests that the court deny Ashcraft's writ with prejudice.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

MICHAEL T. McCAUL
Deputy Attorney General for
Criminal Justice

S. MICHAEL BOZARTH
Assistant Attorney General
Chief, Habeas Corpus Division

DENISE A. VILLARREAL
Assistant Attorney General*
State Bar No. 24008212
Southern Dist. No. 25,314

*Attorney in Charge

P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 463-2140
(512) 936-1400 (Fax)

23

# CERTIFICATE OF SERVICE

I, Denise A. Villarrreal, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Cockrell's Motion for Summary Judgment with Brief in Support has been served by placing same in the United States Mail, postage prepaid, on this the 22nd day of October, 2001, addressed to:

Jon Alan Ashcraft
TDCJ-ID No. 638807
Retrieve Unit
Rt. 4, Box 1500
Angleton, Texas 77515


Denise A. Villarreal
Assistant Attorney General

24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *JON ALAN ASHCRAFT,* | § | |
| Petitioner, | § | |
| | § | |
| *V.* | § | MISC. ACTION  NO. B-98-031 |
| | § | |
| *JANIE COCKRELL, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF* | § | |
| *CRIMINAL JUSTICE,* | § | |
| *INSTITUTIONAL DIVISION,* | § | |
| Respondent. | § | |

## ORDER

On this day came before the court for consideration Respondent Cockrell's Motion For

Summary Judgment and the court after considering the pleadings of the parties filed herein, is of

the opinion that the following order should issue:

It is hereby ORDERED, ADJUDGED, and DECREED that Respondent Cockrell's Motion is

hereby GRANTED.

SIGNED this _____ day of _____, 2001.


_____

JUDGE PRESIDING