*34*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 2 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **JON ALAN ASHCRAFT,** | * | |
| **Petitioner** | * | |
| | * | **MISC. NO. B-98-031** |
| | * | |
| **v.** | * | |
| | * | |
| **JANIE COCKRELL, DIRECTOR** | * | |
| **TEXAS DEPARTMENT OF** | * | |
| **CRIMINAL JUSTICE,** | * | |
| **INSTITUTIONAL DIVISION,** | * | |
| **Respondent.** | * | |
| | * | |

**PETITIONER'S WRITTEN OBJECTIONS TO THE PROPOSED
FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS IN
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Jon Alan Ashcraft, Petitioner Pro Se,
hereinafter "Petitioner" who now presents this "Petitioner's
Written Objections To The Proposed Findings, Conclusions,
and Recommendations In Magistrate Judge's Report and
Recommendations.

Therefore, Petitioner respectfully requests this Court
consider this motion with the liberal scrutiny in keeping
with the proviso enunciated in **Haines v. Kerner,** 404 U.S.
519, 92 SCt. 594 (1971), rather than considering this matter
under the stringent standards applied to pleadings drafted
by skilled counsel.  In support thereof Petitioner as
non-movant would show the Court the following:

-1-

2

Petitioner received the Magistrate Judge's Report and Recommendations on January 11, 2002 when he was contacted by the Le Blanc Unit Mail Room. Petitioner then filed an extension of time requesting an additional (30) days from the 10 days allowed to write written objections. Therefore, this would make this written objections due on February 20, 2002. Petitioner now timely files his Written Objections to the Magistrate Judge's Report and Recommendation by placing his Written Objections in the hands of the Le Blanc Unit Mail Room on February 19, 2002 via Certified Mail # ▓▓▓ 7099 ✗ 3220 0006 7961 5860 ✗ in compliance with the well established "Mailbox" Rule. **See Spotsville v. Cain,** 149 F3d 374, 378 (5th Cir. 1998) (Motion deemed filed the day he handed over to prison authorities for mailing, presumably the date he signed it); also see **Houston v. Lack,** 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Therefore, in effect, preserving all of the below listed written objections for appeal and de novo review by the District Judge of said court.

It is requested that the court take **JUDICIAL NOTICE** of the fact that Petitioner is severely handicapped in his access to courts in his very limited law library time allowed to him. Also, that the law library available to Petitioner is very limited in access to the books available to which results in an impediment to Petitioner's research is such a short time and that all TDCJ-ID law libraries lack on hand Sheppards citations to Federal, State and Supreme

Court law.  Petitioner also points out that he is currently
in an extensive Therapeutic Program in which he attends over
9 hours a day of intense programming  which also limits his
free time to work on legal matters.

On the preceeding context Petitioner humbly asks this
court take **JUDICIAL NOTICE**.

## I.

Jurisdiction is conferred to the Court pursuant to
28 U.S.C. § 2254, 2241, and Rules of Civil Procedure # 52
(a), (b) and # 59 (a), (b) & (e).

## II.

Petitioner's Written Objections to the Proposed
Findings, Conclusions, and Recommendations in Magistrate
Judge's Report and Recommendations, hereinafter, referred to
as "Report",  in listed form are as follows:

It appears that the Magistrate Judge has abused his
discretion by failing to perform a fair and complete review
of the following objections:

1.  The Magistrate Judge in his report erred in his
    findings to grant summary judgment due to the fact
    that Respondent has failed to invoke the correct
    jurisdiction for summary judgement.

2.  The Magistrate Judge has failed to apply Summary
    Judgement standards in review of the merits in
    opposition to United States Supreme Court precedent;

3.  The Magistrate Judge has failed to take notice that
    the Respondent, in effect, has defaulted on any
    claims to Petitioner's Habeas Corpus by not
    responding to the court's order in the appropriate
    time.

4.  The Factual History alleged facts are not correct
    and are misleading to the Court;

5.  On issue one (1) and (2) Petitioner has not had a
    full and fair review on his  U.S. Constitutional

4

Fourth Amendment Claims by the state court. The
search warrant was a "General Search Warrant" and
this type of warrant is "contrary to" clearly
established Federal law of the Supreme Court of the
United States. As well as the decision is based on
an unreasonable determination of the facts in light
of the evidence presented in state court proceeding.

6.  The state presented no evidence in Petitioner's
trial. Petitioner's confessions were involuntary,
thus, they were inadmissible evidence. The District
Court deferred to 'presumption of correctness."

7.  The District Court's Report adopts the improper
standard for counsel of choice;

8.  The District Court's Report Falls Short in applying
Supreme Court Precedent on the Sixth Amendment;

9.  The District Court's Report errs to understand
Petitioner's Due Process Claim of Conflict of
Interest.

OBJECTION NUMBER 1.

The Magistrate Judge in his report erred in his findings

to grant summary judgement due to the facts that Respondent

has failed to invoke the correct jurisdiction for summary

Judgement. As Petitioner pointed out in his JUDICIAL NOTICE

#(1) in his response to Respondent Cockrell's Motion for

Summary Judgement, Respondent invoked summary judgement

under 28 U.S.C. § 2241, 2254. Yet, there is no jurisdiction

under this title for a summary judgement without invoking

Federal Rules of Civil Procedure Rule # 56.

Further, the United States Supreme Court has

demonstrated from **Bell v. Hood**, 327 U.S. 678, 66 S.Ct.773,

90 LEd 939 (1946) that,

> ", the party that brings the suit is master
> to decide what law he will rely upon, & * * *
> (Constitution or laws) of the United States by
> his declaration of bill."

5

Id. @ 681, 66 S.Ct. @ 775. Petitioner established Habeas
Corpus jurisdiction with the initial filing of this matter.
In turn, Respondent has requested summary judgement relief
without invocation of the proper jurisdiction under FRC #56.

The U.S. Supreme Court undeniably contends from **FW/PBS,
Inc. v. City of Dallas**, 493 U.S. 215, 110 S.Ct. 596, 107 LEd
603 (1990) that:

> ".... it is the burden of the 'party who seeks
> the exercise of jurisdiction in his favor,
> (Citations Omitted) clearly to allege facts
> demonstration that he is the proper party to
> invoke judicial resolution of the dispute.
> (Citations Omitted) Thus, petitioners in this
> case must allege ... facts essential to show
> jurisdiction, If [they] fai[l] to make the
> necessary allegations; [they have] no standing.

Cf. **McNutt v. Gen. Motors Acceptance Corp.**, 295 U.S. 178.189
56 S.Ct. 780, 785, 80 LEd 1135 (1936). Respondent had
titled his pleading as a motion for summary judgement this
does not establish jurisdiction for summary judgement. The
actual statute relied upon must be stated  or as stated
above from **FW/PBD., Inc. v. City of Dallas** the party has no
standing lacking proper jurisdiction.

Hence, once Petitioner has met the burden and
established jurisdiction over Respondent by making a prima
face showing of the facts there is no need to pursue the
facts further. **Wilson v. Belin**, 20 F3d 644 @ 648 (CA 5
1994). The Court must accept uncontroverted allegations in
pleadings and resolve factual disputes emerging ... in favor
of Petitioner. **D.J. Investments v. Metzler Motorcycle Tire
Agent Gregg, Inc.**, 754 F2d 542, 546 (CA 5 1985); **Amoco
Chemical Co. v. Texas Tin Corp.**, 925 F.S. 1192, @ 1199

6

(SD Tx 1996.)

