35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 5 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JON ALAN ASHCRAFT, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | MISC. NO. B-98-031 |
| JANIE COCKRELL, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, INSTITUTIONAL DIVISION, | § | |
| Respondent. | § | |

**MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION**

**PROCEDURAL HISTORY**

Jon Alan Ashcraft is a state prisoner presently incarcerated at the Retrieve Unit in

Angleton, Texas. Petitioner was indicted in the 357th District Court of Cameron County, Texas,

in cause number 91-CR-1371-E, and charged with burglary of a habitation with an enhancement

allegation included. Ashcraft pleaded not guilty to the charged offense. On April 8, 1992, the

jury found Ashcraft guilty of burglary of a habitation, found the enhancement allegation to be

true, and assessed punishment at seventy-five years confinement in the Texas Department of

Criminal Justice - Institutional Division. The jury also assessed a $5,000.00 fine against the

Petitioner.

Ashcraft's conviction was affirmed by the Thirteenth Court of Appeals of Texas on

August 22, 1996.[1] Thereafter, Ashcraft filed a petition for discretionary review ("PDR"), but the

_____

[1] Ashcraft v. State, 934 S.W. 2d 727 (Tex. App.--Corpus Christi 1996, writ ref'd).

1

Texas Court of Criminal Appeals refused the petition on May 7, 1997.[2] Ashcraft filed his first applicable state writ of habeas corpus on June 16, 1998.[3] Although Petitioner filed two other state applications for writ of habeas corpus, they are not relevant to this proceeding because they were challenges to his subsequent conviction for burglary of a habitation. The only applicable state writ application was denied by the Texas Court of Criminal Appeals without written order on September 16, 1998.[4]

## FACTUAL HISTORY

Before the Petitioner pleaded guilty in this particular case, a hearing on a motion to suppress occurred, at which the trial court denied the motion. At the hearing, Ruben Ray Casares testified that he lived at 802 Ebony in the Parkwood Subdivision of Harlingen, Texas, on June 22, 1991.[5] On June 21, 1991, due to a broken air conditioning unit, his wife left the house early in the evening to stay at her sister's, and Mr. Casares left at 10:30 p.m. to go fishing. He did not return until 7:30 a.m. the next morning, which was in time to go to work at 8:00 a.m. Mr. Casares did not realize a burglary had occurred until he returned to his residence at 8:20 a.m. to meet the air conditioner repairmen. In his den, Mr. Casares noticed that the television, VCR, and stereo systems were missing. While in his den, he then noticed that the front door had been forced open because there was a piece of wood frame still in the hallway. Mr. Casares then went to his bedroom and noticed that a supply of firearms including Weatherbys, a Brown Setory

---

[2] Ashcraft v. State, PDR No. 260-97.

[3] Ex Parte Ashcraft, Application No. 24, 803-02, at 1.

[4] Id. at cover.

[5] IV SF 14-15.

2

shotgun, over and under, Remington 1100 shotguns, a Colt revolver, and other guns had been stolen. Casares and his wife remembered that certain automobiles had been parked outside of their residence prior to the burglary. After the burglary, he and his wife drove around the neighborhood looking for these cars. They happened upon the cars that resembled the ones they had seen in front of their residence, so they called the police. The familiar automobiles were in front of Ashcraft's residence.

Nicholas Araiza is a police officer involved with investigating burglaries and thefts. Officer Araiza was familiar with several burglaries occurring in the Parkwood area. On Saturday, June 22, 1991, he had read the phone logs and was familiar with a burglary of a habitation which occurred at 802 Ebony. The next day, when the name Jon Alan Ashcraft came up as a potential suspect, he and another officer went to establish a surveillance of the house and to make contact with Ashcraft. When the officers returned to watch the Ashcraft house again, they noticed a couple drive up and exchange something with Ashcraft, and then quickly leave the premises. The officers proceeded to follow the couple in an attempt to inquire as to whether they had just purchased drugs from Ashcraft. The couple voluntarily drove to the police station and signed sworn statements relaying that they had bought drugs from Ashcraft. Based on these statements, Officer Araiza prepared a search warrant. After the warrant was served upon Ashcraft, he was read his rights and was arrested to prevent him from disposing of drugs. Ashcraft then told the officers where the drugs and stolen property were in order to exculpate his mother. Seventy-seven items of stolen property, including property from 802 Ebony, were recovered mostly from Ashcraft's room, which is where the drugs were also recovered. The officers then transported Petitioner to the jail. Ashcraft gave the officers two voluntary

statements; one indicating the facts of the 802 Ebony burglary and the other a list of the houses
he had burglarized. The latter statement was made after Ashcraft went with the officers and
indicated which houses he had broken into in the Parkwood area. The officer indicated that at no
time did the Petitioner exhibit withdrawal symptoms. Also, he testified that Ashcraft was given
five one-pill doses of Tylenol 3 as prescribed on the medication bottle.

Juanita Torres testified that she purchased heroin from Ashcraft as she had done on
previous occasions. She and her common-law husband, Augustin Pena, drove up in a yellow
Nissan truck and stayed at Ashcraft's place long enough to buy two syringes of heroin. They
then proceeded to a nearby park to use the drugs. They then went to an H-E-B, where they were
stopped by the police. Ms. Torres was told that despite the fact that she had committed a
criminal offense, she was not being targeted. She and Pena voluntarily drove to the police station
and gave non-coerced statements. Officer Byrum, another law enforcement officer that
investigated Ashcraft's case, concurred with Officer Araiza's testimony in every respect.