Therefore Respondent his failed to assure (invoke)
subject matter which is fatal to their summary judgement
motion.   In **Thomas   v. St. Luke's Health Systems Inc.,**
869 F.S. 1413 @ 1424-25 (1994): "A federal court, as a court
of limited jurisdiction, has a duty to assure itself that it
has subject matter jurisdiction in each case." Citing:
Sanders v Clemco Indus., 823 F.2d 214,2 216 (8th Cir.1987).
"Failure to plead federal jurisdiction is fatal"  See:
Thomas, supra @ 1424.

To take this one step further the Fifth Circuit ruled
in **Dunn-McCampbell Royalty V. National Park Service,** 112
F3d 1283 @ 1286 (5th Cir.1997) that: "Federal courts are
courts of limited jurisdiction, and they may not hear claims
without jurisdiction conferred by statute. Veldhoen
v. United States Coast Guard T.A., 35 F3d 222, 225 (5th
Cir. 1994).  Respondent is represented by the Attorney
General's office for the State of Texas.  They are not some
pro se litigant who are entitled to "liberal scrutiny".
Respondent has a battery of learned counsel with the latest
technology at their hands.  Surely Respondent should be held
to invoke the proper jurisdiction if they wish to succeed in
the summary judgement.  Respondent's motion for summary
judgement should fail on the mere fact that no jurisdiction
was ever invoked.

7

## OBJECTION NUMBER 2

The Magistrate Judge in his Report has failed to apply summary judgement standards in the review of the merits in opposition to United States Supreme Court precedent. In addition the court utterly ignores the fact that "contrary to..clearly established federal law" and the "unreasonably determined" facts standards have been reiterated favorably in **Williams v. Taylor,** 120 SCT 1495 (2000). Although the standard is cited by the District Court it is wholly lacking the objective application to the merit of the facts as offered by Petitioner. Additionally, the Court addresses Petitioner's claims out of sequence.

The District Court misconstrues facts & fails to apply summary judgement standards. The Supreme Court for the United States held regarding summary Judgement decisions in **Anderson v. Liberty Lobby Inc.,** 477 U.S. 242 @ 249, 106 S.Ct. 2505, 2511, 91 L.Ed2d 202(1986), that ...in considering a motion for summary judgement, the court will not "weigh the evidence and determine the truth of the matter." Instead, the court is to draw any permissible inferences from the underlying facts in the light most favorable to the non-moving party." **Matsushita Elec. Indus.Co. v. Zenith Radio,** 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 LEd2d 538 (1986).

Petitioner presented an affidavit with both state and federal habeas corpus writs. The affidavits are part of the record evidence that "is to be believed, and all justifiable inferences are drawn in favor of non-movant."

8

**Anderson,** supra @ 255, 106 SCt @ 2513; **Eastman Kodak v.
Inmage Technical Servs.,** 504 U.S. 451, 112 SCt 2072, 119
LEd2d 256 (1992).

The District Court has followed the state court findings
on the search warrant issue without the evidence being
supported by the record.  The District Court claims in its
recommendations that Petitioner directed the detectives to
drugs and stolen property.  However, in state court no
drugs, lab analysis of drugs or stolen property was
presented as evidence to the trial court.  Thus, the point
is a conclusory  allegation with out physical evidence
presented as required by law.  In this case Petitioner's
presentation of the facts is more consistent with the record
evidence, and is to be accepted as true in accord with
Supreme Court precedent regarding summary judgement review.
 While the District Court follows the state court assertion
that 77 stolen items of property was recovered from
Petitioner's home, no inventory list (as required by law)
was left at the residence with Petitioner's mother, nor was
**any** stolen items of property presented at trial before the
court or jurors.  Allegedly the detectives took 77 items
from the Petitioner's home but without an inventory list
being left with Petitioner or his mother there is no legal
chain of evidence and therefore Petitioner has been
prejudice and harmed by this because all we have is the word
of the detectives.  Without more than the word of the
detectives there is no evidence.  In fact, many items were

9

returned to Petitioner's mother because the detectives had
taken many personal items of Petitioner.  In essence the
police without any list of stolen property just rummaged
through Petitioner's house at will under the illusion of a
legal search warrant.  The District Court abused its
authority relying on speculation instead of factual
evidence.  The trial court lacking physical evidence of
drugs or stolen property, thus no corroboration in the
support of allegations presented at trial.

The District Court erroneously held that Juanita Torres
received two syringes of heroin from Petitioner, while
unsubstantiated.  Petitioner loaned the couple twenty
dollars and the couple purchased the heroin syringes from
the park where the detectives finally located them after
loosing the couple for fifteen or twenty minutes.  In fact,
testimony by the two detectives while trying to locate the
couple after the couple left Petitioner's house while riding
in the same car contradict each other.  Detective Araiza,
who was driving, turns left and goes over the arroyo bridge
then makes a U-turn and comes back toward the Parkwood area
then to the park.  Detective Eyrum took a right on Parkwood
and then located the couple at the park some seven blocks
away.  Eventually after locating the couple at the park they
are stopped at an HEB an additional seven or more blocks
away and the couple allegedly voluntarily goes to the police
station where 5 or 6 empty syringes were discovered in the
couples truck.

10

Hence, the District Court then surmised that Juanita
Torres gave an uncoerced statement yet the record reveals
that she and her husband injected heroin moments before
giving their statements.  The Supreme Court in **Schneckloth
v. Bustamonte**, 412 U.S. 218, 93 SCt. 2041, 36 LEd2d 854
(1973), is adamant to contend that a statement is not
voluntary where the individuals "will is overborne with
drugs" or "lacks capacity for concious choice."  Cf.
**Jackson v. Denno,** 378 U.S. 368, 84 SCt 1774, 12 LEd2d
908. (1964).  In support of **Schneckboth** where drugs were
used to coerce the accused into complying with the will of
the law enforcement.  See also **Townsend v. Sain**, infra.
Under Supreme Court precedent the statement given by Juanita
Torres was not voluntary considering she was under the
influence of heroin.  The record evidence supports the fact
that Juanita Torres did give a coerced statement.
(Cause No. 91-CR-1371-E S.F.Vol.5 p.239)

"Summary judgement is appropriate where there exists no
genuine issues of material facts the moving party is
entitled to judgement as a matter of law" **Anderson**, supra,
@ 247-48, 106 SCt.@ 2509-10.  Because the affidavit facts
from Petitioner demonstrate proof that a dispute of the
facts exists, it also shows that the state court  relied on
conjecture, not facts, therefore summary judgement should
not issue hereupon.

11

## OBJECTION NUMBER 3

The Magistrate Judge has failed to take notice that the
Respondent , in effect, has defaulted on any claims to
Petitioner's Habeas Corpus by not responding to the court's
order in th appropriate time.  The Federal Rules of Civil
Procedure Rule 55  Default (a), (b) (1) or (2) provide that
if a party fails to plead or otherwise defend  as provided
by these rules the clerk shall enter default judgement.  In
the present case the Respondent was ordered numerous time by
court order to respond.  Yet, Respondent played with the
court by changing lawyers over (3) three times and asking
for numerous First Extensions of Time.  On the last request
for extension of time Petitioner has never received any
documentation granting the requested extension of time.
Petitioner did receive confermation of change of counsel but
never a signed order granting the last Second Extension of
Time.

Therefore a default judgement is appropriate at this
time to be filed by either the clerk of the court or the
judge.  Petitioner requests that a default judgement be
entered against Respondent.  That the Magistrate Judge has
erred in not granting Petitioner a default judgement as
requested in previous motions by Petitioner.   Therefore
Petitioner objects that no default judgement has been filed
by said court.