At the motion to suppress hearing, the defense put on two witnesses who were in
Cameron County Jail at the same time as Ashcraft and they testified that when they saw Ashcraft
he looked high, intoxicated, and spaced out. Further, Ashcraft's mother testified that she was
scared when the officers served the search warrant on her. She stated that she was not aware of
any stolen property in her house, but she was cognizant of her son's heroin problem, and had
been trying to get him to quit for some time.

## ISSUE

Petitioner now seeks relief pursuant to 28 U.S.C. § 2254, and alleges the following:

1)      An illegal search and seizure occurred in violation of Petitioner's Fourth

4

Amendment rights;

2) An unconstitutional search and seizure occurred in violation of his Fourth Amendment rights;

3) There was no evidence to support his burglary of a habitation conviction;

4) His confessions were involuntary, thus, they were inadmissible evidence;

5) His right to counsel of choice was denied;

6) He received ineffective assistance of counsel for the following reasons:

   a) His counsel was unprepared;
   b) His counsel failed to make pre-trial preparations;
   c) His counsel did not investigate an alibi witness;
   d) His counsel allowed Torres' testimony regarding extraneous offenses;
   e) His counsel would not accept phone calls or discuss the case with him prior to trial;

7) There was a conflict of interest between the Court of Appeals judge and his defense counsel.

The government, in turn, has filed a motion for summary judgment as to all of the Petitioner's claims.

## STANDARD OF REVIEW

A petition for habeas corpus relief is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") if the petition is filed after April 24, 1996, which was the effective date that the federal habeas corpus statutes were amended.[6] Under the AEDPA's new standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court

---

[6] See Williams v. Cain, 125 F.3d 269, 274 (5th Cir. 1997), cert. denied, 525 U.S. 859, 119 S. Ct. 144 (1998) (stating that the AEDPA applies to a petition filed by a state prisoner after April 24, 1996); Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 2069 (1997) (ruling that the AEDPA only applies to those noncapital habeas corpus cases filed after its effective date of April 24, 1996).

proceedings unless the adjudication of that claim either (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.[7]  Under the "contrary to" clause, a federal habeas court may grant relief if (1) the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of

law or (2) the state court decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts.[8]  Under the "unreasonable application" clause, a federal habeas

court may grant relief if the state court identifies the correct governing legal principle from the

Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's

case.[9]

_____

[7] See 28 U.S.C. §2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).

[8] Penry v. Johnson, 532 U.S. 782, at ___, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001) (declaring that "a state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent'"); Williams v. Taylor, 529 U.S. at 404-06, 120 S.Ct. at 1518-19; Martinez v. Johnson, 255 F.3d 229, 243 (5th Cir. 2001); Tucker v. Johnson, 242 F.3d 617, 621 n.5 (5th Cir. 2001), cert. pending; Chambers v. Johnson, 218 F.3d 360, 363 (5th Cir. 2000), cert. denied, 531 U.S. 1002, 121 S.Ct. 508, 148 L.Ed.2d 473 (2000); Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000), cert. denied, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).

[9] Penry v. Johnson, 532 U.S. at ___, 121 S.Ct. at 1918; Williams v. Taylor, 529 U.S. at 407-08, 120 S.Ct. at 1520-21; Tucker v. Johnson, 242 F.3d at 621 n.5; Chambers v. Johnson, 218 F.3d at 363; Hill v. Johnson, 210 F.3d at 485.
   "A federal court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Penry v. Johnson, 532 U.S. at ___, 121 S.Ct. at 1918; Williams v. Taylor, 529 U.S. at 409-11, 120 S.Ct. at 1520-22; and Martinez v. Johnson, 255 F.3d 229.
   In Williams, the Supreme Court expressly reserved for another day the issue of how federal habeas courts should determine whether a state court erroneously extended a legal principle into a new realm or erroneously refused to extend existing legal principle into a new area. See Williams v. Taylor,

In federal habeas corpus proceedings, a resolution or adjudication "on the merits" is a term of art that refers to whether a state court's disposition of the claim was substantive, as opposed to procedural.[10] The AEDPA significantly restricts the scope of federal habeas review of state court fact findings, requiring that a petitioner challenging state court factual findings establish by clear and convincing evidence that the state court's findings were erroneous.[11] The AEDPA also limits the circumstances in which a habeas corpus petitioner may obtain an evidentiary hearing in federal court, imposing a significant burden on petitioners who fail to diligently develop the factual bases for their claims in state court.[12]

_____

529 U.S. at 408-09, 120 S.Ct. at 1521.

[10] See Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000), cert. denied, 531 U.S. 849 (2000); and Green v. Johnson, 116 F.3d 1115, 1121 (5th Cir. 1997).