12

OBJECTION NUMBER 4

The Factual History alleged facts are not correct and
are misleading to the court. Petitioner objects to the
Factual History in the Report as not true and correct and/or
not reflecting a true copy of the record. Petitioner did
not plead guilty at a motion to suppress. Petitioner did
plead guilty to a plea bargin on January 14, 1992 on
February 14, 1992 Petitioner withdrew that plea of the plea
bargin. The trial court allowed that plea to be withdrawn.
Announcements and pre trial motions were set for February
28, 1992 but was postponed until March 2, 1992 when the
motions were heard. At the motion to suppress held on March
2nd and 3rd Ruben Ray Casesar did not testify to anything.
Mr. Casaras did testify at trial. Mr. Casaras did testify
that he found an alleged suspicious car at the house of
Petitioner. But he also said he looked up the address in
the phone book and found it to be Ashcraft's house. But the
phone book does not list by addresses but instead by names.
Also even more suspicious is the fact that the story changed
as to when the alleged crime took place. With Mr. Casaras
changing the time line of the alleged crime from between
7:00 a.m. and 8:00 a.m. as originally reported to match the
time Petitioner said in the coerced confession. To take
this one step further Mrs. Casaras signed an affidavit that
her home was burglarized on June 22, 1991 but signed the
affidavit June 12, 1991. **TEN DAYS BEFORE THE CRIME EVER
TOOK PLACE!** (See: 91-CR-1371-E Transcript Vol. 1, Page #23)

13

What actually happened is that Detective John Byrum in investigatig burglaries in the Parkwood area would tell burglary victims that "Jon Ashcraft broke into your house." In this particular instance documentation shows that Detective John Byrum and Ms. Casaras had met on June 12, 1991 and made a sworn affidavit that a crime was going to happen on June 22, 1991. But in Mr. Byrum's overzelous attempt to set up Ashcraft they made the mistake of actually put the date that they met, June 12, 1991.

The Casaras family was told where Ashcraft lived and they drove by Ashcraft's house and saw whatever cars were in the driveway and then went to the police station and said "Yes, we see a suspicious car in the address of Jon Ashcraft" and Officer Mitchell was dispatched to the Ashcraft's' house. It would have been impossible for the blue chevette to have been a suspect vehicle because the starter did not work. The Casaras family and Detective Byrum created a crime and cenerio just to get in Ashcraft's house to look around. In fact, Detective Byrum being so anxious pulled up in Petitioner's driveway while Ashcraft was talking to Officer Mitchell then he backed out and sped away. The two Detectives, Byrum and Araiza met up and went to watch Petitioner's house. The yellow Nissian pickup was already in the driveway when they started their surveillance. They never saw any exchange as is in the record yet Detective Ariza put in a sworn affidavit "after an apparent exchange solely to sway the Magistrate Judge to sign the affidavit.

14

The Detectives lost sight of the couple.   When they
found them and later stopped the couple Detective Araiza
told the couple when he approached them, "you just bought
drugs from Jon Ashcraft."  So in actuality the Detective
told the couple the information he was seeking thereby
discrediting the credibility of their alleged voluntary
statements in the probable cause affidavit.  Juanita Torres
testified that her statement she gave at the police station
was coerced.  (91-CR-1371-E S.F. Vol.4 p. 239 Lines 16-18)

When police arrived at Ashcraft's house they showed
Ashcraft a one page sheet of paper alleged to be a valid
search warrant.   Ashcraft in handcuffs questioned the
validity of the search warrant when he asked where the
address, his name and what they were looking for was on the
one page sheet of paper.  Detective Araiza became upset and
told Ashcraft  "If you don't cooperate and show us drugs and
stolen property and confess to all these crimes, we will
arrest your mother and take everything out of the house."
Ashcraft cooperated in fear his mother would have an asthma
attack if police were to arrest her and harass her.
Detective Byrum did not leave an inventory of the items
taken from Ashcraft's house.

At the police station just before the first statement
was given Detective Araiza threatened the arrest of
Ashcraft's mother if he did not make the statement.   In
fact, on the record Detective Araiza **ADMITS TO THE THREAT!**
Ashcraft asked for an attorney a second time before the

15

statement and this is when the threat to his mother was again made. Ashcraft was promised his Tylenol # 3 medication if he gave the statement. The next day after several doses of the narcotic codeine and more threats to arrset Ashcraft's mother Ashcraft gave a second statement.

At trial Andres G. Hernandez testified that Det.Araiza has threatened him "lots of times" if he, Hernandez, did not confess to crimes. This is uncontroverted testimony that it is Araiza's forte to threaten people in his custody to get "cooperation." (91-CR-1371-E S.F.Vol.5 Pgs. 432-433).

OBJECTION NUMBER 5

On issue one (1) and (2) Petitioner has not had a full and fair review on his U.S. Constitutional Fourth Amendment Claims in state court. The search warrant was a "General Search Warrant" and this type of warrant is "contrary to" clearly established Federal Law of the Supreme Court of the United States of America.

### SEARCH WARRANT ILLEGAL UNDER FOURTH AMENDMENT DENIED FULL AND FAIR HEARING

The motion for summary judgement was filed by Respondent and the District Court has failed to implicate Supreme Court standard of review significant to summary judgement. Further, the District Court's finding is contrary to **Townsend v Sain,** 372 U.S. 293, 83 SCt. 745, 9 LEd2d 770 (1963) , where the court posits:

> "..if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts. No relevant findings have been made unless the state court decided the constitutional claim tendered by the defendant on the merit."

16

"The whole search warrant did not come into adversal process
until trial, not before." In turn, the area of confusion,
speculation and surmise allowed to stand as fact by the
state court. As shown above with the facts clearly
explained, the harm to Petitioner cannot be allowed to remain.

After being accosted by officers and handcuffed
Petitioner had a one page sheet of paper held before his
eyes to close to read. The detectives said this is a
search warrant. Petitioner could tell though that the one
page piece of paper did not have his name, address or things
the detectives were allowed by law to look for. When
Petitioner questioned Detective Araiza he became upset and
told Petitioner "If you don't cooperate and show me drugs
and stolen property and confess to all these burglaries I
will arrest your mother." The single page of paper given to
Petitioner's mother, who read it. The warrant lacked an
attached affidavit although expressed otherwise in the
warrant as follows (which attached affidavit is made part of
for **all** purposes). Because the search warrant lacked an
affidavit it was incomplete and lacked probable cause
required by the Constitution of the United States of
America, to obtain the warrant and execute it.

The Supreme Court upheld this point in **Franks
v. Deleware**, 438 U.S. 154, 98 Sct. 2674, 57 LEd2d 667 (1978)
stating, "... a warrant affidavit must set forth particular
facts  and circumstances underlying the existence of
probable cause,...". In this case the affidavit required to

17

particularize the warrant was not available.  At trial the
detective claimed the affidavit was not done, yet. S.F. Vol.
IV. pg. 185-86) .  Because the detective made this admission
at trial and the state and District Court have each failed
to apply the appropriate Supreme Court precedent cited by
Petitioner.

The Fourth  Amendment requires probable cause to obtain
a warrant, "...in particularly describing, the place to be
searched, and the person and things to be seized."
U.S. Constitution IV Amendment (1791).  The Fourth Amendment
has set forth specific aspects which must be met to fulfill
the constitutional requirements.  With out the specific
elements of the Fourth Amendment being met the statements
made by the affiant are mere speculative knowledge or
whimsical pretext to gain access to person, place or thing
sought and develop probable cause afterwards.  Petitioner's
mother testified the warrant lacked an affidavit.  (S.F.Vol.
II, Pg 226).  also that she was threatened with arrest.