[11] See 28 U.S.C. § 2254(e)(1). See also Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001) (noting that "the presumption is particularly strong when the state habeas court and the trial court are one and the same"); Miller v. Johnson, 200 F.3d at 281 (ruling that state court fact findings are presumed correct and the petitioner has the burden of rebutting the presumption by clear and convincing evidence); Hicks v. Johnson, 186 F.3d 634, 637 (5th Cir. 1999), cert. denied, 528 U.S. 1132 (2000) (holding the AEDPA requires federal habeas courts to accept as correct state court factual determinations unless the petitioner rebuts same by clear and convincing evidence); Morris v. Cain, 186 F.3d 581, 583 (5th Cir. 1999); Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999); Jackson v. Johnson, 150 F 3d 520, 524 (5th Cir. 1998), cert. denied, 526 U.S. 1041 (1999); Williams v. Cain, 125 F.3d 269, 277 (5th Cir. 1997), cert. denied, 525 U.S. 859 (1998) (recognizing that under the AEDPA, state court factual findings "shall be presumed correct unless rebutted by 'clear and convincing evidence'"); Hernandez v. Johnson, 108 F.3d 554, 558 & n.4 (5th Cir. 1997), cert. denied, 522 U.S. 984 (1997), (holding that under the AEDPA, the proper forum for the making of all factual determinations in habeas cases will shift to the state courts "where it belongs" and recognizing that the AEDPA clearly places the burden on the federal habeas petitioner "to raise and litigate as fully as possible his potential federal claims in state court").

[12] See Williams v. Taylor, 529 U.S. 420, 433-34, 120 S.Ct. 1479, 1489, 146 L.Ed.2d 435 (2000) (noting that prisoners who are at fault for the deficiency in the state court record must satisfy a heightened standard to obtain an evidentiary hearing); Clark v. Johnson, 202 F.3d 760, 765-66 (5th Cir. 2000), cert. denied, 531 U.S. 831 (2000); McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir. 1998); and 28 U.S.C. §2254(e)(2). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Williams v. Taylor, 529 U.S. at 437, 120 S.Ct. at 1491.

A state prisoner seeking federal court review of his conviction pursuant to Title 28 U.S.C.

Section 2254 must assert a violation of a federal constitutional right.[13] Federal habeas corpus

relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a

federal issue is also presented.[14] In the course of reviewing state criminal convictions in federal

habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[15] The

question before a federal habeas corpus court is not whether the state court correctly applied its

own interpretation of state law; rather, the question is whether the petitioner's federal

constitutional rights were violated.[16]

> When a federal district court reviews a state prisoner's habeas petition
> pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is

---

[13] Lawrence v. Lensing, 42 F.3d 255, 258 (5th Cir. 1994); Gray v. Lynn, 6 F.3d 265, 268 (5th Cir. 1993); Lowery v. Collins, 988 F.2d 1364, 1367 (5th Cir. 1993).

[14] See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); Hill v. Johnson, 210 F.3d 481, 490-91 (5th Cir. 2000), cert. denied, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001); Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997), cert. denied sub nom.; Johnson v. Monroe, 522 U.S. 1003 (1997); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993), cert. denied, 510 U.S. 1025 (1993); Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988); Rault v. Butler, 826 F.2d 299, 302 n.1 (5th Cir. 1987), cert. denied, 483 U.S. 1042 (1987); Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986), cert. denied, 479 U.S. 930 (1986).

[15] Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991), cert. denied, 502 U.S. 875 (1991). "[F]ederal courts do not sit as courts of appeal and error for state court convictions." Dillard v. Blackburn, 780 F.2d 509, 513 (5th Cir. 1986). Accord Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988). This Court does not review a state prisoner's federal habeas corpus petition to determine whether the state appellate courts correctly construed and applied state law. Federal habeas corpus relief does not lie for errors of state law. See Estelle v. McGuire, 502 U.S. at 67-68, 112 S.Ct. at 480; Lewis v. Jeffers, 497 U.S. at 780, 110 S.Ct. at 3102; Pulley v. Harris, 465 U.S. at 41, 104 S.Ct. at 874; Pemberton v. Collins, 991 F.2d at 1223; Lavernia v. Lynaugh, 845 F.2d at 496; Rault v. Butler, 826 F.2d at 302 n.1; Neyland v. Blackburn, 785 F.2d at 1293.

[16] See Hill v. Johnson, 210 F.3d at 490-91. See also Neyland v. Blackburn, 785 F.2d at 1289.

> "in custody in violation of the Constitution or laws or treaties of the
> United States." The court does not review a judgment, but the
> lawfulness of the petitioner's custody *simpliciter*.[17]

Thus, the issue before this Court is not whether the Texas courts properly applied state-law principles during petitioner's trial or when they affirmed petitioner's conviction and sentence on direct appeal or denied petitioner's state habeas corpus application but whether petitioner's federal constitutional rights have been violated in this case.

Therefore, insofar as petitioner argues that his state statutory or state constitutional rights were violated, independently of any federal constitutional violation, his arguments do not furnish even an arguable basis for federal habeas corpus relief. Federal habeas relief is reserved for the vindication of federal constitutional rights.[18] In this case, the Court is unable to rule on some of the Petitioner's claims because they either do not invoke federal constitutional rights, or state courts have already ruled on federal constitutional principles.