**Townsend v. Sain**, supra, assures:

> "This Court has consistently held that state
> factual determinations not fairly supported by
> the record cannot be conclusive of federal rights
> ( Citations omitted ).  Where the  fundamental
> liberties of the person are claimed to have
> been infringed,  we  carefully  scrutinize  the
> state court record * * * *"
>     "The duty to try the facts anew exists in
> every case in which the state court has not after
> a full hearing reliably found the relevant facts."

Id. @ 316-19, 83 SCt. @ 758-59.  Consistent with the above
Supreme Court excerpt the state court failed to find
"relevant facts" necessary to support probable cause and

18

thereby warrant at the time of execution. The search warrant was illegal failing to meet the Fourth Amendment standard. Under this notion the state court decision is contrary to Supreme Court precedent as it confronts facts indistinguishable from those of a decision by the Supreme Court, yet arrives at a decision different from that reached by the Supreme Court precedent.

Petitioner's Fourth Amendment claim withstands a **Stone v Powell** scrutiny because he was not provided a full and fair opportunity to litigate his claim citing **Williams v. Taylor**, 120 SCT. 1495 (2000) to establish a "unreasonable application" of federal law. The state court application proved objectively unreasonable. The record evidence reveals a distinctly illegal search warrant under the Fourth Amendment lacking an affidavit required to establish probable cause. It is utterly unreasonable to suggest the Fourth Amendment search warrant requirement of probable cause can be specified in a "GENERAL WARRANT".

Although the detectives claimed confiscating evidence from Petitioner's residence no physical evidence was ever identified by inventory and presented at trial in corroboration of the detectives allegation. The circumstances reported by the detectives and record evidence allowed an arbitrary procedure which circumvented Petitioner's full and fair hearing.

Without an admission of physical evidence at trial the record evidence lacks a nexus between the offence charged against Petitioner and the facts that Petitioner fulfilled

19

each element of the offense charged.  Because the trial
lacked presentation of physical evidence purported
confiscated from Petitioner's house, it stands the only
evidence in the record is a false accusation made by the
detectives unsupported and uncorroborated.

Petitioner in his direct appeal separated his points of
error as to Federal Fourth Amendment Claim, State
Constitutional Claim and Texas Code of Criminal Procedure
claim.  The state appeals court did not address the Fourth
Amendment Claim or the Federal Case law presented.  (See
Exhibit "A")  This is a copy of the points of errors
presented on the search warrant in state court.  The state
appeals court did admit that Petitioner's search warrant was
a "GENERAL SEARCH WARRANT" see **Ashcraft v State,** 934 SW2d
727, @ 736 (TexApp-Corpus Christi 1996)  "We hold that the
"general search warrant" is not invalid because the
affidavit was referenced in the warrant and that the failure
to provide the appellant with a copy of the affidavit did
not render the search invalid."

Yet, when Petitioner filed his state habeas corpus he
only received a "white card" from the Texas Court of
Criminal Appeals.  In effect, the state's highest court did
not give Petitioner a full and fair review.  The ruling from
the Thirteenth Court of Appeals falls way short of a full
and fair hearing in that their decision was both "contrary to"
and involved "unreasonable application" of clearly
established law as determined by the Supreme Court of the

20

United States. Also the decision was based on unreasonable
determination of the facts in light of the evidence
presented in the state proceedings. See **Williams v. Taylor**,
529 U.S. 362, 404-05, 120 SCt. 1495, 1519, 146
LEd2d 389 (2000) and 28 U.S.C. § 2254 (d)(1).

In **Cockrum By Welch v. Johnson**, 934 F.Supp. 1417 @ 1428
ft.n.5 (E.D.Tex 1996) the court stated:

> "In Texas, even though an application for post-
> conviction relief is initially considered by the
> district court in the county where the applicant
> was convicted 'the only ultimate decision in a
> post-conviction habeas case is made by the Texas
> Court of Criminal Appeals." Briddle v. Scott, 63
> F3d 364, 375 (5th.Cir.), cert. denied __ U.S.__,
> 116 SCt. 687, 133 LEd2d 531 (1995)."

The District Court concludes the state habeas
proceedings is relevant to a full and fair opportunity to a
hearing. However, Petitioner received a "white card" denial
of his writ application. The United States Western
District Court in **Williams's v. Collins**, 802 F.Supp 1530, @
1533 (W.D.Tex 1992) states:

> "A more recent Fifth Circuit unanimously held
> that such a cursory dismissal by the highest
> state court does not amount to the requisite
> consideration of the claims raised in the
> state petition to preclude a federal court
> from subsequently addressing these claims."
> See Garrett v. McCotter, 807 F2d 482. 484
> (5th Cir.1987)

At 1534 in the Williams supra the court went on to say:

> "The Fifth Circuit affirmatively held that a mere
> denial by the state highest court of petitioner's
> application without any explanation is not a
> ruling in the merits." See n.2

The Fifth Circuit demonstrate under the above premise that
Petitioner was not given due consideration because the
"white card" dismissal denied him a full and fair
opportunity to litigate his Fourth Amendment claim in state
court proceedings to require the federal court to comply
with **Townsend v. Sain**, supra and take "the evidence anew" in
an evidentiary hearing.  Again, an issue of material fact is
unresolved in dispute requiring summary judgement to be
denied to Respondent.

The "evidence anew" will show that the "GENERAL SEARCH
WARRANT" is illegal in accordance to the Fourth Amendment of
the Constitution of the United States of America.  That the
arrest and search was illegal and that Petitioner is now
illegally restrained of his freedom.  The Federal District
Court Report erred in not granting Petitioner relief.

The decision of the state court is "contrary to" and
"involved an unreasonable application of" clearly
established Federal Law, as determined by the Supreme Court
of the United States as well resulted in a decision that was
based on unreasonable determination of the facts in light of
the evidence presented in state court proceedings.  See:
28 U.S.C. § 2254(d)(1).  See also **Williams v. Taylor**, 529
U.S. 362, 404-05, 120 SCt. 1495, 1519, 146 LEd2d 389 (2000).

The facts are that the search warrant did not have
person, place and thing on it therefore it was a "GENERAL
SEARCH WARRANT."  Even the Thirteenth Court of Appeals
classified the search warrant as a "GENERAL SEARCH WARRANT".

22

It is clearly established Federal Law and Supreme Court Case
Law that a "GENERAL SEARCH WARRANT" is illegal. **Stanford
v. State of Texas**, 379 U.S. 476, 83 SCt. 506, 13 LEd2d 431,
rehearing denied 380 U.S. 926, 85 SCt. 879, 13 LEd2d 813
(1965); **Marron v. United States**, 275 U.S. 192, 196, 48 SCt.
74, 76 (1927); **Anderson v. Maryland**, 427 U.S. 463, 480, 96
SCt. 2737, 2748, 49 LEd2d 627 (1976); **U.S. v. Kimbrough**, 69
F3d 723, 727 (5th.Cir 1995).

The search warrant on its face was insufficient.  At
service of the search warrant there was no affidavit
attached to the search warrant, therefore, the affidavit
could not cure the "defective search warrant."  In
**U.S. v. Dahlam**, 13 F3d1391 @ 1395 (10thCir. 1995) the court
held : "the affidavit must be physically connected so that
it could constitute one document."  There are two conditions
that have to be met when the affidavit is to cure the
defective search warrant: (1) that the warrant must
expressly incorporate the affidavit by reference, (2)
requires either the incorporated affidavit accompany or that
it be attached to the warrant.  **U.S. V. Towne**, 997 F2d 537
(9th.Cir.1993).