## ANALYSIS

### 1) & 2) Fourth Amendment Claims

In the course of the petitioner's state habeas corpus proceeding, the state courts expressly rejected his federal claims on the merits. The AEDPA places great value upon the factual findings and conclusions of law made by state courts in the course of petitioner's state habeas corpus proceedings. Because the state habeas court rejected on the merits petitioner's federal Fourth Amendment claims, this Court is virtually bound by the state court ruling on that issue

---

[17] Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

[18] Martinez v. Johnson, 255 F.3d at 246; Manning v. Blackburn, 786 F.2d 710, 711-12 (5th Cir. 1986).

9

unless the petitioner can satisfy the standard outlined above by showing that the state court's holding was based upon either an erroneous construction of clearly established federal law, an unreasonable application of federal law, or an unreasonable determination of the facts from the evidence before that court.

Here, the Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. Ashcraft had these claims addressed in his direct appeal and in his state writ habeas corpus.[19] Thus, not only was Ashcraft given the opportunity by the state of Texas to litigate his Fourth Amendment claims in state court, he exercised the opportunity to do so. Therefore, pursuant to well-established federal precedent, this Court is confined to the state court rulings on Petitioner's illegal search and seizure claims.[20]

*3) "No Evidence" Claim*

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[21] The evidence need not exclude every reasonable hypothesis of innocence

---

[19] See Ashcraft v. State, 934 S.W.2d 727, 732-36; Ex parte Ashcraft, Application No. 24, 803-02, at 7-23, cover.

[20] See Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976).

[21] See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Gibson v. Collins, 947 F.2d 780, 781-82 (5th Cir. 1991), cert. denied, 506 U.S. 833 (1992); Brown v. Collins, 937 F.2d 175, 180 (5th Cir. 1991); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991); Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990), cert. denied, 498 U.S. 903 (1990); Young v. Guste, 849 F.2d 970, 972 (5th Cir. 1988); Porretto v. Stalder, 834 F.2d 461, 467 (5th Cir. 1987); Bates v. Blackburn, 805 F.2d 569, 572-73 n.2 (5th Cir. 1986), cert. denied, 482 U.S. 916 (1987); Marler v. Blackburn, 777 F.2d 1007, 1011 (5th Cir. 1985); Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985), cert. denied sub nom. Parker v. McCotter, 474 U.S. 855 (1985). The Court examines

or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of

fact could find that the evidence established guilt beyond a reasonable doubt.[22]  To determine

whether the evidence is sufficient to support a state criminal conviction, we must look to state

law for the substantive elements of the relevant criminal offense.[23]

Petitioner contends that the case against him was circumstantial, at best.  However, either

direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the

conviction.[24]  Ashcraft further argues that the testimony most damaging to him at his trial, set

---

the evidence taken as a whole, not individual facts or separate incidents. United States v. Lombardi, 138 F.3d 559, 560-61 (5th Cir. 1998).  This same standard of review applies to a federal defendant's challenge to the sufficiency of the evidence supporting a federal criminal conviction. See United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996); United States v. Salazar, 66 F.3d 723, 728 (5th Cir. 1995); United States v. Crawford, 52 F.3d 1303, 1309 (5th Cir. 1995); United States v. Harris, 932 F.2d 1529, 1533 (5th Cir. 1991), cert. denied, 502 U.S. 897 (1991); United States v. Blankenship, 923 F.2d 1110, 1114 (5th Cir. 1991), cert. denied, 500 U.S. 954 (1991); and United States v. Molinar-Apodaca, 889 F.2d 1417 (5th Cir. 1989).
    The failure to comply with state evidentiary rules regarding corroboration and other procedural prerequisites to the admission of evidence does not affect the application of the Jackson standard to an evidentiary sufficiency review in a federal habeas corpus proceeding. See Lucas v. Johnson, 132 F.3d 1069, 1078 (5th Cir. 1998), cert. dnism'd, 524 U.S. 965 (1998); West v. Johnson, 92 F.3d at 1393-94.

[22] United States v. Burton, 126 F.3d 666, 669-70 & 677 (5th Cir. 1997) (holding that the issue is not whether each piece of evidence, viewed independently, may have been susceptible of innocent interpretation but whether the jury could reasonably have concluded that when examined in the aggregate, the evidence sufficed to establish guilt); United States v. Stevenson, 126 F.3d 662, 664 (5th Cir. 1997); United States v. Ismoila, 100 F.3d 380, 386 (5th Cir. 1996), cert. denied sub nom. Debowale v. United States, 520 U.S. 1219 (1997); United States v. Leahy, 82 F.3d at 633; United States v. Salazar, 66 F.3d at 728; United States v. Crawford, 52 F.3d at 1309; United States v. Faulkner, 17 F.3d 745, 768 (5th Cir. 1994), cert. denied, 513 U.S. 1056 (1994); United States v. Pigrum, 922 F.2d 249, 254 (5th Cir. 1991), cert. denied, 500 U.S. 936 (1991).

[23] See Jackson v. Virginia, 443 U.S. at 324 n.16, 99 S.Ct. at 2792 n.16; Brown v. Collins, 937 F.2d at 181; Isham v. Collins, 905 F.2d 67, 69 (5th Cir. 1990); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985); Turner v. McKaskle, 721 F.2d 999, 1001 (5th Cir. 1983).