In **United States v. Haydel**, 649 F2d1152, 1157 (5th.Cir
1981), cert.denied, 455 U.S. 1022, 102 SCt. 1721, 72 LEd2d
140 (1982) which was restated in **U.S. v. Shugart**,  117 F3d
838 (5th.Cir. 1997): "The affidavit must be attached to the
warrant so that the executing officer and the person whose
premises are being searched both have the information

23

contained in the affidavit, in addition to what was said on the face of the warrant." Petitioner has repeated showed all the courts that on its face as served the search warrant was defective. Neither Petitioner nor his mother were able to conclude as to what it was the police officers were authorized to search for. Even when Detective Araiza notice that the search warrant did not have Petitioner's name, address and or what he was searching for, his reaction was to threaten Petitioner with coercive tactics to get cooperation. "Cooperate or I will arrest your mother."

In **United States v. Williamson**, 1 f3d 1134, 1136 (10thCir 1993) the court held: "[t]he officer's knowledge in this case was the sole information identifying the physical location of the business premises. In effect, then, the government asks us to adopt a rule that the executing officer's knowledge alone is sufficient to satisfy the Fourth Amendment particularity requirement. Because such a rule would be fundamentally inconsistent with the requirements of a written warrant, we conclude that the search warrant at issue was invalid." Clearly no officer that would have just been handed the search warrant to execute it would have been able to know where to go and or what to look for which is the heart of the whole idea of the search warrant issue here. Therefore the search warrant was "Defective and Unlawful."

The District court is to review conclusions of law regarding the sufficiency of a warrant de novo.

24

**U.S. v. Shugart,** 117 F3d 839, 843 (5thCir 1997), **United
States v. Richardson,** 943 F2d 547, 549 (5thCir 1991).  This
case presents the following facts.  The Detectives saw,
nothing happen at Petitioner's house.  They lost sight of
the couple they were watching at Petitioner's house.  When
they finally stopped the couple they told the couple the
information they were seeking "YOU JUST BOUGHT DRUGS FROM
JON ASHCRAFT."  The couple under coercive statement stated
the information the police told them to say.  The police
went to a Magistrate Judge and mislead the Judge with this
information to get a search warrant.  The police went to
Petitioner's house with a "GENERAL SEARCH WARRANT."  When
they saw the warrant was defective they used coercion to get
cooperation.  They rummaged through Petitioner's house,
threatened to arrest his mother if he did not cooperate.
With the coerced information police alleged found stolen
property.  Police did not leave an inventory of what they
allegedly took.  Threatened Petitioner's mother with arrest
again to get Petitioner to confess two times.  Refused
Petitioner's request for an attorney.  Used all this
illegal, tainted information to convict Petitioner.

There was no probable cause to issue a search warrant.
The record reflects that the police had nothing but "mere
suspicions" that Petitioner had committed a crime.  The
information they used from the named couple as probable
cause was tainted because the police first told them the
information they were seeking.   "YOU JUST BOUGHT DRUGS
FROM JON ASHCRAFT." (91-CR-1371-E S.F. Vol 4 p.163 )

25

This is discussed by LaFave, Wayne R. Search and Seizure, Vol. 1, 2d Ed 1987 pgs. 685-86. " . . . if police first give the informant their prior information and then the informant than states the facts essentially in accordance therewith, it can hardly be said that the informant's story has been corroborated." This is exactly what happened in Petitioner's situation.

The Detectives illegally stopped the couple at H.E.B. told them the information they wanted the couple to say. Scared them into making a statement. Det. Byrum stated "We were pretty aggressive to find out what  they (the couple) had done at Jon's house" (S.F.Vol.5 p. 272). So the scared couple gave coerced statements.

Then Detective Araiza knowingly drafted an affidavit to present to the Magistrate Judge to get a search warrant.  In the affidavit he gave false statements "after an apparent exchange" the record shows he saw "no exchange" (S.F.Vol 2 p.91 & (S.F. Vol 2 Pgs. 118-119). This is all discussed in the Fed Writ filed by Petitioner (Fed Writ Pgs. 5-26).

What it all comes down to is the state court never gave Petitioner a full and fair hearing on the facts of the record.  Therefore the Federal Magistrate Judge erred in his recommendation in his "Report."

Petitioner's state court decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceeding. See **Williams v Taylor,** supra and 28 USC § 2254 (d)(1).r

26

OBJECTION NUMBER 6

The state presented no evidence in Petitioner's trial
and the confessions were involuntary, thus were inadmissible
evidence. The District Court [in error] erroneously
deferred to "presumption of correctness." Petitioner
objects to the courts report for the above reasons.

Although the habeas statute allows the federal court
deference to state court findings under a "presumption of
correctness", deference does not extend to a question of law
or law and fact. Hereunder the District Court is required
to review de novo claims arrested. (Citation omitted as
cited in 'JUDICIAL NOTICE').

Petitioner was afforded a suppression hearing on the
involuntary confession which admitted the confession
contrary to record evidence. The record is replete with
evidence to demonstrate that Petitioner's will was overborne
by law enforcement authority because he did not consent to
the search of his premises, under the illegal warrant
excluded further, Petitioner never waived his right to
counsel. Each time Petitioner mentioned the word attorney
he was threatened with his mother's arrest by the
detectives. See **Schneckloth v Bustamonte**, supra.

The Supreme Court decided the question of voluntariness
of a confession is extremely important inasmuch as it;

> ". . made clear that a finding of coercion need
> not depend upon actual violence by a government
> agent; **a credible threat is sufficient**".

The same Supreme Court in **Arizona v Fulminante**, 111
SCt. 1246 @ 1252 (1991) went to assure that"in coercion can

27

be mental as well as physical.." Petitioner was mentally
tormented with the threat of potential arrest of his elderly
mother. Additionally, the detective's overborne
Petitioner's will being aware he had injected heroin before
arrest in addition to the detectives administering Tylenol #
3 with codeine to render Petitioner in a drug-induced state
of mind.

This intrusion did not leave Petitioner open to
self-determination regarding making a statement or with
holding from making a statement. The District Court failed
to give a de nove on this question of law and fact, to leave
another dispute of material fact unsolved warranting that
summary judgement not issue.

OFJECTION NUMBER 7

The District Court's Report adopts the improper standard
for counsel of choice. Petitioner objects to the Report and
the recommendation by the Magistrate judge.

The Sixth Amendment right to counsel has been expanded
to counsel of choice when retained, under Supreme Court
precedent and Fifth Circuit decisions. The District Court
misconstrues facts regarding this issue. Trial counsel,
Glen Barnard, attempted to withdraw as counsel for
Petitioner, admitting that he and Petitioner were at adds
regarding approach to the to the proceedings to be pursued.
This was well before trial as Petitioner had another
attorney positioned to replace Mr. Barnard. The trial court
denied Mr. Barnard's motion to withdraw. Mr. Barnard's

28

representation previous to this was to insist that
Petitioner sign a plea bargin. In fact, Petitioner had
signed a ple bargin in January 1992 when he realized that
Mr. Barnard was not going to defend him on the cases.
Petitioner had signed the plea bargin out of fear of
Mr. Barnard had done nothing to prepare and Mr. Barnard had
threatened Petitioner if Petitioner did not sign the plea
bargin.

The Supreme Court in **Holloway v. Anderson**, 435 U.S. 478,
98 SCt. 1173, 55 LEd2d 426 (1978) defends the above point to
show, "...when a defendant is deprived of the presence and
assistance of his attorney, either throughout the
prosecution or during a critical stage * * * reversal is
automatic." The Supreme Court held similarly in **Evetts
v. Lucey**, 105 SCt. 830, @ 835 (1985) contemplating:

> "As we have made clear, the guarantee of counsel
> 'cannot be satisfied by mere formal appointment,'
> (Citations omitted) 'That a person who happens
> to be a lawyer is present at trial alongside the
> accused, however, is not enough to satisfy the
> constitutional command..' An accused is entitled
> to be assisted by an attorney, whether retained or
> appointed, who plays a role necessary to ensure
> that the trial is fair."