[24] Schrader v. Whitley, 904 F.2d at 287; Pate v. Wainwright, 607 F.2d 669, 670 (5th Cir. 1979); see also Jackson v. Virginia, 443 U.S. at 324-26, 99 S.Ct. at 2792-93 (holding that circumstantial evidence can alone support a finding as to an essential element of an offense). See also Gibson v. Collins, 947 F.2d at 783-86; and United States v. Harris, 932 F.2d at 1533 (both holding that it is not necessary

11

forth above, was given by suspect witnesses, i.e., police officers that investigated the case. This argument is a direct challenge to the credibility of the witnesses. However, a federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts.[25] All credibility choices must be resolved in favor of the jury's verdict.[26] Furthermore, testimony is incredible as a matter of law only when it is factually impossible.[27] Credibility issues are for the finder of fact and do not undermine the sufficiency of the evidence.[28] The Texas Court of

---

that the evidence exclude every hypothesis of innocence and that a jury is free to choose among reasonable constructions of the evidence).

[25] See Marler v. Blackburn, 777 F.2d at 1012; Dunn v. Maggio, 712 F.2d 998, 1001 (5th Cir. 1983), cert. denied, 465 U.S. 1031 (1984). See also United States v. Payne, 99 F.3d 1273, 1278 (5th Cir. 1996) (holding that the non-credibility of witnesses is not a sound basis for challenging the sufficiency of evidence); United States v. Polk, 56 F.3d 613, 620 (5th Cir. 1995) (holding that non-credibility is generally not a sound basis for alleging insufficiency of the evidence; it is the jury's function to determine credibility), citing United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir. 1994), cert. denied sub nom. Garza v. United States, 514 U.S. 1097 (1995); United States v. Harris, 932 F.2d at 1533 (holding that all inferences and credibility choices must be made in the light most favorable to the Government); United States v. Salazar, 66 F.3d at 728 (holding that the jury is free to choose among reasonable constructions of the evidence).

[26] See United States v. Millsaps, 157 F.3d 989, 994 (5th Cir. 1998); United States v. Nguyon, 28 F.3d 477, 480 (5th Cir. 1994).

[27] See United States v. Villegas-Rodriguez, 171 F.3d 224, 228 n.10 (5th Cir. 1999) (testimony is incredible as a matter of law only if it relates to facts the witness could not possibly have observed or to events which could not have occurred under the laws of nature); United States v. Ramirez, 145 F.3d 345, 350 (5th Cir. 1998), cert. denied, 525 U.S. 1046 (1998) (holding that a jury is free to believe a witness unless the testimony is so incredible that it defies physical laws); United States v. Jaras, 86 F.3d 383, 387-88 (5th Cir. 1996), (holding that admissions by a prosecution witness that he committed perjury in earlier testimony or that a portion of his prior testimony was perjured do not render all of that witness's testimony incredible as a matter of law); United States v. Bermea, 30 F.3d at 1552; United States v. Casel, 995 F.2d 1299, 1304 (5th Cir. 1993), cert. denied, 510 U.S. 1197 (1994); United States v. Boone, 67 F.3d 76, 78-79 (5th Cir. 1995), cert. denied, 516 U.S. 1137 (1996) (holding that contradictions on irrelevant details do not make testimony incredible as a matter of law).

[28] See United States v. Morgan, 117 F.3d 849, 854 n.2 (5th Cir. 1997), cert. denied sub nom. Wright v. United States, 522 U.S. 1035 (1997); United States v. Davis, 61 F.3d 291, 297 (5th Cir. 1995), cert. denied sub nom. Jefferson v. United States, 516 U.S. 1135 (1996).

Criminal Appeals denied relief on this claim. This Court, after reviewing the statement of the facts in the case, stands for the proposition that the state court's handling of the matter is a reasonable application of the law to the facts and that this claim fails.

*4) Involuntary Confession Claim*

It is well-settled law in this Circuit that, in reviewing state evidentiary rulings in habeas corpus petitions, a federal court does not sit as super state supreme court to review error under state law.[29] A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair.[30] "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."[31] When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious as to render the entire trial fundamentally unfair.[32] The challenged evidence must be a crucial,

---

[29] See Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988).

[30] See Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); Johnson v. Puckett, 176 F.3d 809, 820 (5th Cir. 1999); Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998), cert. denied, 526 U.S. 1118 (1999); Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Lucas v. Johnson, 132 F.3d 1069, 1079 (5th Cir. 1998), cert. dism'd, 524 U.S. 965 (1998); Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997), cert. denied, 522 U.S. 1121 (1998); Cupit v. Whitley, 28 F.3d 532, 536 (5th Cir. 1994), cert. denied, 513 U.S. 1163 (1995); Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986).

[31] See Johnson v. Puckett, 176 F.3d at 820; Pemberton v. Collins, 991 F.2d 1218, 1226 (5th Cir. 1993), cert. denied, 510 U.S. 1025 (1993).