A disgruntle attorney cannot be considered to be a true
advocate of Petitioner under the Sixth Amendment required by
**Strickland v. Washington**, infra.

The Sixth Amendment entitles a criminal defendant to the
effective assistance of counsel, unhindered by any conflicts
of interest with the client. **Coyler v. Sullivan**, 446
U.S. 100 SCt. 1708, 64 LEd2d 333 (1980); **Holloway**

## 29

**v. Anderson**, 435 U.S. 475, 98 SCt. 1173, 55 LEd2d 426
(1978).

Petitioner trial counsel submitted an affidavit into the
trial evidence citing his legal failings harmful to
Petitioner. Because Petitioner was denied the Sixth
Amendment right to retained counsel of choice his Fourteenth
Amendment is likewise implicated. The issue does not
warrant summary judgement because the record insures a
dispute of material facts at issue.

### OBJECTION NUMBER 8

The District Court's report falls short in applying
Supreme Court Presedent on the Sixth Amendment. Petitioner
objects to the Magistrate Judge's Report for the following
reason on this point.

The Sixth Amendment demands that Petitioner has the right
to effective assistance of counsel. **Strickland v.
Washington**, further details this right as a two prong test.
Simply stated a performance prong and a prejudice prong.

Proof that counsel's performance was deficient by
Mr. Barnard's own admission erroded into a prejudicial
decision contrary to record evidence. Mr. Barnard's
affidavit indicates a deficiency investigating and
presenting evidence as well faulty trial strategies.
(See Exhibit "F" attached to habeas petition) Additional
facts are detailed in the habeas petition on this issue.

The District Court first misconstruance is to dub
Petitioner's claim an ineffective assistance of counsel,

30

although the Sixth Amendment holds no guarantee for an
ineffective assistance of counsel claim. Petitioner did not
assert ineffectiveness of representation. Instead
Petitioner demonstrates irrevocably Mr. Barnard's deficient
performance and thereby subsequent prejudice lacking
effective assistance of counsel. The record evidence
provides a distinctly contrary position to that adopted by
the District Court. In turn, this evidently should preclude
summary judgement relief to Respondent. Though the District
Court maintains Petitioner's claims of deficient performance
to be unsubstantiated, clearly the court failed to review
Mr. Barnard's affidavit in the record evidence.

Here again, this omission by the District Court shown a
disregard of **Williams v. Taylor**, supra, "clearly
unreasonable application" in the courts misconstruing the
facts evidence. Because Petitioner provides substantial
showings that this issue is in a dispute in fact and law to
prevent summary judgement.

OBJECTION NUMBER 9

The District Court's Report errs to understand
Petitioner's Due Process Claim of Conflict of Interest.
Petitioner objects to the Magistrate Judge's Report on the
above issue for in the following.

Due Process clause requires an impartial tribunal at
every stage of a criminal proceeding. The guarantee is
repeated under the Fifth and Fourteenth Amendments of the
United States Constitution.

31

The Supreme Court in **Bracey v. Gramley**, 117 SCt. @
1797-99 details how a defendant convicted by a judge who had
previously accepted bribes had made a strong showing of
"good cause" for a due process claim of judicial bias.   The
Supreme Court did not establish a temporal reach between the
time a judge has accepted bribes until he convicted the
defendant.   State and American Bar rules insist a conflict
of interest exists where present or former law partners
litigation implicates a fiduciary concern.   The temporal
reach in terms of time period has no established
specificity.

Herein the potential for judicial bias and thereby
conflict of interest is rather obvious in review of
comparative opinions made by Justice Melchor Chavez.   In
**Barraza v. State**, 900 SW2d 840 the chief concern is an
affidavit which revealed for more probable cause than
evident in the affidavit submitted at trial with the warrant
served on Petitioner.   However, a close comparable
examination of each affidavit undemably reveal the affidavit
in Petitioner's case contained  mere speculative allegations
used as a pretext to enter Petitioner's home.   Yet, Justice
Chavez ruled no corroboration in **Bazara's** case and found
oppositly in Petitioner's case.

The results in the two opposing decisions by Justice
Chavez  based on an inconclusive difference between the
probable cause evidence was asserted as bias towards Glen
Barnard due to some previous disagreement between law

partners.  The bar rules assert the claiment need not be
held to a burden of proof but merely has to be "subject to
conflict of interest," or the potential.  Petitioner has met
the bar rules assertion by presenting contrary rulings in
two comparative cases by Justice Chavez with a favorable
ruling to that defendant based on a greater level of
probable cause evidence while the probable cause in the
affidavit of Petitioner's case is speculative pretext as
record evidence garnered an unfavorable decision by the same
judge.  Because Justice Chavez rendered a decision contrary
to the evidence on behalf of Petitioner and rendered an
unlikely opinion contrary to the greater evidence in **Bazara**,
supra, provide a showing of a potential conflict of
interest.

The potential impropriety need only be asserted on part
of Petitioner to show competing loyalties confronting
Justice Chavez in the opinions of two dissimilar cases to
distinctly imply the lack of impartial and fair tribunal
available at the time to Petitioner from a different
perspective it's probable Justice Chavez refused to appear
overly favorable to Mr. Barnard his former law partner.

This claim rises to the level of a Due Process claim to
outweigh the grant of summary judgement relief to
Respondent.

In conclusion, inasmuch as the District Court that
Petitioner fails to meet his burden of persuasion is
questionable.  Each claim argued by Petitioner is

33

underscored with Supreme Court or Constitutional precedent
in support of the facts and law presented. Further,
Petitioner expounds a clear example in each claim where
"unreasonable application" of federal law is contrary to
Supreme Court precedent. Thus, because each instance of
claim where a disputed of material facts has been
demonstrated (and inferences drawn to non-movant party and
that party's facts are to be believed), summary judgement
standards of review require Respondent's relief is denied by
this Honorable Court. Thus, Petitioner humbly request the
District Court to amend its finding and recommendation
denying summary judgement. GRANT Petitioner's Writ of
Habeas Corpus and order Petitioner's release.

Respectfully submitted.

SUBMITTED THIS DATE: February 19, 2002

JON ALAN ASHCRAFT

34

## CERTIFICATE OF SERVICE

I, Jon Alan Ashcraft, hereby certify that a true and correct copy of the above and foregoing document has been served on the State's Prosecuting Attorney by placing a copy in prepaid U.S. Mail sent to P.O. Box 12548, Capitol Station Austin, Texas 78711-2548 on this date February 19, 2002.

Jon Alan Ashcraft

## VERIFICATION

I, Jon Alan Ashcraft, Petitioner declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge.

Executed this Date: February 19, 2002.