[32] See Castillo v. Johnson, 141 F.3d 218, 224 (5th Cir. 1998), cert. denied, 524 U.S. 979 (1998); Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998); Pemberton v. Collins, 991 F.2d at 1226; Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978 (1993); Edwards v. Lynaugh, 882 F.2d 160, 164 (5th Cir. 1989); Bridge v. Lynaugh, 838 F.2d at 772; Mullen v. Blackburn, 808 F.2d 1143, 1145 (5th Cir. 1987); Dillard v. Blackburn, 780 F.2d 509, 513 (5th Cir. 1986).

critical, or highly significant factor in the context of the entire case.[33]  The test to determine

whether a trial error makes a trial fundamentally unfair is whether there is a reasonable

probability that the verdict might have been different had the trial been properly conducted.[34]

Ashcraft claims that error occurred when the court failed to suppress the confession

because the confession was involuntary due to police coercion and his drugged state.  The record

reflects that the trial court conducted a hearing on the admissibility of the confessions, and,

thereafter, ordered that the confessions were admissible.  Furthermore, Ashcraft presented this

same claim on direct appeal and state writ of habeas corpus and the Texas courts affirmed the

trial court's findings and denied relief.  The Petitioner has failed to show that the state court's

adjudication of this evidentiary issue was sufficiently egregious as to render the entire trial

fundamentally unfair.  Therefore, Ashcraft's claim fails.

*5) Sixth Amendment Right to Counsel of Choice Claim*

Petitioner argues that his Sixth Amendment rights were violated because the judge would

not remove his retained counsel, Mr. Glen Barnard, just prior to a pretrial hearing and trial.  The

record shows that Mr. Barnard was having some problems getting along with his client.  In fact,

Mr. Barnard claimed that he had not been paid his entire fee and that he had not contracted with

Mr. Ashcraft to represent him in all six of his cases.  Nevertheless, the trial court would not

remove Mr. Barnard or allow him to withdraw, and in fact, appointed the lawyer to represent

---

[33] See Johnson v. Puckett, 176 F.3d at 821; Little v. Johnson, 162 F.3d at 862; Green v. Johnson, 160 F.3d at 1047; Neal v. Cain, 141 F.3d at 214; Lucas v. Johnson, 132 F.3d at 1079; Jernigan v. Collins, 980 F.2d at 298; Bridge v. Lynaugh, 838 F.2d at 772; Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987), cert. denied, 484 U.S. 842 (1987); Mullen v. Blackburn, 808 F.2d at 1145.

[34] See Guidroz v. Lynaugh, 852 F.2d 832, 835 (5th Cir. 1988); Rogers v. Lynaugh, 848 F.2d 606, 609 (5th Cir. 1988).

Ashcraft in all six of his cases. The judge did so on the basis that Mr. Barnard had already made appearances on those cases, and because of Ashcraft's avowed indigence.

The Sixth Amendment right to counsel does <u>not</u> guarantee an untethered right to one of choice.[35] In another Fifth Circuit decision, the Court ruled:

> ...Accordingly, it is our view that once trial begins the right to defend in the proper person ceases to be absolute...Furthermore, trial counsel must necessarily be wary of last minute requests to change counsel lest they impede 'the prompt and efficient administration of justice.'[36]

Ashcraft claims that he wanted a different attorney shortly before trial began. However, the Petitioner indicated to the trial court that he was indigent. The trial court, in weighing Ashcraft's concerns with the prompt and efficient administration of justice, did not make an error that would support habeas relief.

6) *Ineffective Assistance of Counsel Claims*

Petitioner Ashcraft raises five different proposed ineffective assistance of counsel errors which he claims entitle him to relief under § 2254. Ashcraft claims that he was denied effective assistance of counsel for the following reasons: 1) counsel was unprepared; 2) counsel failed to make pre-trial preparations; 3) counsel failed to investigate an alibi witness; 4) counsel allowed Torres' testimony regarding extraneous offenses; and 5) counsel failed to accept phone calls or discuss the case with him prior to trial.[37]

The constitutional standard for determining whether a criminal defendant has been denied

---

[35] See <u>Yohey v. Collins</u>, 985 F.2d 222, 228 (5th Cir. 1993).

[36] See <u>Moreno v. Estelle</u>, 717 F.2d 171, 176 (5th Cir. 1983), <u>cert. denied</u>, 466 U.S. 975, 104 S. Ct. 2353 (1984).

[37] See Fed. Writ. Petition at 35-41.

the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by

the Supreme Court in the case of *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective
> as to require reversal of a conviction or death sentence has two
> components. First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must show
> that the deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.[38]

In order to demonstrate that his attorney's performance was constitutionally deficient, a

convicted defendant must show that counsel's representation "fell below an objective standard of

reasonableness."[39]  In so doing, a convicted defendant must carry the burden of proof and

overcome a strong presumption that the conduct of his trial counsel falls within a wide range of

reasonable professional assistance.[40]  The courts are extremely deferential in scrutinizing the

---

[38] Strickland v. Washington, 466 U.S. 668, 687 (1984).

[39] See Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Darden v. Wainwright, 477 U.S. 168, 184 (1986); Strickland v. Washington, 466 U.S. at 687-88; Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997); Andrews v. Collins, 21 F.3d 612, 621 (5th Cir. 1994), cert. denied, 513 U.S. 1114 (1995); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992), cert. denied, 507 U.S. 1056 (1993); and Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992), cert. denied, 504 U.S. 992 (1992).