Jon Alan Ashcraft

**EXHIBIT "A"**

REPLY AND SUPPLEMENTAL POINTS OF ERRORS


POINT OF ERROR NO. 4:  THE TRIAL COURT ERRED BY OVERRULING
APPELLANT'S PRETRIAL MOTION TO SUPPRESS EVIDENCE DUE TO AN
"UNLAWF'L AND DEFECTIVE SEARCH WARRANT" BECAUSE THE WARRANT
ON ITS FACE FAILED TO DESCRIBE THE PLACE TO BE SEARCHED, AND
THE PERSONS OR THINGS TO BE SEIZED.  ALL EVIDENCE WAS NOT
ADMISSIBLE, THE SEARCH WARRANT AS SERVED, IS A GENERAL
SEARCH WARRANT IN VIOLATION OF THE FOURTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION.  (Transcripts,
Vol. I, pgs. 30 & 32)[1]


POINT OF ERROR NO. 5:  THE TRIAL COURT ERRED BY OVERRULING
APPELLANT'S PRETRIAL MOTION TO SUPPRESS EVIDENCE DUE TO AN
"UNLAWFUL AND DEFECTIVE SEARCH WARRANT" BECAUSE THE WARRANT
ON ITS FACE FAILED TO DESCRIBE THE PLACE TO BE SEARCHED, AND
THE PERSONS OR THINGS TO BE SEIZED.  APPELLANT WAS PREJUDICE
AND HARMED BY THE FACIALLY OVERBROAD WARRANT.  ALL EVIDENCE
WAS NOT ADMISSIBLE, THE SEARCH WARRANT AS SERVED,  WAS  A
GENERAL SEARCH WARRANT IN VIOLATION OF ARTICLE I, SECTIONS
9 & 10 OF THE TEXAS CONSTITUTION. (Transcripts, Vol. I,
pgs. 30 & 32)

POINT OF ERROR NO. 6:  THE TRIAL COURT ERRED BY OVERRULING
APPELLANTS PRETRIAL MOTION TO SUPPRESS EVIDENCE DUE TO AN
"UNLAWFUL AND DEFECTIVE SEARCH WARRANT" BECAUSE THE WARRANT
ON ITS FACE FAILED TO DESCRIBE PERSON, PLACE OR THINGS TO BE
SEARCHED.  ALL EVIDENCE WAS NOT ADMISSIBLE UNDER TEXAS CODE
OF CRIMINAL PROCEDURE ANN. ARTICLES 18.01 (B), (C) AND 18.02
(1), (7) (VERNONS 1977 & 1995 SUPP.)  ( Transcripts,
Vol. I, pgs. 30 & 32

---
1.  Appellant at the time of filing his Original Brief On
    Remand did not have access to the full record of this
    case.  So now he resubmits this point of error with
    reference to the motion to suppress relied upon.

## FACTS OF THE CASE

The search warrant as served at Appellant's house was a one page document that did **not have the affidavit attached to it,** (S.O.F. Vol. 4, p. 176). Testimony from Appellant's mother confirms that the search warrant given to her was a one page document. (Vol. 2, Pgs. 226 & 232) A copy of the document that was purported to be a search warrant is the first page of State's Exhibit 1 from the motion to suppress. (Vol. 2, P. 250 SX-1) A copy of the affidavit was not left with the Appellant or with Appellant's mother. (Vol. 4, P. 185). The facts of the record clearly show that the one page document represented to be a valid search warrant that was served at Appellant's house, on its face, fails to contain the person place or things to be seized.

Detective Araiza testified on cross:

Q. What is it on the search warrant that you leave that lets an individual know that it was their house that you were coming to serve or number two, what nature of contraband you were looking for ? How do they know other than your word ?

A. Well, they have proof there. It is signed by the judge and the date.

Q. Okay. There's nothing on that first page on the reverse side of it that shows who the suspected party, is it ?

A. No, sir.

Q. There's nothing on the front or back side that you left or that you showed to either of them that shows what

address you were to go to execute the search warrant ?

A.   No, sir.

Q.   And likewise, there's nothing on there that shows what
     the nature of the property was that you were looking
     for, whether drugs, stolen property, machine guns or
     anything, was there ?

A.   No, sir.

(S.O.F. Vol. 4 Page 186 Lines 3 through 23)


## ARGUMENT AND AUTHORITY

Appellant raises the issue of an "UNLAWFUL AND DEFECTIVE
SEARCH WARRANT" in his Motion to Suppress Confessions.
(Transcripts Vol. I, P. 32)  This is specific enough to
preserve error on appeal in accordance with Tex.R.App.Proc.
§ 52 (a).

The record clearly states that the search warrant on its
face that was served on Appellant and given to his mother
that day was "UNLAWFUL and DEFECTIVE."  The document that
police served that day failed on its face to state the
person place and thing to be searched.  This warrant is a
prime example of a GENERAL SEARCH WARRANT to search any home
in the boundaries of Cameron County, Texas.  The search
warrant is exactly the kind that lead the Founding Fathers
of our great country to include that the person, place and
thing to be searched be listed on the search warrant."  In
U.S. v Jones, 54 F.3d 1285, 1289-90 (7th Cir. 1995) it was
held that "[G]eneral Warrants do not satisfy  the

[PAGE 3 OF 11 PAGES EXHIBIT "A"]

requirements of the Fourth Amendment that a warrant contain
a description of place to be searched and persons or things
to be seized. U.S. Constitution amend. IV., see Davilia
v. United States, 441 U.S. 238, 255, 99 S.Ct. 1682, 1692,
60 L.Ed.2d 177 (1979). This particularity requirements
protects persons against the government's indiscriminate
rummaging through their property. See Coolidge v. New
Hamshire, 443 U.S. 467 (1971). Its roots are embedded
deeply in the history of the Fourth Amendment. 'Vivid in
the memory of the independent Americans were those General
Warrants known as writs of assistance under which officers
of the Crown had so bedeviled the colonists * * * * They
were denounced by James Otis as 'the worst instrument of
arbitrary power, the most destructive of English liberty,
and the fundamental principles of law, that ever was found
in an English law book' because they placed the liberty of
every man in the hands of every petty officer.' Stanford v.
Texas, 379 U.S. 476, 481 (1965)."

"The requirements that warrants shall particularly
describe the things to be seized makes general searches
under them impossible and prevents the seizure of one thing
under a warrant describing another. As to what is to be
taken nothing is left to the discretion of the officer
executing the warrant." Marron v. United States, 275 U.S.
192, 196, 48 S.CT. 74, 76 (1927).

The State claims that the affidavit was attached to the
the search warrant and incorporated therein. This may have

[PAGE 4 OF 11 PAGES EXHIBIT "A"]

been true at the motion to suppress and trial but when the
search warrant was served there is uncontroverted testimony
that the affidavit **was not attached** to the search warrant.

Q.   (BY DEFENSE COUNSEL MR. BARNARD) Okay.  Did you leave
     her or give to Jon Ashcraft a copy of the affidavit
     which goes along with the search warrant ?

A.   No, sir.

Q.   Why not, sir ?

A.   It wasn't done

(Testimony of Detective Araiza, Vol. 4, p. 185)

Detective Araiza further testifies that it is policy to
leave just the front page of the search warrant that does
not list the person, place or things to be searched. (Vol. 4
p. 186)

Q.   (By Mr. Barnard)  All right.  And so, and understand
     this,  Officer, I've known you for a long time, I'm
     not making an accusation, but if this is the policy and
     procedure, would it not be possible for a police
     officer to run out, execute a search warrant signed by
     a  magistrate, thereafter prepare in retrospect an
     affidavit to fit the circumstances of what was found ?

A.   I don't believe so.

Q.   Okay.  Isn't the whole reason why your supposed to
     leave the copy of the affidavit along with the search
     warrant when you execute the same ?

A.   It could be.

(Testimony by Detective Araiza, Vol. 4, Pgs. 186 & 187)

[PAGE 5 OF 11 PAGES EXHIBIT "A"]

The State cites <u>Reese v. State</u>, 712 S.W.2d 131, 133 (Tex.Crim.App. 1986) where a search warrant incorporates the affidavit by reference, it thereby creates a single document containing both instruments.  So the State has admitted that the search warrant as served was a defective warrant because the affidavit was not with the search warrant when it was served on the Appellant at his residence.