[40] See Strickland v. Washington, 466 U.S. at 687-91; Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000) (holding that trial counsel's decision not to put defendant on the stand in light of defendant's prior criminal record is a judgment call which seldom, if ever, will support a claim of ineffective assistance); Green v. Johnson, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997), cert. denied, 523 U.S. 1099 (1998); Belyeu v. Scott, 67 F.3d 535, 538 (5th Cir. 1995), cert. denied, 517 U.S. 1144 (1996); Duff-Smith v. Collins, 973 F.2d at 1182. A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. See Burnett v. Collins, 982 F.2d 922, 928 (5th Cir. 1993); Martin v. Maggio, 711 F.2d 1273, 1279 (5th Cir. 1983), cert. denied, 469 U.S. 1028 (1984).

performance of counsel and make every effort to eliminate the distorting effects of hindsight.[41]  It

is strongly presumed that counsel has rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.[42]  An attorney's strategic choices,

usually based on information supplied by the defendant and from a thorough investigation of

relevant facts and law are virtually unchallengeable.[43]  Counsel is required neither to advance

every non-frivolous argument nor to investigate every conceivable matter inquiry into which

_____

[41] See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Burger v. Kemp, 483 U.S. 776, 789 (1987); Strickland v. Washington, 466 U.S. at 689; United Stats v. Drones, 218 F.3d 496, 500-03 (5th Cir. 2000); Carter v. Johnson, 131 F.3d at 463; Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997), cert. denied, 525 U.S. 859 (1998); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); United States v. Gaudet, 81 F.3d 585, 592 (5th Cir. 1996); and Belyeu v. Scott, 67 F.3d at 538.  The deficiency prong of Strickland is judged by counsel's conduct under the law existing at the time of the conduct, see Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996), cert. denied, 519 U.S. 1094 (1997), and in view of the facts and resources available at the time of trial.  See Williams v. Cain, 125 F.3d at 276, citing Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994), cert. denied, 513 U.S. 960 (1994).

[42] See Strickland v. Washington, 466 U.S. at 690; and Duff-Smith v. Collins, 973 F.2d at 1182.

[43] See Jones v. Jones, 163 F.3d 285, 300 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999); Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997), cert. denied, 522 U.S. 944 (1997); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997) (stating that "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"); Boyle v. Johnson, 93 F.3d 180, 187-88 (5th Cir. 1996), cert. denied, 519 U.S. 1120 (1997) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own psychiatric testimony regarding the defendant's violent tendencies); West v. Johnson, 92 F.3d 1385, 1406-09 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997) (ruling that a trial counsel's failure to conduct further investigation into the defendant's head injury and psychological problems was reasonable where interviews with the defendant and the defendant's family failed to produce any helpful information); Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994), citing Strickland v. Washington, 466 U.S. at 691; and Andrews v. Collins, 21 F.3d at 623 (deciding that counsel acted reasonably in failing to further pursue the defendant's mental capacity or background where counsel had no reason to believe that further investigation would be useful).

could be classified as non-frivolous.[44] A criminal defense counsel is not required to exercise

clairvoyance during the course of a criminal trial.[45] Likewise, the Sixth Amendment does not

require that counsel do what is impossible or unethical; if there is no bona fide defense to the

charge, counsel is not required to create one.[46]

The proper standard for evaluating counsel's performance under the Sixth Amendment is

"reasonably effective assistance."[47] "An error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment."[48] "Accordingly, any deficiencies in counsel's performance must be prejudicial to

the defense in order to constitute ineffective assistance under the Constitution."[49] In order to

establish that he has sustained prejudice, the convicted defendant "must show that there is a

_____

[44] See Neal v. Cain, 141 F.3d 207, 214-15 (5th Cir. 1998) (holding that petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of Strickland where proposed defenses were without merit); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (ruling that "counsel cannot be deficient for failing to press a frivolous point"); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (opining that "counsel is not required by the Sixth Amendment to file meritless motions"); Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993) (revealing that "the defense of a criminal case is not an undertaking in which everything not prohibited is required; nor does it contemplate the employment of wholly unlimited time and resources"); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (stating that "counsel is not required to make futile motions or objections"); Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (holding that defense counsel is not required to investigate everyone whose name is mentioned by the defendant).

[45] See Sharp v. Johnson, 107 F.3d 282, 290 n.28 (5th Cir. 1997), citing Garland v. Maggio, 717 F.2d 199, 207 (5th Cir. 1983) (holding that clairvoyance is not a required attribute of effective representation). See also Lackey v. Johnson, 116 F.3d at 152 (ruling that trial counsel was not ineffective for failing to discover evidence about which the defendant knew but withheld from his counsel).

[46] See United States v. Cronic, 466 U.S. 648, 656 n.19 (1984); Jones v. Jones, 163 F.3d at 303.

[47] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[48] Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2067.

[49] Id.

18

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[50] The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair; unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.[51]

First, Ashcraft claims that his counsel rendered ineffective assistance by failing to be prepared and failing to make pre-trial preparations  Further, Ashcraft claims that his counsel failed to investigate an alibi defense and neglected to discuss the case with him. However, these claims are unsupported and cannot justify federal habeas relief. The only evidence that Ashcraft offers in support of his lack of preparation claim is that defense counsel was late to the proceeding and that his counsel was filing a motion to withdraw.[52]  As to his attorney's failure to make pre-trial preparations, Mr. Barnard did in fact file motions to suppress the search warrant and any evidence obtained from such search and seizure and statements given by Ashcraft while incarcerated. This evidence, or lack thereof, falls well below the high standard a Petitioner must set forth in order to be granted habeas relief.