In <u>U.S. v. Dahlman</u>, 13 F.3d 1391 at 1395 ((10th Cir. 1995) the court held:

> "[I]n United States v. Leary, 846 F.2d 592, 603 (10th Cir. 1988) we noted as follows: It is true that the particularity of an affidavit can cure an overbroad warrant, but only 'where the affidavit and search warrant ---- can be reasonably said to constitute one document, two requirements must be satisfied to reach this result: First: the affidavit and search warrant **must be physically connected** so that they could constitute one document; and Second: the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words or reference.' (Quoting LaFave, Search and Seizure § 4.6 (a). at 241 (2nd Ed, 1987)

There are two conditions that have to be met when the affidavit is to cure a defective search warrant: (1) that the warrant must expressly incorporate the affidavit by reference, (2) requires either that the incorporated affidavit accompany or that it be attached to the warrant. <u>U.S. v. Towne</u>, 997 F2d 537 (9th Cir. 1993).  "The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the persons subject to the search what items the officers executing the warrant can seize.  United States v. Property Belonging to Talk of the Town Bookstore, 644 F.2d 1317 at 1319 (9th. Cir. 1981)  If the needed affidavits **are not attached to the warrants, neither purpose is served.**  Consequently, in

this case the affidavits may not be considered in determining whether the warrant is facially overbroad." [Citations omitted] <u>U.S. V. Towne</u>, 997 F.2d at 545-546.

In the case at bar the search warrant specifically states "which said Affidavit is here now made part of for all purposes." (SF Vol. 2, p. 250)  Therefore it can be said that the search warrant was defective because on its face it failed to state person, place and thing to be searched.  The affidavit was not attached or even presented to Appellant or to Appellant's mother when the warrant was served at the residence.  Neither of the two purposes were served i.e. - (1) limit the officer's discretion and (2) inform the persons subject to the search what items the officers executing the warrant can seize, when the officers served the facially defective warrant.

"[I]n addition, we expressly noted that the warrant [affidavit] was not served upon the individuals whose premises were to be searched, thus indicating that our real concern was not so much that the affidavit be physically attached to the warrant, but that the affidavit operate in some fashion to 'assure [] that the person being searched has specific notice of the specific items the officer is entitled to take.'" <u>Towne</u> at 547.  "The purpose of the particularity requirement is to make general searches impossible.  The evil to be prohibited is the exploratory rummaging in a persons belongs." <u>Towne</u> at 548.

[PAGE 7 OF 11 PAGES EXHIBIT "A"]

This exactly the type of search that the police conducted.  Testimony reveals that the purpose of the warrant was to rummage through Appellant's house hoping to find evidence of a crime.  "We would have a hand full of jewelry and we did not have time to look at all of it so we took it. (Vol. 5, pgs. 298-99)  The list of the numerous items taken is indicative that the police just went rummaging through Appellants house.  77 items were taken from the Appellant's house. (Vol.2,p. 255)  The State would have you believe that all these items taken were stolen and that made it likely that Appellant's mother might be aware of that there was stolen property in the house.  But in fact there is no proof that these numerous items taken were stolen.  The affidavit that was not attached to the warrant stated "stolen property" which was not specific enough to direct the officers as to what to take or inform the Appellant what the officers were entitled to take

"We conduct a de novo review of search warrants that are challenged for failing to particularity describe the items he seized."  See e.g. United States v. Gomez-Soto, 723 F.2d 649, 652-54 (9th. Cir) cert. denied __ U.S. __, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); United States v. Cardwell, 680 F.2d 75, 77-78 (9th Cir. 1982).  From <u>United States v.</u> <u>McClintock</u>, 748 F.2d 1278, 1282 (9th Cir. 1984).(McClintock) cert. denied, __ U.S. __, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985);  Also see <u>U.S. v. Hayes</u>, 794 F.2d 1348 (9th Cir. 1986); <u>U.S. v. Gahagan</u>, 865 F.2d 1490 (6th Cir. 1989). A de novo review of the search warrant that was served at

[PAGE 8 OF 11 PAGES EXHIBIT "A"]

Appellant's residence would reveal that the warrant was a
General Search Warrant.  The exact kind that our founding
fathers deplored and what lead to there being the
requirement that person, place and thing be listed on the
face of a valid search warrant.

> "The Founding Fathers had a judgement to make, whether
> the officers executing a search warrant should take
> anything they liked, or only what is described with
> particularity in a warrant.  The practical significance
> of not attaching the list of things to be seized , so
> far as the record shows, the officers had no document
> telling them what to take, Van Dame could look at no
> document specifying what the officers could take.  That
> is not just a technical failure to photocopy and
> staple.  It is a transfer of power to limit the search
> from the neutral magistrate, where the founding fathers
> put it, to the police." U.S. v. Van Damme, 48 F.3d 461
> (9th Cir. 1995)

"[T]he warrant must be sufficient on its face to enable
any officer to locate and distinguish the property and
distinguish the property and cannot depend upon the
individualize supplementary knowledge of one officer.
[Citations omitted] * * * We hold that the evidence
recovered from the search of the automobile should not have
been admitted into evidence because the search warrant
failed to comply with Tex.Code Crim. Proc art. 18.04."
Lindely v. State, 855 S.W.2d 723 (Tex.App. -- Tyler 1990).

In United States V. Williamson, 1 F.3d 1134, 1136 (10th
Cir. 1993) the Court held: "[t]he officers's knowledge in
this case was the sole source of information identifying
the physical location of the business premises.  In effect,
then, the government asks us to adopt a rule that the
executing officer's knowledge alone is sufficient to satisfy

[PAGE 9 OF 11 PAGES EXHIBIT "A"]

the Fourth Amendments particularity requirement.  Because
such a rule would be fundamentally inconsistent with the
requirements of a written warrant, we conclude that the
search warrant at issue was invalid."  Clearly no officer
would have been able to serve the search warrant that was
used at Appellants house because on its face there was no
address to direct the officer as to what residence to
search.  Therefore it was a "Defective and Unlawful" search
warrant.

Appellant was prejudice and harmed by the police
searching his house with an "Unlawful and Defective Search
Warrant" in that he has been illegally convicted of burglary
of a habitation with this evidence.  Appellant has served
over four years and is prejudice and harmed every day that
he is illegally incarcerated because of this illegally
obtained evidenced.  Appellant was further harmed because at
the time he was arrested and served this "Unlawful and
Defective Search Warrant" he was not able to be informed
what items the officers executing the search warrant could
seize.  For all the Appellant could tell with the document
showed to him the police could have searched any home in
the boundaries of Cameron County, Texas.  When Appellant
questioned to police about the search warrant that is when
Detective Araiza told the Appellant words to the effect
"cooperate and confess to crimes or your mother will be
arrested."  Clearly Appellant was prejudice and harmed by
the "Unlawful and Defective Search Warrant" served at his
residence June 23, 1991.

[PAGE 10 OF 11 PAGES EXHIBIT "A"]

The search warrant that was served at appellants house was "Defective and Unlawful."  The warrant on its face was overbroad.  It was a General Search Warrant to search any place in the boundaries of Cameron County, Texas.  The affidavit was not attached nor was it made available to appellant at the time of the search.  The search warrant is addressed to any peace officer and it is quite clear that the warrant as it was served cound not have located the house to be searched and would not have known the things and person to be seized.  Especially important was that the Appellant had no notice of the items that the officers were entitled to seize.  The trial court erred in denying Appellants motions to suppress.  The case should be reversed and remended to the trial court.

[PAGE 11 OF 11 PAGES EXHIBIT "A"]