Under Rule 2(c) of the Rules Governing Section 2254 cases, a Petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal

---

[50] See Williams v. Taylor, 529 U.S. at 391; Strickland v. Washington, 466 U.S. at 694.

[51] See Williams v. Taylor, 529 U.S. at 393 n.17; Strickland v. Washington, 466 U.S. at 692.

[52] See Fed. Writ. Petition at 35-38.

19

habeas corpus relief and are subject to summary dismissal.[53] The complaints that Petitioner does make on these issues do not even pass the prejudice prong of the *Strickland* test. Specifically, Petitioner can not show that he was prejudiced in such a way as to effect the outcome of the case. Ashcraft does not provide an affidavit from an alibi witness or show that the witness would have appeared at the trial; hence his failure to investigate claim must fail as well.

Finally, Petitioner Ashcraft complains that his counsel improperly allowed Juanita Torres to testify to extraneous offenses committed by Ashcraft. Namely, the drug deal that occurred between Torres and Ashcraft.[54] Petitioner alleges that this evidence was inflammatory. However, the testimony was necessary because Ashcraft's attorney had already filed a motion to suppress the search warrant and the fruits obtained from such search based on lack of probable cause. Juanita Torres supplied the officers with the probable cause to legally search Ashcraft's residence. The officers' observation of Ashcraft's drug sale and Torres' voluntary statement led directly to the issuance of the search warrant of Petitioner's home and from thence, to the discovery of stolen property, his arrest, and his confessions. The drug sale to Torres was, then, an integral part of the proof necessary to obtain the burglary conviction. Petitioner also claims that his lawyer failed to communicate with him. However, Ashcraft pleads no specific facts as to why this is true; only conclusory allegations. As a result, Ashcraft has failed to show deficient performance under *Strickland*.

None of Petitioner's ineffective assistance of counsel claims rise to a level that can survive the first prong of *Strickland*, therefore they all fail. The fact that Ashcraft can not prove

---

[53] See <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990).

[54] See Fed. Writ. Petition at 39.

actual prejudice from his attorney's actions leads to the logically leads this Court to believe that

Petitioner received "reasonably effective assistance"[55] throughout the course of his case.

*7) Conflict of Interest Claim*

Ashcraft claims that a conflict of interest occurred because of a supposed relationship that

existed between his attorney and a judge. A judge that was on Texas' Third Circuit Court of

Appeals panel which affirmed the Petitioner's conviction, Ashcraft alleges, had been law

partners for ten years with his defense counsel.[56] Ashcraft has not alleged any facts in his federal

writ petition indicating that a conflict of interest existed, that the two indeed worked as law

partners in the past, or that he was harmed by such association.[57] Again, under Rule 2(c) of the

Rules Governing Section 2254 cases, a petition is required to "specify all the grounds for relief"

and "set forth in summary form the facts supporting each of the grounds thus specified."

When Ashcraft presented this claim to the state courts on state habeas, the court found

that the claim was too generally pled to warrant relief and that Ashcraft failed to provide

compelling proof to meet his legal burden.[58] The Petitioner has not provided any support for his

claim, but claims that as a result of his incarceration it would be impossible for him to do so. On

this Court's own initiative, research was done as to the nature of the relationship about which

Ashcraft complains. As it turns out, Mr. Glen Barnard (now deceased) and former Third Circuit

---

[55] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[56] See Fed. Writ Petition at 3-5.

[57] See id.

[58] See Ex parte Ashcraft, Application No. 24,803-02 at 55.

Justice Melchor Chavez were in fact law partners.  However, the partnership between Mr. Barnard and Justice Chavez was dissolved in the 1970's.  Thus, it is extremely unlikely that any conflict of interest took place during an appeal that occurred over a decade from the time the two were partners.  This fact, combined with the verity that Petitioner raises no evidence of any conflict in his petition leads this Court to reject Ashcraft's conflict of interest claim.

## RECOMMENDATION

For the reasons set forth above, Petitioner's's petition for habeas relief under 28 U.S.C. § 2254 should be DENIED, and Respondent's Motion for Summary Judgment should be GRANTED.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[59]

DONE in Brownsville, Texas this _13th_ day of _March_, 2002.

_Felix Recio_
Felix Recio
United States Magistrate Judge

---

[59] See Douglass v. United States Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JON ALAN ASHCRAFT,<br>Petitioner,<br><br>v.<br><br>JANIE COCKRELL, DIRECTOR,<br>TEXAS DEPARTMENT OF CRIMINAL<br>JUSTICE, INSTITUTIONAL DIVISION.<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. B-98-031 |

## ORDER

Before the court is the Magistrate Judge's Amended Report and Recommendation in the above-referenced cause of action. After a de novo review of the file,

1. The Magistrate Judge's Amended Report and Recommendation is hereby ADOPTED;

2. Respondent Johnson's Motion for Summary Judgment (Docket No. 28) is hereby GRANTED;

3. Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) is hereby DENIED.

DONE in Brownsville, Texas this _____ day of _____, 2002.


_____
Hilda Tagle
United States District Judge


23